IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AQUA DOTS PRODUCTS LIABILITY LITIGATION | MDL No. 1940 |
| | Lead Case No. 1:08-cv-2364 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Judge David H. Coar |
| | Magistrate Judge Susan E. Cox |

## **DEFENDANT MOOSE ENTERPRISES PTY LTD.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2) AND FAILURE TO STATE A CLAIM PURSUANT TO FRCP 12(b)(6)**

## TABLE OF CONTENTS

I.    INTRODUCTION…….…………………………………………………...1

II.   THIS COURT LACKS ……………………………………………………2

    a.   The Applicable State Long Arm Statutes Do Not Create Personal Jurisdiction Moose……………………………………………………...3

        i.   Texas, Arkansas, Missouri and California Long Arm Statutes Defer to Constitutional Due Process Requirements…...………...3

        ii.  Illinois' Long Arm Statute Does Not Extend Jurisdiction Over Moose…………………………………………………………….4

        iii. Florida's Long Arm Statute Does Not Extend Jurisdiction Over Moose…………………………………………………………...5

    b.   A Constitutional Due Process Analysis Establishes that Moose Does Not Have Minimum Contacts with the United States…………………...……6

        i.   Moose Does Not Have Minimum Contacts with the United States…………………………………………………………….7

        ii.  Fairness Factors Do Not Support Personal Jurisdiction Over the Australian-Based Moose…...…………………………………...9

            1.   Moose is Burdened by Having to Travel from Australia to the United States…..………………………………….10

            2.   The Interests of the Forum State in the Litigation Are Nor Significant Enough to Extend Jurisdiction……………10

            3.   Plaintiffs Have Access to Alternate Forums……………11

            4.   The Forum States' Interests in the Most Efficient Resolution of This Litigation is Not Significant Enough to Extend Jurisdiction……………………………………..11

            5.   There is a Shared Interest in the International Community in Furthering Fundamental Social Policies of Sovereignty…………………………………………….12

    c.   Personal Jurisdiction Over Moose is Improper in the United States…….12

i

III.    THE PLAINTIFFS' CONSOLIDATED COMPLAINT FAILS TO STATE A
        CLAIM...............................................................................................12

        a.  The Court Must Consider the Laws of All States Where Plaintiffs
            Purchased Aqua Dots.............................................................14

        b.  State Claims..................................................................................18

            i.   Contract Claims.......................................................................18

                1.  Breach of Express Warranty Must Fail As to Moose ......19

                2.  Breach of Implied Warranty Must Fail As to Moose.......21

            ii.  Tort Claims.............................................................................23

                1.  Illinois Consumer Fraud Protection Act Claims Must Fail
                    as to Moose......................................................................23

                2.  All Other States' Consumer Protection Laws Must Fail as
                    to Moose............................................................................24

                3.  Illinois Uniform Deceptive Trade Practices Act Claims
                    Must Fail as to Moose.......................................................25

                4.  Negligence Claims Must Fail as to Moose.................27

                5.  All Strict Liability Claims Must Fail as to Moose..........28

            iii.  Unjust Enrichment Claims Must Fail as to Moose ..................30

        c.  Plaintiffs' Federal Claims Must Fail as to Moose...........................31

IV.     CONCLUSION....................................................................................33

# TABLE OF AUTHORITIES

## Federal Cases

### Supreme Court Cases

*Asahi Metal Indus. Co. v. Superior Ct.*,
  480 U.S. 102 (1987)……………………………………………7, 8, 9, 10, 12

*Bell Atlantic Corp. v. Twombly*,
  127 S.Ct. 1955 (2007)……………………………………………13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) …………………………………………...6

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984)……………………………………………7, 8

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984)……………………………………………12

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945)……………………………………………6, 9

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
  313 U.S. 487 (1941)……………………………………………14, 15

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)……………………………………………6

### Court of Appeal Cases

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*,
  1 F.3d 848 (9th Cir. 1993)……………………………………………3

*Bass v. General Motors Corp.*,
  150 F.3d 842 (8th Cir. 1998)……………………………………………28

*Bell Paper Box, Inc. v. U.S. Kids, Inc.*,
  22 F.3d 816 (8th Cir. 1994)……………………………………………7

*Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*,
  857 F.2d 26 (1st Cir. 1988)……………………………………………32

*Chou v. Univ. of Chi. & Arch Dev. Corp.*,
  254 F.3d 1347 (Fed. Cir. 2001) ……………………………………………30

*Core-Vent Corp. v. Nobel Indus. AB,*
      11 F.3d 1489 (9th Cir. 1993)………………………………………………12

*Drake v. Honeywell, Inc.,*
      797 F2d 603, 606 (8th Cir. 1986)………………………………………...32

*E.E.O.C. v. Concentra Health Servs., Inc.,*
      496 F.3d 773 (7th Cir. 2007)……………………………………13, 30-31

*Harris v. Standardized Sanitation Systems, Inc.,*
      658 F.Supp. 438, 440 (W.D. Ark. 1987)……………………………………28

*Hinc v. Lime-O-Sol Co.,*
      382 F.3d 716 (7th Cir. 2004)……………………………………………...16

*In re TMI,*
      67 F.3d 1103 (3d Cir.1995)………………………………………………...27

*Kaye v. Grossman,*
      202 F.3d 611 (2d Cir. 2000) ………………………………………………30

*Limestone Dev. Corp. v. Vill. of Lemont,*
      520 F.3d 797 (7th Cir. 2008)………………………………………………14

*McCarthy v. Olin Corp.,*
      119 F.3d 148 (2d Cir.1997) ………………………………………………27

*Metropolitan Life Ins. Co. v. Neaves,*
      912 F.2d 1062 (9th Cir. 1990)………………………………………………..3

*Metzgar v. Playskool, Inc., et al.,*
      30 F.3d 459, 461 (3rd Cir. 1994)………………………………………28, 29

*Mt. Lebanon Personal Care Home v. Hoover,*
      276 F.2d 865 (7th Cir. 2002)………………………………………………28

*PlaNet Prods. v. Shank,*
      119 F.3d 729 (8th Cir. 1997) ……………………………………………30

*Rocke v. Canadian Auto. Sport Club,*
      660 F.2d 395 (9th Cir. 1981)…………………………………………10, 12

*Roth v. Garcia Marquez,*
      942 F.2d 617 (9th Cir. 1991)……………………………………………...11

*Smith v. N. Am. Stainless, L.P.*,
    158 Fed. Appx. 699 (6th Cir. 2005) ................................................................27

*Sondergard v. Miles, Inc.*,
    985 F.2d 1389 (8th Cir. 1993)..................................................................7

*Sterner Aero AB v. Page Airmotive, Inc.*,
    499 F.2d 709 (10th Cir. 1974)................................................................28

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008)................................................................14

*Tanner v. Jupiter Realty Corp.*,
    433 F.3d 913, 916 (7th Cir. 2006)...........................................................17

*Todd v. Societe Bic, S.A.*,
    21 F.3d 1402 (7th Cir. 1994)................................................................28

*Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Prods. Co.*,
    75 F.3d 147 (3d Cir. 1996) ................................................................7

*Zivojinovich v. Barner*,
    525 F.3d 1059, 1067 (11th Cir. 2008)......................................................27

<u>District Court Cases</u>

*Brown v. Daisy Mfg. Co.*,
    724 F.Supp 44 (N.D.N.Y. 1989).............................................................33

*Independence County v. Pfizer, Inc.*,
    534 F. Supp. 2d 882 (E.D. Ark. 2008 ......................................................30

*Lawyers Title Ins. Corp. v. Dearborn Title Corp.*,
    904 F. Supp. 818 (N.D. Ill. 1995)..........................................................26

*Martin v. Kelley Elec. Co.*,
    371 F. Supp. 1225 (D.C. Ark. 1974).........................................................3

*Pa. State Emples. Credit Union v. Fifth Third Bank*,
    398 F. Supp. 2d 317 (M.D. Pa. 2005) ......................................................30

*Russom v. Kilgore Corp.*,
    692 F.Supp. 796, 799 (W.D. Tenn. 1998)...................................................31

*Tractor & Farm Supply v. Ford New Holland*,
    898 F. Supp. 1198 (W.D. Ky. 1995) ........................................................30

*In Re Ford Motor Co. Ignition Switch Products Liability Litigation,*
    174 F.R.D. 332 (D.N.J. 2001)……………………………………………15, 17, 18

**State Cases**

*Abbott Power Corp. v. Overhead Electric Co.*
    131 Cal.Rptr. 508 (Cal.App.4Dist. 1976)…………………………………....…4

*Adams v. N. Ill. Gas. Co.,*
    809 N.E.2d 1248, 211 Ill.3d 32 (Ill. 2004) ……………………………….…..27

*Alenia Spazio, S.p.A. v. Reid,*
    130 S.W.3d 201 (Tex. App. 2003) ………………………………………………3

*Barriga v. Ark. & Mo. R.R.,*
    87 S.W.3d 808 (Ark. App. 2002) ………………………………………………27

*Berkeley Pump Co. v. Reed-Joseph Land Co.,*
    653 S.W.2d 128 (Ark. 1983)……………………………………………………28

*Brooks v. Midas-International Corp.,*
    47 361 N.E.2d 815, Ill.App.3d 266 (1977) ………………………………….…26

*Clay Elec. Coop., Inc. v. Johnson,*
    873 So.2d 1182 (Fla.2003) ……………………………………………………27

*Clevenger and Wright, Co. v. A.O. Smith Harvestore Products, Inc.,*
    625 S.W.2d 906 (Mo. App.W.D. 1981)…………………………………………28

*Comer v. Preferred Risk Mut. Ins. Co.,*
    991 P.2d 1006 (Okla.1999) ………………………………………………….…27

*First Union Nat'l Bank v. Richmont Capital Partners I, L.P.,*
    168 S.W.3d 917 (Tex. App. 2005) ………………………………………………30

*Florida Power & Light Co. v. Westinghouse Electric Corp.,*
    510 So.2d 899 (Fla. 1987)………………………………………………………28

*Goldstein v. Brogan Cadillac Oldsmobile Corp.,*
    90 A.D.2d 512 (N.Y.A.D. 1982)………………………………………………28

*Greenberg v. United Airlines,*
    563 N.E.2d 1031, 206 Ill. App. 3d 40 (Ill.App. 1 Dist.1990)………………....26

*Krause v. U.S. Truck Co.,*
    787 S.W.2d 708 (Mo.1990)………………………………………….. …27

*Lapkin v. Garland Bloodworth, Inc.*
    23 P.3d 958 (Okla. Civ. App. 2000) ...................................................30

*Lucas v. Texas Industries, Inc.,*
    696 S.W.2d 372 (Tex.1984) ...........................................................27

*Moorman Mfg. Co. v. National Tank Co.,*
    435 N.E.2d 443, 91 Ill.2d 69 (Ill. 1982)..............................................28

*Nobility Homes of Texas, Inc. v. Shivers,*
    557 S.W.2d 77 (Tex. 1977)............................................................28

*Perona v. Volkswagen of America, Inc.,*
    684 N.E.2d 859, 292 Ill. App. 3d 59. (Ill. App. 1 Dist. 1997)......................23

*Reimer v. KSL Rec. Corp.,*
    807 N.E. 2d 1004, 348 Ill.App.3d 26 (Ill. App. 2004)................................4

*R.E.M. Coal Co., Inc. v. Clark Equipment Co.,*
    563 A.2d 128 (Pa. Super. 1989).......................................................28

*Schiavone Construction Co. v. Elgood Mayo Corp.,*
    436 N.E.2d 1322 (N.Y. 1982)..........................................................28

*Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.,*
    899 So. 2d 1222 (Fla. App. 2005)....................................................30

*State ex rel. Wichita Falls Gen. Hosp. v. Adolf,*
    728 S.W. 2d 604 (Mo. Ct. App. 1987)..................................................4

*Turner v. General Motors Corp.,*
    584 S.W.2d 844 (Tex. 1979)...........................................................28

*Waggoner v. Town and Country Mobile Homes, Inc.,*
    808 P.2d 649 (Okla. 1990)............................................................28

*West v. Caterpillar Tractor Co., Inc.,*
    336 So.2d 80 (Fla. 1976).............................................................28

*Worldwide Equipment, Inc. v. Mullins,*
    11 S.W.3d 50 (Ky. App. 1999)........................................................28

**Federal Statutes**

15 U.S.C. §1261……………………………………………………………………31

15 U.S.C. §2072……………………………………………………………...31, 32

Federal Rules of Civil Procedure
    Rule 8(a)(2)…………………………………………………………………13

Federal Rules of Civil Procedure
    Rule 12(b)(2)…………………………………………………………...1, 12

Federal Rules of Civil Procedure
    Rule 12(b)(6)……………………………………………….1, 2, 12, 13, 30

**State Statutes**

12A Okl.St.Ann. § 2-313……………………………………………………...19

12A Okl.St.Ann. § 2-314……………………………………………………...21

13 Pa.Consol. Stat. § 2313……………………………………………………19

13 Pa.Consol. Stat § 2314……………………………………………………21

735  Ill. Com. Stat. Ann. §5/2-209…………………………………………...4

810 Ill. Com. Stat. Ann. §5/2-313……………………………………………19

810 Ill. Com. Stat. Ann. §5/2-314……………………………………………21

815 Ill. Com. Stat. Ann. §505/1 *et seq*……………………………………..23

815 Ill. Com. Stat. Ann. §505/2 *et seq*……………………………………...24

815 Ill. Com. Stat. Ann. §510/2………………………………………………25

Ark. Code Ann. § 4-2-313……………………………………………………19

Ark. Code Ann. § 4-2-314……………………………………………………21

Ark. Code Ann. 16-4-101……………………………………………………3

Cal. C.C.P. §410.10…………………………………………………………4

Fla. Stat. § 48.193……………………………………………………………5

Fla. Stat. Ann. § 672.313……………………………………………………..19

Fla. Stat. Ann. § 672.314……………………………………………………..21

KRS § 355.2-313……………………………………………………………...19

KRS § 355.2-314……………………………………………………………...21

Mo. Rev. Stat. §400.2-313……………………………………………………19

Mo. Rev. Stat. §400.2-314……………………………………………………21

Mo. Rev. Stat. §506.500……………………………………………………...3,4

N.Y. U.C.C. § 2-313………………………………………………………….19

N.Y. U.C.C.§ 2-314…………………………………………………………..21

V.T.C.A., Bus. & C. § 2.313…………………………………………………19

V.T.C.A., Bus. & C. § 2.314…..……………………………………………..21

V.T.C.A., Civil Practice & Remedies Code § 17.042…………………………………3

## Secondary Sources

13 Williston on Contracts § 37:8 (4th ed.)…. ……………………………...20

16 C.F.R. §1117.1 *et seq*……………………………………………………31

16 C.F.R. §1303………………………………………………………………31

16 C.F.R. §1500.18(A)(2)…. ………………………………………………...31

63 Am. Jur. 2d, *Products Liability* § 713……………………………………22

Aff. Manny Stul….……………………………………………………………2

*Barron's Law Dictionary* 393 (Steven H. Gifis, 4th Ed.)………………………20

Restatement (Second) of Torts §402A (1965)………………………………...28

U.C.C. §2-313………………………………………………………………...19

U.C.C. §2-314………………………………………………………………...21

1.      Defendant, Moose Enterprises Pty Ltd. (hereinafter "Moose") files this motion to dismiss Plaintiffs' suit for lack of personal jurisdiction, as authorized by Federal Rules of Civil Procedure, Rule 12(b)(2); and for failure to state a claim, as authorized by Federal Rules of Civil Procedure, Rule 12(b)(6).

## I.      <u>INTRODUCTION</u>

2.      Plaintiffs consist of the Plaintiffs from nine (9) separate class actions that were consolidated pursuant to the Judicial Panel on Multidistrict Litigation before the Honorable Judge Coar in the Northern District of Illinois.  The Plaintiffs are Simon and Sarah Bertanowski, Erick K. Botsch, Michael J. Burgess, Kim A. Cosgrove, Donald C. Erbach, Jr., Stephanie S. Streett, Samantha Ford, Sandra Irene Soderstedt, Marilyn W. Walker, and Robyn Williams (collectively hereinafter "Plaintiffs.")

3.      Plaintiffs have sued Defendant, Moose on nine separate counts arising from Plaintiffs' allegations relating to the manufacturing, design and eventual recall of the Aqua Dots toy.  The nine counts alleged in the Plaintiffs' Consolidated Complaint are violation of the Illinois Consumer Fraud Act, damages under the Illinois Uniform Deceptive Trade Practices Act, alternative claim for relief under the state consumer protection laws of all 50 states and United States territories, breach of implied warranty, breach of express warranty, negligence, violation of the Consumer Product Safety Act and the Consumer Product Safety Rules, strict liability, and unjust enrichment.

4.      Defendant is a foreign company and has no purposeful contacts with the United States, including the states of Illinois, Texas, California, Florida, Arkansas or Missouri (where the nine lawsuits consolidated by the MDL were filed), or with any other state in the United States or any of its territories.  Moose, whose principal place of business is in Melbourne, Australia, does not do business in the United States.

5.      Finally, even if the Court finds that it does have personal jurisdiction over Moose, and that this Court is a proper venue, Plaintiffs' claims against Moose did not state a single claim upon which relief can be granted.  Therefore, the Court should dismiss Plaintiffs' lawsuit in its entirety as to Moose pursuant to FRCP, Rule 12(b)(6).

## II.    <u>THIS COURT LACKS JURISDICTION OVER DEFENDANT, MOOSE ENTERPRISES PTY LTD.</u>

6.      This Court does not have personal jurisdiction over Moose.  Moose's headquarters are located in Melbourne, Australia.  Aqua Dots beads were developed by JSSY, Inc. (hereinafter "JSSY") in China, for Moose, who then contracted with Spin Master, Ltd., a third party headquartered in Canada, to distribute the product.   Furthermore, Moose has not performed any of the following acts in the United States:  Owned or leased real or personal property; owed or been required to pay taxes; maintained an office; employed employees or contractors; solicited or entered into agreements with resellers or affiliates known to be residents of Illinois, Texas, California, Florida, Arkansas, or Missouri; conducted business over websites; conducted advertising (print, radio, TV, or online); conducted promotions; or sponsored events. (Aff. Manny Stul ¶¶4-12.) Additionally, Moose only has limited contacts with Illinois, Texas, California, Florida, Arkansas, or Missouri through its third party distributor, who is not a resident

2

of Illinois, Texas, California, Florida, Arkansas, or Missouri, and, therefore, minimum contacts cannot be established.

7.    In order to determine whether personal jurisdiction exists, the Court must first look to the long arm statutes of the forum states, and if the long arm statutes so require, must then perform a constitutional due process analysis.

### a.  The Applicable State Long Arm Statutes Do Not Create Personal Jurisdiction Over Moose

8.    In a diversity action, the question of personal jurisdiction is governed by the law of the forum state. *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990).  As a result, to establish jurisdiction, Plaintiffs have the burden of showing that the jurisdictional statutes of the states where the original complaints were filed (Illinois, Texas, California, Florida, Arkansas, and Missouri) confer jurisdiction over Moose and that the exercise of jurisdiction accords with federal constitutional principles of due process.  *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 850 (9th Cir. 1993) (in the context of a motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing a prima facie basis that the court has jurisdiction).

### i.  Texas, Arkansas, Missouri and California Long Arm Statutes Defer to Constitutional Due Process Requirements

9.    The long arm statutes of Texas, Arkansas, Missouri and California were enacted so as to allow personal jurisdiction in these states to extend as far as constitutional due process standards will allow.   For Texas See V.T.C.A., Civil Practice & Remedies Code §17.042 and *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 210 (Tex. App. 2003); For Arkansas See Ark. Code Ann. 16-4-101 and *Martin v. Kelley Elec. Co.*, 371 F. Supp. 1225, 1227 (D.C. Ark. 1974);

3

For Missouri See Mo. Rev. Stat. §506.500 and *State ex rel. Wichita Falls Gen. Hosp. v. Adolf*, 728 S.W. 2d 604, 606 (Mo. Ct. App. 1987); and For California See Cal. C.C.P. §410.10 and *Abbott Power Corp. v. Overhead Electric Co.* 60 131 Cal.Rptr. 508, 511 (Cal.App.4Dist. 1976).

10.    The constitutional due process standards are discussed in detail below in Section II, b.

### ii.    Illinois' Long Arm Statute Does Not Extend Jurisdiction Over Moose

11.    The Illinois long arm statute 735 Ill. Com. Stat. Ann. §5/2-209 (a), enumerates the basis of personal jurisdiction, in relevant part, as follows:

> "Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this State;
>
> (2) The commission of a tortious act within this State."

12.    Moose did not transact business within the state of Illinois. In *Reimer v. KSL Rec. Corp.,* 807 N.E. 2d 1004, 1013, 348 Ill.App.3d 26, 36 (Ill. App. 2004), the Court held that although there is no fixed "doing business" test, most Illinois courts finding personal jurisdiction over foreign corporations have based their determinations on facts such as whether the defendant has maintained offices or engaged in sales activities in Illinois.  Even substantial revenue from sales is not enough to establish that a defendant was "doing business" in Illinois.  Following the *Reimer* analysis, Moose was not "doing business" in Illinois because Moose only contracted with Spin Master, a non-resident Corporation, and Spin Master, Ltd., only distributed a fraction of the Aqua Dots products within the state of Illinois.

4

13.     Furthermore, Moose did not commit a tortious act within the state of Illinois, as Moose did not commit any act in Illinois.  Rather, Moose contracted with Spin Masters, Ltd., a non-resident distributor to distribute the Aqua Dots in the United States.   Accordingly, jurisdiction over Moose is not extended in the matters originally filed in Illinois, prior to consolidation of all matters for pretrial purposes by the MDL.

### iii.   Florida's Long Arm Statute Does Not Extend Jurisdiction Over Moose

14.     The Florida long arm statute, Fla. Stat. § 48.193, states in relevant part:

"(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state
….

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

5

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

15.    Florida does not have personal jurisdiction over Moose under the Florida long arm statute.  Moose only contracted with Spin Master, Ltd., a Canadian Corporation, and Spin Master only distributed a fraction of the Aqua Dots product within the state of Florida.  Moose does not have an office in Florida, nor does it do business in Florida. Further, Moose did not commit any act within Florida, much less a tortious act, and, therefore, the long arm statutes does not extend personal jurisdiction over Moose in those matters originally filed in Florida prior to consolidation by the MDL.

**b.    A Constitutional Due Process Analysis Establishes that Moose Does Not Have Minimum Contacts with the United States**

16.    In order to comport with fundamental fairness and due process guaranteed by the Fourteenth Amendment of the Constitution Plaintiffs can only bring a lawsuit against foreign defendants if due process requirements are met.  Federal Courts do not have jurisdiction over a non-resident defendant unless the non-resident defendant has purposefully established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### i. <u>Moose Does Not Have Minimum Contacts with the United States</u>

17.    Under minimum-contacts analysis, the Court must determine whether the non-resident defendant has purposefully availed itself of the benefits and protections of the forum state by conducting activities within the forum state. *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F. 3d 816, 818-19 (8th Cir. 1994). In measuring minimum contacts, the court should consider the following: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Id.* at 819. Minimum contacts are not established unless the court finds it has either specific or general jurisdiction over the defendant. *Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150-51 (3d Cir. 1996); *Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir. 1993).

18.    The Court cannot exercise specific jurisdiction over a non-resident defendant unless the non-resident defendant's activities were "purposefully directed" to the forum state and the litigation resulted from alleged injuries that "arise out of" or "relate to" those activities. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

19.    The Court does not have specific jurisdiction over Moose because Moose did not purposefully direct its activities to Illinois, Texas, California, Florida, Arkansas, or Missouri, and Plaintiffs' various causes of action do not arise from or relate to Moose's contacts with Illinois, Texas, California, Florida, Arkansas, or Missouri. Rather Plaintiffs' causes of action arose from design of the Aqua Dots and production of Aqua Dots in Australia and China. Moose did not distribute Aqua Dots in the United States. Rather, after JSSY, a Chinese company, produced the Aqua Dots they were distributed by Spin Master, Ltd., a third party Canadian distributor, in the

United States. All of these activities occurred outside of the United States, between companies that were located outside of United States.

20.    The Court cannot exercise general jurisdiction over a non-resident defendant unless there are continuous and systematic contacts between the non-resident defendant and the forum state. *Id.* at 1873. The Court does not have general jurisdiction over defendant because defendant has not had continuous or systematic contacts with Illinois, Texas, California, Florida, Arkansas, or Missouri. Defendant is a business entity and cannot travel to Illinois, Texas, California, Florida, Arkansas, and Missouri, has no place of business in Illinois, Texas, California, Florida, Arkansas, or Missouri, and has not taken any other action that would put Moose on notice that it is subject to being sued in Illinois, Texas, California, Florida, Arkansas, or Missouri Courts.

21.    In *Asahi,* one of the leading cases regarding personal jurisdiction over foreign business entities, the Supreme Court determined that the defendant had no minimum contacts with the forum state. In *Asahi,* the plaintiff was injured in a motorcycle accident that was caused by a sudden loss of air and an explosion in the rear tire of the motorcycle, brought on by a defective tire, tube, and sealant. Plaintiff sued the tube manufacturer, who then sought indemnification from Asahi Metal Industry Co., the manufacturer of the tube's valve assembly. The tube manufacturer was from Taiwan, and it purchased its tire valve assemblies in Taiwan from Asahi, a Japanese corporation. Asahi manufactured the tire valve assemblies in Japan and then sold them to various tire manufacturers. Sales to the Taiwanese manufacturer accounted for 1.24 percent of Asahi's income in 1981 and 0.44 percent in 1982. The Taiwanese manufacturer purchased valve assemblies from other suppliers as well, and sold finished tubes throughout the world.

8

22.    The *Asahi* analysis should be applied to Moose in this instance action.  Moose contracted with other companies which were not located in Illinois, Texas, California, Florida, Arkansas, or Missouri, or the United States, and the distributor sold the finished product, designed and manufactured by the Chinese manufacturer, throughout the world.  Moose's contacts with the forum state were so minimal and attenuated that they do not justify the assumption of jurisdiction by Illinois, Texas, California, Florida, Arkansas, or Missouri's Courts.

### ii.  Fairness Factors Do Not Support Personal Jurisdiction Over the Australian-Based Moose

23.    The Courts' assumption of jurisdiction over Moose and its property will offend traditional notions of fair play and substantial justice and will be inconsistent with the constitutional requirements of due process.  *Int'l Shoe*, 326 U.S. at 316.  The Court should decline to exercise jurisdiction over Moose because (1) Moose is heavily burdened by traveling from Australia to Illinois, Texas, California, Florida, Arkansas, and Missouri throughout this extensive litigation, (2) Illinois, Texas, California, Florida, Arkansas, and Missouri do not have significant interests in this suit because Moose is not responsible for the distribution of the Aqua Dots into the stream of commerce in the United States, (3) Plaintiffs have access to courts in Australia and China, where the business was conducted, (4) the international judicial system's interest in obtaining the most efficient resolutions of controversies can be met in Australia, where Moose is located, and China, where the Aqua Dots were produced by JSSY, and (5) the shared interest in the international community in furthering fundamental social policies of sovereignty would be better met in Australia, where Moose is located and does business, or China, where the Aqua Dots were produced by JSSY.

## 1. Moose is Burdened by Having to Travel from Australia to the United States

24.    The Court's assumption of jurisdiction over Moose will offend notions of fair play and will place an extraordinary burden on Moose by forcing Moose to defend this matter in the United States.  The "unique burdens placed upon one who must defend oneself in a foreign legal system should have very significant weight in assessing reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.  Even residents in the neighboring nation of Canada are afforded stricter protection against the exercise of personal jurisdiction:  "though the burden of litigating [an] action [against a Canadian organization] in California would not be insurmountable…it would nonetheless be substantial." *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981).  Additionally, none of Moose's records, files or witnesses are located in the United States.  Further, this action involves Moose's business dealings with other foreign entities.  Therefore, all relevant evidence would be held by Moose, the Canadian distributor, Spin Master, Ltd, and its Chinese manufacturer, none of which are United States residents.

## 2. The Interests of the Forum States in the Litigation Are Not Significant Enough to Extend Jurisdiction

25.    Although the forum states have an interest in protecting their citizens, they do not have an interest in a single contract between Moose and a Canadian company.  The fact that there is no activity in the United States and the forum states by Moose cuts heavily against the forum states' jurisdiction.

### 3. <u>Plaintiffs Have Access to Alternate Forums</u>

26.     Although it is more convenient for plaintiffs to adjudicate the claim in forum states, this factor carries little weight.  It is always more convenient to adjudicate claims in a plaintiff's home state, and "[n]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991).  Furthermore, Australian courts are equipped to handle the instant litigation.  This in itself is not a significant enough factor to create jurisdiction in the United States over a foreign corporation with no minimum contacts with the forum states.

### 4. <u>The Forum States' Interests in the Most Efficient Resolution of this Litigation Is Not Significant Enough to Extend Jurisdiction</u>

27.     Illinois, Texas, California, Florida, Arkansas, and Missouri are not efficient forums for the instant litigation because all discovery relating to the defendant, Moose, is located in Australia or China, including but not limited to, the witnesses and all relevant documents, contracts, and designs.  Additionally, the alleged conduct by Moose also occurred in either Australia or China.  This factor weighs against allowing personal jurisdiction over Moose.

28.     If this court denies this motion, it will assume jurisdiction over a dispute in which the forum state has minimal interest.

**5.   There is a Shared Interest in the International Community in Furthering Fundamental Social Policies of Sovereignty**

29.     The Court must also weigh the extent to which the exercise of jurisdiction by federal courts in the forum states would conflict with the sovereignty interests in the alternate forum.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d. 1482, 1489 (9th Cir. 1993).  Where the defendant is a resident of a foreign nation rather than a resident of another state within our federal system, the sovereignty barrier is higher."  *Rocke*, 660 F.2d at 399.  "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Asahi*, 480 U.S. at 115.  As Moose is an Australian business entity, the Australian Government has an interest in ensuring that unreasonable restrictions are not placed on its resident corporations' ability to conduct business.  This factor weighs heavily against jurisdiction.

**c.   Personal Jurisdiction Over Moose is Improper in the United States**

30.     Pursuant to FRCP Rule 12(b)(2), the entire action must be dismissed as to Moose because, as discussed above, the Court does not have personal jurisdiction over Moose.

## III.   THE PLAINTIFFS' CONSOLIDATED COMPLAINT FAILS TO STATE A CLAIM

31.     Even if the Court should find that it has personal jurisdiction over Moose, the instant action must be dismissed for failure to state a claim by the Plaintiffs.

32.     The Court has the authority to dismiss a suit for failure to state a claim upon which relief can be granted under FRCP Rule 12(b)(6) if the complaint clearly demonstrates that Plaintiffs cannot prove any set of facts that would entitle them to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

33.    In the Consolidated Complaint, Plaintiffs alleged nine counts as follows:  Count 1, Violation of the Illinois Consumer Fraud Act; Count 2, Damages Under the Illinois Uniform Deceptive Trade Practices Act; Count 3, Alternative Claim for Relief Under the State Consumer Protection Laws; Count 4, Breach of Implied Warranty; Count 5, Breach of Express Warranty; Count 6, Negligence; Count 7, Violation of the Consumer Product Safety Act and Consumer Product Safety Rules; Count 8, Strict Liability; and Count 9, Unjust Enrichment.

34.    **To survive a 12(b)(6) motion to dismiss, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level,"** assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007), quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 1973 fn.14 (2007).

35.    While the *Federal Rule of Civil Procedure*, Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, a simple statement of broad legal conclusions with no averments of supportive fact will be insufficient.  A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl.* at 1964-1965.  If the factual allegations that constitute the claim are entirely non-existent, a court cannot give them the benefit of doubt normally given to factual allegations in a review for 12(b)(6) dismissal, and must dismiss the cause of action.

36.    Additionally, since the discovery of a class action case this large is likely to be more expensive than in a typical action, the pleadings must include greater factual specificity than those in an average lawsuit in order to prevent claimants with baseless claims from receiving large settlements from defendants who wish simply to avoid the cost of discovery, though the claims may be baseless. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083-1084 (7th Cir. 2008). **The defendant should not be put through the expense of a complex and large discovery proceeding on the basis of a thread-bare claim.** *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).  A claim that fails to allege one of the essential elements of a cause of action must be categorized as such.

37.    Plaintiffs have failed to meet their burden of pleading the various causes of action with sufficient factual specificity, as the entire Consolidated Complaint merely consists of general, broadly stated allegations.

38.    As discussed in greater detail below, even if Plaintiffs prove each of these allegations, Plaintiffs have not set forth the essential elements of a claim upon which relief can be granted, and therefore, each cause of action must be dismissed as to Moose.

a.    <u>**The Court Must Consider the Laws of All States Where Plaintiffs Purchased Aqua Dots**</u>

39.    Prior to evaluating each claim, the Court must first make a decision as to which substantive laws will be applied for the eight state law causes of action.

40.    In *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), the United States Supreme Court held that the choice of law  provisions of the forum state should be used in determining which substantive laws must be used.  *Id.* at 496.

41.    In *In re Ford Motor Co. Ignition Switch Products Liability Litigation,* 174 F.R.D. 332 (D.N.J. 2001), the Court addressed how the typical federal court diversity jurisdiction choice-of-law analysis, as set forth in *Klaxon, supra,* is applied in situations where a Consolidated Complaint has been filed by all Plaintiffs in all matters consolidated by the MDL. The Court found that:

> "In the typical diversity case, the court would look to New Jersey's choice-of-law analysis and determine which state's law governs some or all issues, from among two or three candidates. Likewise, in nationwide class actions, choice of law constraints are constitutionally mandated. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-23, 105 S.Ct. 2965, 2979-80, 86 L.Ed.2d 628 (1985). The parties before this court-whether members of the MDL subclasses or the Wilks class or the defendants-have a due process right to have their claims governed by the applicable state law for their dispute. … **In diversity cases transferred under the Judicial Panel on Multidistrict Litigation, moreover, this court is to apply the choice of law rules of the transferor courts as to those incoming cases,** see *Ferens v. John Deere Co.,* 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (transferor state's law must be applied in § 1404(a) transfers); *In re Sunrise Securities Litigation,* 698 F.Supp. 1256, 1261 (E.D.Pa.1988) (same for MDL § 1407 transfers), as well as the forum's choice of law rule for the cases originating here, thus further confounding the impulse to identify a single state's law to apply to all claims and defenses in a nationwide class action. Even confining our analysis to the conflict of laws rules of New Jersey, as the originating state for both the lead MDL case ( Veideman, supra) and the Wilks case, quickly leads squarely into the thicket of the necessity of applying the law of fifty states if a nationwide class is certified, as now discussed." *Id.* at 347-348. [Emphasis added.]

42.    In following the analysis of the Court in *In Re Ford Motor Co.,* since the Consolidated Complaint was filed in Illinois, the Court must look to the Illinois conflict of law rules to determine the substantive laws that must be applied.

43.     With respect to determining which state's substantive law to use with respect to the contracts claims, Illinois law provides that:

> "Illinois has adopted the '**most significant contacts**' test proffered by the Restatement (Second) of Conflicts 188 (1971) in deciding choice-of-law disputes with respect to contractual issues. [Citations omitted.] Under this test, 'the contacts relevant to the choice-of-law decision include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation, and business of the parties.' [Citations omitted.]" *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716 (7th Cir. 2004). [Emphasis added.]

44.     While Moose denies that Plaintiffs have a valid contracts claim at all under the Consolidated Complaint, as they were not in privity of contract with Plaintiffs (as discussed in greater detail below), if the Court determines that Plaintiffs are allowed to bring their contracts claims, the rule articulated by the *Hinc* Court must be applied.  As no contract was entered between Plaintiffs and Moose, the Court cannot look at the place of contracting, negotiation, or performance or the subject matter of the contract.  Accordingly, the Court is left looking at the domicile and residence of the Plaintiffs and of Moose.  Therefore, under this analysis, the proper substantive laws are those of the nine states where the named Plaintiffs reside.

45.     Similarly, with respect to determining which state's substantive law to use with respect to the torts claims, Illinois law provides that:

> "**For tort actions, Illinois instructs the court to ascertain the forum with the 'most significant relationship' to the case**. *Esser v. McIntyre*, 169 Ill.2d 292, 214 Ill.Dec. 693, 661 N.E.2d 1138, 1141 (1996) 'Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.' *Id.* Four factors are supposed to guide the court's decision: '(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Id.* The court evaluates these factors 'in light of the policies underlying the laws of those jurisdictions.' *Id.* (internal citations

16

omitted).' *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) [Emphasis added.]

46.    It is important to look at all four factors set forth by the *Tanner* Court in order to determine which states have the "most significant relationship" to this case.   Defendant notes that the first two factors relate to the location of the alleged injury and the alleged injury-causing conduct.   Plaintiffs have failed to allege any injury in the Consolidated Complaint.   Accordingly, the Court then must turn to the third factor, which relates to the domicile of the parties.   Finally, the fourth factor is not useful, as it relates where the relationship of the Plaintiffs and Moose is centered, but there is no relationship between Plaintiffs and Moose.   Therefore, as with the contract claims, in the instant action, the states with the "most significant relationships" to the case are the nine states where the Plaintiffs reside and purchased the Aqua Dots.

47.    The Court in *In Re Ford Motor Co.,* 174 F.R.D. at 348, supports the determination that the laws of each state where Plaintiffs reside must be considered in its reasoning as follows:

> "Defendants maintain that a choice of law analysis leads to the conclusion that the laws of each plaintiff's home state must be applied because those states have interests that outweigh the interests of Michigan. The court agrees.

> Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. These interests arise by virtue of each state being the place in which plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective vehicles or the place where plaintiffs' alleged damages occurred."

> While it might be desirable, for the sake of efficiency, to settle upon one state-like Michigan or New Jersey-and apply its law in lieu of the other 49 jurisdictions, due process requires individual consideration of the choice of law issues raised by each class member's case before certification. Since the laws of each of the fifty states vary on important issues that are relevant to plaintiffs'

17

> causes of action and defendants' defenses, the court cannot conclude that there would be no conflict in applying the law of a single jurisdiction, whether it be Michigan, or New Jersey, as the plaintiffs suggest. Thus, the court will apply the law of each of the states from which plaintiffs hail."

48.    The Consolidated Complaint sets forth that Plaintiffs either purchased Aqua Dots in or resided in the following locations:  Simon and Sarah Bertanowski purchased Aqua Dots in Miami, Florida (p.4-5, ¶11); Erick K. Botsch is a resident of Dallas County, Texas (p. 5, ¶12); Michael J. Burgess is a resident of Barton County, Missouri (p. 5 ¶13); Kim A. Cosgrove is a resident of Massapequa, New York (p. 5-6, ¶14); Donald C. Erbach, Jr. and Stephanie S. Streett are residents of Little Rock, Arkansas (p. 6, ¶15); Samantha Ford is a resident of Cook County, Illinois (p. 6, ¶16); Sandra Irene Soderstedt is a resident of Lebanon County, Pennsylvania (p.6, ¶17); Marilyn W. Walker is a resident of Calloway County, Kentucky (p.6-7, ¶18); and Robyn Williams is a resident of Grady County, Oklahoma (p.7, ¶19.)

49.    Accordingly, the laws of the following nine (9) different states must be considered when determining whether Plaintiffs' Consolidated Complaint fails to state a claim: Florida, Texas, Missouri, New York, Arkansas, Illinois, Pennsylvania, Kentucky, and Oklahoma.

### b. State Claims

50.    Plaintiffs have brought eight different claims that must be analyzed under the various state laws.   These claims can be broken down into three categories of contract claims, tort claims, and unjust enrichment.

### i. Contract Claims

51.    Plaintiffs have brought two contract claims causes of action: breach of express warranty and breach of implied warranty.

### 1. **Breach of Express Warranty Must Fail as to Moose**

52.    In order to bring a claim for breach of express warranty, Plaintiffs must be able to establish that an express warranty was created by Moose to Plaintiffs, and that said warranty was breached.

53.    UCC §2-313[1] provides that

> "(2) Express warranties by the seller to the immediate buyer are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

54.    Plaintiffs' Consolidated Complaint fails to allege a single express warranty that was created by Moose to Plaintiffs, much less that there was a breach of any express warranty. Plaintiffs have failed to allege facts relating to how an express warranty was created, where it was made, or by whom it was made. Rather, Plaintiffs' Consolidated Complaint generally states

---

[1] All nine states have adopted Uniform Commercial Code (hereinafter "UCC") §2-313 as the basis for the guidelines as to when an express warranty is created. See Arkansas, Ark. Code Ann. § 4-2-313; Florida, Fla. Stat. Ann. § 672.313; Illinois, 810 Ill. Com. Stat. Ann. §5/2-313; Kentucky, KRS § 355.2-313; Missouri, Mo. Rev. Stat. §400.2-313; New York, N.Y.U.C.C. § 2-313; Oklahoma, 12A Okl.St.Ann. § 2-313; Pennsylvania, 13 Pa.Consol. Stat. § 2313; and Texas, V.T.C.A., Bus. & C. § 2.313.

that defendants represented that Aqua Dots "were safe and fit for use by children, were appropriate for certain age groups, complied with ASTM-963 and ASTMD-4236, and were free from hazardous substances." (Consolidated Complaint, p. 37, ¶129.)

55.    Further, even if an express warranty had been created and properly pled, there was no breach. The subject product was in compliance with American Society for Testing and Materials codes (ASTM-963 and ASTM-4236), which they had asserted on the packaging and the website. The subject product was fit for the ordinary purposes of play, which does not mean consumption of any piece of subject product. The toy was contained, packaged, labeled and intended for children four years old and over, as there were small parts. It was only when the small bead parts of the subject product were consumed that injury occurred. When the subject product was played with in a proper way, no injury occurred.

56.    Further, Plaintiffs cannot bring a breach of express warranty claim against Moose, as Plaintiffs were not in privity of contract with Moose. Pursuant to Barron's Law Dictionary, privity of contract is "the relationship that exists between two or more contracting parties. It is essential to the maintenance of an action on any contract that there should subsist a privity between the plaintiff and defendant in respect to the matter sued on.[citations omitted]" *Barron's Law Dictionary* 393 (Steven H. Gifis, 4th Ed.)

57.    Plaintiffs were not party to any contract between Moose and Spin Master for the sale of the Aqua Dots, and Plaintiffs were not an intended third party beneficiary of said contract. A party may be considered a third party beneficiary to a contract only if expressly stated or if the surrounding circumstances are deemed by the Court to establish intent.    13 Williston on Contracts § 37:8 (4th ed.)  The distribution agreement between Moose and Spin Masters for the sale of Aqua Dots did not intend (either expressly or incidentally) for the Plaintiffs to be

20

beneficiaries. Accordingly, Plaintiffs do not have standing to bring a lawsuit arising for breach

of express warranty claim and the breach of express warranty claim must be dismissed.

## 2. Breach of Implied Warranty Must Fail as to Moose

58.    Plaintiffs also allege a breach of implied warranty against Moose. UCC §2-314[2]

finds that "a warranty that the goods shall be merchantable is implied in a contract for their sale

if the seller is a merchant with respect to goods of that kind." This section goes on to state that:

> "(2) Goods to be merchantable must be at least such as:
>
> (a) pass without objection in the trade under the contract description;
>
> (b) in the case of fungible goods, are of fair average quality within the description;
>
> (c) are fit for the ordinary purposes for which goods of that description are used;
>
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promise or affirmations of fact made on the container or label if any."

---

[2] All nine states have adopted Uniform Commercial Code (hereinafter "UCC") §2-314 as the basis for the guidelines as to when an implied warranty is created. See Arkansas, Ark. Code Ann. § 4-2-314; Florida, Fla. Stat. Ann. § 672.314; Illinois, 810 Ill. Com. Stat. Ann. §5/2-314; Kentucky, KRS § 355.2-314; Missouri, Mo. Rev. Stat. §400.2-314; New York, N.Y.U.C.C. § 2-314; Oklahoma, 12A Okl.St.Ann. § 2-314; Pennsylvania, 13 Pa.Consol. Stat. § 2314; and Texas, V.T.C.A., Bus. & C. § 2.314.

59.     As with the Plaintiffs' cause of action for breach of express warranty, their cause of action for breach of implied warranty also must fail, as Plaintiffs have failed to plead facts sufficient to establish that the Aqua Dots were not merchantable.

60.     In part, Plaintiffs rely on the argument that the Aqua Dots were not fit for their ordinary purpose.   Under the Uniform Commercial Code, the term "fitness for ordinary purposes" means "reasonable fitness" for ordinary use, or use in the manner ordinarily contemplated, including both those uses that the manufacturer intended and those that are reasonably foreseeable. A manufacturer's liability for product defects may also not be premised on the existence of an obvious hazard in the product that functions properly for its intended purpose. 63 Am. Jur. 2d, *Products Liability* § 713.

61.     Additionally, goods are not fit for ordinary purposes where they are: (1) completely useless, or not fit for any purpose; (2) are not fit for the expected or obvious purpose; (3) where they break upon an early use for the ordinary purposes intended or expected; (4) need frequent or extensive repairs; or (5) are unsafe for use in a normal manner. It is not necessary to prove a specific defect in the product that caused the injury; liability based on a product's lack of fitness can be evidenced by a malfunction, rather than any specific neglect by manufacturer in constructing or designing the machinery. *Id.*

62.     The Aqua Dots were fit for the ordinary purposes of play by children ages four and up, which does not include consumption of any piece of subject product. The toy was contained, packaged, labeled and intended for children four years old and over, as there were small parts.  Swallowing a small part on a toy, which was intended for play and not consumption, and that was intended for children ages four and older, is not an ordinary purpose.  Accordingly, Plaintiffs have failed to state a cause of action for breach of implied warranty.

22

### ii. Tort Claims

63.     Plaintiffs have brought five tort causes of action: violation of the Illinois Consumer Fraud Protection Act, violation of all other states' consumer protection laws, violation of the Illinois Uniform Deceptive Trade Practices Act, negligence, and strict liability.

### 1. Illinois Consumer Fraud Protection Act Claims Must Fail as to Moose

64.     Plaintiffs' Consolidated Complaint alleges that that non-disclosure of material facts regarding the safety of Aqua Dots constitutes a violation of the Illinois Consumer Fraud Protection Act, 815 Ill. Comm. Stat. Ann. §505/1 *et seq.* The Consolidated Complaint does not allege any misrepresentations that were made by Moose. Further, the Consolidated Complaint fails to state any facts that would support the contention that, absent these representations, Plaintiffs would not have purchased the Toys. Therefore, this claim is barred by a lack of "but for" causation. The mere fact that the purchases occurred after the representations is not sufficient to prove the purchases would not have occurred if the representations were made differently.

65.     Similarly, the statute forbids certain acts or practices as long as they are accompanied by an "intent that others rely upon the concealment, suppression, or omission." Plaintiffs have not alleged such an intent. Plaintiffs inability to even allege this intent, much less prove this intent, is fatal to their claim. *Perona v. Volkswagen of America, Inc.*, 684 N.E.2d 859, 292 Ill. App. 3d 59. (Ill. App. 1 Dist. 1997).

66.     Even if such an intent were alleged, Plaintiffs would never be able to prove it, as the Chinese manufacturer of the Aqua Dots replaced the subject ingredient without Moose's knowledge. Since Moose was unaware that the manufacturing process had been compromised by

the Chinese manufacturer of the Aqua Dots, and that a substitute chemical had been utilized, they lack the requisite intent.  As such, the actions taken by Defendants cannot be properly termed "fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 Ill. Comm. Stat. Ann. §505/2.  The intent simply cannot exist without knowledge that the chemical had been replaced.  Though Plaintiffs' Consolidated Complaint claims that "Defendants intentionally engaged in these deceptive acts," this contention is impossible to support as the Complaint fails to state how Moose had intent and what deceptive acts Moose participated in.  Further, Plaintiffs cannot in good faith make these allegations because Defendants had no knowledge that any of the representations they made were false.

## 2. **All Other States' Consumer Protection Laws Must Fail as to Moose**

67.    Under Illinois choice of law provisions, Plaintiffs can only bring a claim for violations of the state consumer protection laws for the states in which Plaintiffs reside.  (See §III, i above.)  Plaintiffs have failed to properly plead these various causes of action in the Consolidated Complaint, and rather simply state generally that the consumer protection laws of all states have been violated by advertising and marketing Aqua Dots (Consolidated Complaint, p.3, ¶113.)  Plaintiffs' Consolidated Complaint does not specify the elements of any of the state statutes, or facts that support their allegations that Moose violated said statutes.  Accordingly, the Complaint must be dismissed as to this cause of action for failure to properly identify and state the claim as against Moose.

### 3. **Illinois Uniform Deceptive Trade Practices Act Claims Must Fail as to Moose**

68.    Plaintiffs' Consolidated Complaint alleges that Defendants have violated the Illinois Deceptive Trade Practices Act, but does not support this contention with any factual allegations.

69.    The Illinois Deceptive Trade Practices Act, 815 Ill. Comm. Stat. Ann. §510/2, states that:

> "(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
>
> (4) uses deceptive representations or designations of geographic origin in connection with goods or services;
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
>
> (6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
>
> (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;
>
> (8) disparages the goods, services, or business of another by false or misleading representation of fact;

25

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

70.    Plaintiffs' Consolidated Complaint fails to state how Moose is alleged to have violated this statute, nor does it state the actual actions or representations that it claims violated this statute.  Plaintiffs fail to allege particular facts that would constitute the illegal conduct prohibited by the Act, and these omissions make it impossible for Plaintiffs to succeed in this cause of action.  Despite the fact that a pleading is to be read in the light most favorable to the pleading party, these omissions are fatal to the Plaintiffs' claim, as conclusions of law or fact cannot be taken as true unless they are supported by specific factual allegations.  *Greenberg v. United Airlines*, 563 N.E.2d 1031, 206 Ill. App. 3d 40 (Ill.App. 1 Dist.1990).

71.    Further, a consumer action under this Act (as opposed to an action by the State) is permissible only if the consumer can allege facts which would indicate he is "likely to be damaged" in the future. *Brooks v. Midas-International Corp.,* 361 N.E.2d 815, 821, 47 Ill.App.3d 266, 275 (1977).  Plaintiffs' Consolidated Complaint not only fails to allege the damages already suffered by the Plaintiffs, but also fails to allege how any damage could occur in the future; let alone that this is a "likely" possibility.  As the Consolidated Complaint does not allege the possibility of future damages, Plaintiffs claims under the Illinois Deceptive Trade

Practices Act must fail. *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 904 F. Supp. 818 (N.D. Ill. 1995).

### 4. Negligence Claims Must Fail as to Moose

72.     In order to establish that Moose was negligent[3], Plaintiffs must establish that "(1) a legal duty on the defendant to protect the plaintiff from particular injuries; (2) the defendant's breach of that duty; (3) the plaintiff's injury being actually and proximately caused by the breach; and (4) the plaintiff suffering actual harm from the injury." *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008).[4]

73.     Plaintiffs' Consolidated Complaint has failed to plead facts sufficient to establish that Moose was negligent as alleged in the instant actions. Plaintiffs have failed to include any factual allegations to support the claim that they have suffered injury or damages. Their complaint states that each Plaintiff has suffered harm, but conspicuously absent are even the most basic facts surrounding the circumstances of the alleged injuries or harm suffered by Plaintiffs. Plaintiffs cannot rely on labels and conclusions without stating facts that support them.

74.     The absence of any factual averments of injury also bars this cause of action under the Economic Loss Doctrine. This doctrine has been adopted in a generally congruent form by each of the nine states where Plaintiffs reside. It prohibits the purchaser of a defective

---

[3] Though each state has developed their own practices and laws concerning the theory of negligence, they have adopted similar elements that must be satisfied in order for a defendant to be held liable.

[4] Also See *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla.2003); *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 376 (Tex.1984); *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo.1990); *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir.1997); *Barriga v. Ark. & Mo. R.R.*, 87 S.W.3d 808, 810 (Ark. App. 2002); *Adams v. N. Ill. Gas. Co.*, 809 N.E.2d 1248, 1257, 211 Ill.2d 32 (Ill. 2004); *In re TMI*, 67 F.3d 1103, 1117 (3d Cir.1995); *Smith v. N. Am. Stainless, L.P.*, 158 Fed. Appx. 699, 702 (6th Cir. 2005); *Comer v. Preferred Risk Mut. Ins. Co.*, 991 P.2d 1006, 1010 (Okla.1999).

good from recovering under a tort action like negligence for purely economic damages, such as damages only to the product itself. *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So.2d 899 (Fla. 1987).[5]

75.    The law in this area is well settled. Without factual averments of the injuries sustained by the Plaintiffs, their negligence action cannot stand. While the Plaintiffs allege that they have been injured, they fail to specify any facts that would support this contention. Therefore, Plaintiffs' recovery under the tort of negligence must be barred.

### 5.    <u>All Strict Liability Claims Must Fail as to Moose</u>

76.    Plaintiffs' Consolidated Complaint has failed to allege facts sufficient to support a cause of action for strict liability against Moose. The necessary elements for strict liability are as follows:

> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
> Restatement (Second) of Torts §402A (1965)[6]

---

[5] Also see *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977); *Clevenger and Wright, Co. v. A.O. Smith Harvestore Products, Inc.*, 625 S.W.2d 906 (Mo. App.W.D. 1981); *Schiavone Construction Co. v. Elgood Mayo Corp.*, 436 N.E.2d 1322 (N.Y. 1982); *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 131-132 (Ark. 1983); *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 91 Ill.2d 69 (Ill. 1982); *R.E.M. Coal Co., Inc. v. Clark Equipment Co.*, 563 A.2d 128 (Pa. Super. 1989); *Mt. Lebanon Personal Care Home v. Hoover*, 276 F.2d 865, 875 (7th Cir. 2002); *Waggoner v. Town and Country Mobile Homes, Inc.*, 808 P.2d 649 (Okla. 1990).

[6] The Restatement statute for strict liability has been adopted by the relevant states: Florida - *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 84 (Fla. 1976); Texas - *Turner v. General Motors Corp.*, 584 S.W.2d 844, 848 (Tex. 1979); Missouri - *Bass v. General Motors Corp.*, 150 F.3d 842 (8th Cir. 1998); New York - *Goldstein v. Brogan Cadillac Oldsmobile Corp.*, 90 A.D.2d 512 (N.Y.A.D. 1982); Arkansas - *Harris v. Standardized Sanitation Systems, Inc.*, 658 F.Supp. 438, 440 (W.D. Ark. 1987); Illinois - *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1404 (7th Cir. 1994); Pennsylvania - *Metzgar v. Playskool, Inc., et al.*, 30 F.3d 459, 461 (3rd Cir. 1994); Kentucky - *Worldwide Equipment, Inc. v. Mullins*, 11 S.W.3d 50, 55 (Ky. App. 1999); and Oklahoma - *Sterner Aero AB v. Page Airmotive, Inc.*, 499 F.2d 709,712 (10th Cir. 1974)

77.     The Aqua Dots products were not defective, and Plaintiffs have failed to plead facts sufficient to establish that there is a product defect which gives rise to a strict liability cause of action.  Specifically, Plaintiffs have failed to allege with the requisite specificity that the Aqua Dots were actually dangerous or defective.

78.     Further, the Aqua Dots were not defective or hazardous, and were safe for all intended uses.  Aqua Dots were clearly marked as a children's toy, with small parts that were not for use by children under the age of four.   Accordingly the Aqua Dots were fit for their ordinary purposes and use.

79.     In *Metzgar v. Playskool Inc.*, 30 F.3d at 463-464,  the Court was unwilling to treat an "intended user" and a "foreseeable user" the same in strict liability situations, especially where children are concerned, because there are so many varied and necessary products that are hazards in the unintended but foreseeable hands of children, but cannot be "childproofed" without being rendered significantly less useful or even useless.  The Court stated that "This is not only true of inherently dangerous products, but is, to some extent, true even of toy products.  Children are inherently vulnerable and in many circumstances, the product design cannot replace the adult supervision of a child." *Id.* at 464.

80.     The Third Circuit's analysis in *Metzgar* when applied to the instant matter establishes that  children under the age of four, given their motor development, may be found to not be an intended user of the product. Further, it is not the manufacturer's intent for any individual, regardless of their age, to swallow or consume the small parts of the subject product. It is foreseeable that a product that adheres together with only water is going to contain some type of chemical that could be dangerous to individuals who consumed such product.

29

Accordingly, strict liability is an improper cause of action as such lack of supervision of children while playing with the product can be considered negligence on the part of the parent.

81.     As strict liability has not been properly pled, the Court should dismiss this cause of action as well as to Moose.

### iii.     Unjust Enrichment Claims Must Fail as to Moose

82.     The common elements of unjust enrichments actions generally include 1) a plaintiff who has conferred a benefit onto the defendant, 2) a defendant who accepted and maintains this benefit, and 3) in circumstances where the retention of this benefit would be unjust. *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.,* 899 So. 2d 1222 (Fla. App. 2005).[7] When the common elements of this claim are examined, it becomes clear that this cause of action is inappropriate as against Moose.

83.     Before considering whether or not enrichment in this case was in fact unjust, the very existence of the enrichment must be established, and here it has not been.  While Plaintiffs' Consolidated Complaint makes broad, general statements claiming that all Defendants have received monies, profits, revenue and benefits from Plaintiffs, they make no factual averments to support this claim.  The absence of any facts whatsoever clearly cannot satisfy the requirements for a claim of unjust enrichment to survive a 12(b)(6) motion, specifically that the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C.,* 496

---

[7] Also see *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 930 (Tex. App. 2005*); PlaNet Prods. v. Shank,* 119 F.3d 729, 733 (8th Cir. 1997); *Kaye v. Grossman,* 202 F.3d 611, 615 (2d Cir. 2000); *Independence County v. Pfizer, Inc.,* 534 F. Supp. 2d 882, 891 (E.D. Ark. 2008*); Chou v. Univ. of Chi. & Arch Dev. Corp.,* 254 F.3d 1347, 1363 (Fed. Cir. 2001); *Pa. State Emples. Credit Union v. Fifth Third Bank,* 398 F. Supp. 2d 317 (M.D. Pa. 2005); *Tractor & Farm Supply v. Ford New Holland,* 898 F. Supp. 1198, 1206 (W.D. Ky. 1995); *Lapkin v. Garland Bloodworth, Inc.,* 23 P.3d 958 (Okla. Civ. App. 2000).

F.3d at 776. In fact, any claims that Moose has received money or benefits from Aqua Dots products are patently untrue, as Moose has received no monies or benefit of any kind from Plaintiffs, or transitively through other entities or Defendants.

84.    One of the most salient elements of the cause of action for unjust enrichment is that the plaintiff must seek to recover from the defendant the benefits conferred to them by that same plaintiff. No such benefits are alleged to have been received by Moose in the Consolidated Complaint.  In situations such as the instant action, it should be impossible for Plaintiffs to recover from Moose, as Moose has neither received nor retained benefits from Plaintiffs. Further, since Moose has received no remuneration for Aqua Dots products to date, it can hardly be asserted that they are retaining benefits unjustly.  Since Plaintiffs' complaint alleges this cause without the least bit of factual evidence to support it, dismissal should be granted.

### c.    <u>Plaintiffs' Federal Claims Must Fail as to Moose</u>

85.    Count 7 of the Consolidated Complaint alleges violations by all Defendants of the Consumer Product Safety Act (15 U.S.C. §2072) (hereinafter "CPSA") and the Consumer Product Safety Rules (15 U.S.C. §1261, 16 C.F.R. §1303, 16 C.F.R. §1117.1 *et seq*, 16 C.F.R. §1500.18(A)(2)) (hereinafter "CPSR") (collectively "CPSC claims".)

86.    In *Russom v. Kilgore Corp.*, 692 F.Supp. 796, 799 (W.D. Tenn. 1998), the Court found that

> "§2072(a), which creates a private right of action under the Consumer Product Safety Act, provides as a requirement to the maintenance of such an action that the **injury must be sustained 'by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the'** Consumer Product Safety Commission." [Emphasis added.]

31

87.    In the Plaintiffs' Consolidated Complaint, they have not alleged that Moose knowingly or willfully violated a rule or order of the Consumer Product Safety Commission ("CPSC"). As with each of the state causes of action, the Plaintiffs' CPSC claims are merely bare bones, overly general claims that must be plead with greater specificity in order to proceed with the costly discovery that will ensue.

88.    Further, in the matter of *Drake v. Honeywell, Inc.*, 797 F2d 603, 606 (8th Cir. 1986),  the Eighth Circuit found "Congress did not intend a section 23(a) [§2072] private action to arise from noncompliance with the Commission's reporting rules" The Court goes on to reason that the reporting rules are interpretive rules, and, therefore, are only meant to provide guidance, and are not enforceable in a Court of law.  *Id.* at 607-608.  In *Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26 (1st Cir. 1988), the Court refused to extend the reporting requirements to a Brazilian manufacturer of pressure cookers.  This same analysis must be applied in the instant action, and the CPSC claims must not be allowed to proceed against Moose.

89.    Additionally, even if the Court were to find a private right of litigation exists for the CPSC claims, Plaintiffs have failed to plead facts sufficient to be able to bring the private cause of action.  Section 2072 provides for actions only by "any person **who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission ..."[Emphasis added.]

90.    In *Brown v. Daisy Mfg. Co.*, 724 F.Supp 44 (N.D.N.Y. 1989), the Court refused to allow a private action for failure of an air gun manufacturer to report a defect, when the Court reasoned that the injury to the Plaintiff was not caused by said failure to report. The *Brown* Court reasoned that "An injured person may not recover under the Act unless his injury occurred 'by reason of' a rule violation. 15 U.S.C. § 2072(a). Where the alleged violation is a failure to disclose, the 'by reason of' requirement means that there must be a causal connection between the injury and the nondisclosure." *Id.* at 49. In following this analysis, Plaintiffs must not be allowed to proceed with a CPSC claim, on the basis that they have failed to plead facts that meet the "by reason of" requirement, as Plaintiffs have failed to assert a single actual injury that they have suffered.

91.    Finally, Moose did not have any involvement in the United States Recall, and, therefore, all claims relating to any alleged insufficiency in the United States Recall of Aqua Dots must be dismissed as to Moose. The entire United States recall for Aqua Dots was handled by the United States distributor, Spin Masters, as Moose did not actually conduct any business in the United States.

## IV.    **CONCLUSION**

92.    Defendant has no minimum contacts with the United States, including the forum states of Illinois, Texas, California, Florida, Arkansas, and Missouri. Accordingly, the entire action should be dismissed as to Moose Enterprise Pty Ltd., for lack of personal jurisdiction.

93.    Even if the Court should find that there is personal jurisdiction over Moose Enterprises Pty Ltd., the entire action must be dismissed, as Plaintiffs' Consolidated Complaint fails to state a single cause of action against Moose Enterprises Pty Ltd.  In the alternative, the Court should dismiss those causes of action indentified in Plaintiffs' Consolidated Complaint which the Court finds fail to state a viable claim against Moose Enterprises Pty Ltd.

Dated:  June 27, 2008                         Respectfully submitted,

                                              MOOSE ENTERPRISE PTY LTD.

                                              By:_____

                                              CLINTON & CLINTON
                                              David A. Clinton (CA Bar No. 150107)
                                              Dana M. Gilreath (CA Bar No. 227745)
                                              100 Oceangate, 14th Floor
                                              Long Beach, California 90802
                                              Tel. (562) 216-5000
                                              Fax (562) 216-5001

                                              ATTORNEY IN CHARGE FOR
                                              DEFENDANT, MOOSE ENTERPRISE
                                              PTY LTD.

34

## CERTIFICATE OF SERVICE

I, Catherine M. Cruz, certify that on June 26, 2008 I sent a copy of the attached **DEFENDANT MOOSE ENTERPRISES PTY LTD.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2) AND FAILURE TO STATE A CLAIM PURSUANT TO FRCP 12(b)(6)** to all parties on the Panel Attorney Service List via e-mail to the addresses listed below.

_____
CATHERINE CRUZ

| | |
|---|---|
| Ben Bornow, Esq.<br>**BARNOW & ASSOCIATES PC**<br>b.barnow@barnowlaw.com<br><br><br>*Attorney for Plaintiff, Robyn Williams* | Jack Reise, Esq.<br>**COUGHLIN,     STOIA,     GELLER, RUDMAN & ROBINS, LLP.**<br>jreise@csgrr.com<br><br>*Attorney for Plaintiff, Sara Bertanowski, Simon Beranowski and Anthony B. White* |
| Mila F. Bartos, Esq.<br>**FINKELSTEIN THOMPSON, LLP.**<br>mthompson@finkelsteinthompson.com<br><br><br>*Attorney for Plaintiff, Sandra Irene Soderstedt* | William N. Riley, Esq.<br>**PRICE, WAICUKAUSKI & RILEY, LLC.**<br>wriley@price-law.com<br><br><br>*Attorney for Plaintiff, Eric K. Botsch* |
| Laurence King, Esq.<br>**KAPLAN, FOX & KILSHEIMER, LLP.**<br>lking@kaplanfox.com<br><br><br>*Attorney for Plaintiff, Kim A. Cosgrove* | James Alex Streett, Esq.<br>**STREETT LAW FIRM**<br>James@streettlaw.com<br><br>*Attorney for Plaintiff, Fonald C. Erbach, Jr. and Stephanie S. Streett* |
| Ralph K. Phalen, Esq.<br>phalenlaw@comcast.com<br><br><br>*Attorney for Plaintiff, Michael J. Burgess* | Thomas J. Wiegand, Esq.<br>**WIEGAND, WINSTON & STRAWN, LLP**<br>twiegand@winston.com<br><br>*Attorney for Defendant, Spin Master, Ltd., Spin Master, Inc. and Target Corporation* |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AQUA DOTS PRODUCTS LIABILITY LITIGATION | MDL No. 1940 |
| | Lead Case No. 1:08-cv-2364 |
| | Judge David H. Coar |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Magistrate Judge Susan E. Cox |

**AFFIDAVIT OF MANNY STUL IN SUPPORT OF MOOSE ENTERPRISES LTD PTY.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

I, Many Stul, hereby declare:

1.      I am the Chief Executive Officer (CEO) for Moose Enterprises Pty Ltd.  I have personal knowledge of the facts stated herein.

2.      Moose Enterprises Pty Ltd. (hereinafter "Moose") is headquartered in Melbourne, Australia.

3.      Aqua Dots Beads were developed by JSSY, Inc., in Hong Kong, for Moose, who then contracted with Spin Master, a third party, headquartered in Toronto, Canada.

4.      Moose has not owned or leased real or personal property in the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri.

5.      Moose has not owed or been required to pay taxes in the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri.

6.      Moose has not maintained an office in the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri.

7.     Moose has not had employees or contractors in the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri.

8.     Moose has not solicited or entered into agreements with resellers or affiliates known to be residents of Illinois, Texas, California, Florida, Arkansas, or Missouri, or because they were residents of Illinois, Texas, California, Florida, Arkansas, or Missouri.

9.     Moose has not conducted business with residents of Illinois, Texas, California, Florida, Arkansas, or Missouri over websites.

10.    Moose has not conducted advertising (print, radio, TV, or online) that was directed or circulated to the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri residents or a small number of states including Illinois, Texas, California, Florida, Arkansas, or Missouri.

11.    Moose has not conducted promotions directed to the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri residents or a small number of states including Illinois, Texas, California, Florida, Arkansas, or Missouri.

12.    Moose has not sponsored events in the United States, including the states of Illinois, Texas, California, Florida, Arkansas, or Missouri or a small number of states including Illinois, Texas, California, Florida, Arkansas, or Missouri.

I declare under penalty of perjury that the foregoing is true and correct and that this affidavit was executed this 24TH day of June, 2008 at Melbourne, Victoria, Australia.

By: _____
MANNY STUL