UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re AQUA DOTS PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 1940 |
| | ) | Case Number 1:08-cv-02364 |
| This Document Relates To: | ) ) | Honorable David H. Coar |
| ALL ACTIONS. | ) ) ) | X[1] - Hon. Magistrate Judge Susan E. Cox |

## MOTION TO COMPEL PURSUANT TO FED. R. CIV. P. RULE 37(a)

NOW COME plaintiffs, Simon and Sarah Bertanowski, Erick K. Botsch, Michael J. Burgess, Kim A. Cosgrove, Donald C. Erbach, Jr., Stephanie S. Streett, Samantha Ford, Sandra Irene Soderstedt, Marilyn W. Walker, and Robyn Williams ("Plaintiffs"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. Rule 37(a), hereby seek entry of an order compelling defendants Spin Master, Limited and Spin Master, Incorporated (collectively "Spin Master"), to respond to various matters contained in Plaintiffs' First Set of Interrogatories and First Request for Production of Documents, and state as follows:

---

[1] The "X" indicates that the filing is intended for Magistrate Judge Cox.

1.    "Discovery is a search for the truth." *Shapo v. Engle*, 2001 WL 629303, at *2 (N.D. Ill. May 25, 2001). "In ruling on motions to compel discovery, 'courts have consistently adopted a liberal interpretation of the discovery rules.'" *Id.* (citing *Meyer v. Southern Pacific Lines,* 2001 WL 293999 (N.D. Ill. Mar. 26, 2001)).

2.    Under Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, or to the claim or defense of any other party." Discovery requests "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *AM Intern., Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981) (citing 8 Wright & Miller, Federal Practice and Procedure, Civil § 2008 (1970)). A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

3.    On May 30, 2008, Spin Master responded to Plaintiffs' outstanding discovery requests, which included Plaintiffs' First Set of Interrogatories and First Request for Production of Documents, which are attached hereto as Exhibits 1 and 2, respectively.

4.    Said responses included not less than eighteen (18) objections on the grounds of being "vague and not reasonably calculated to lead to the discovery of admissible evidence", and sixteen (16) objections on the grounds of being "vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence"

5.    The documents produced by Spin Master on May 30, 2008, did not include, for example, any of the following:

    a.  Communications to and from Spin Master officers, directors, and/or employees relating to the Aqua Dots products;

    b.  Communications received by Spin Master from consumers relating to the Aqua Dots products; or

    c.  Communications to and from specific retailers, distributors, and/or vendors relating to the Aqua Dots products.

6.    The documents produced by Spin Master on May 30, 2008, merely included:

    a.  Scant reports submitted to the Consumer Product Safety Commission;

    b.  Copies of letters which were sent to undisclosed retailers advising them of the recall of the Aqua Dots products;

    c.  A one-page Distribution Agreement regarding the purchase of Aqua Dots Products; and

    d.  Lab test reports commissioned by Spin Master and Bureau Veritas regarding the Aqua Dots products.

7.    On June 16, 2008, defendants Spin Master and Moose Enterprise Pty Ltd. ("Defendants") provided Plaintiffs with their Rule 26(a)(1) Initial Disclosures.  *See* Letter from Thomas J. Wiegand, June 16, 2008, attached hereto as Exhibit 3.  Said Initial Disclosures by Spin Master referred back to the thirty-nine (39) documents Spin Master produced to Plaintiffs on May 30, 2008, and named Iain Kennedy as the sole individual having discoverable information pertaining to the recall and testing of Aqua Dots products that Spin Master might use to support its claims or defenses.  The only additional documents Spin Master produced consisted solely of 307 pages of its various insurance agreements.

8.    In stark contrast, Moose Enterprise Pty Ltd. ("Moose") has provided significant disclosures, just with respect to its Rule 26(a)(1) obligations, including, *inter alia*, relevant email communications to and from Moose employees, the Chinese manufacturer of the Aqua Dots products, and third-party individuals.

9.    As a result of Plaintiffs' dissatisfaction with Spin Master's discovery responses, and pursuant to Local Rule 37.2, on June 19, 2008, at 10:30 a.m., the parties held a meet and confer at the offices of Winston & Strawn LLP, 35 W. Wacker Dr., Chicago, Illinois 60601, to discuss, *inter alia*, Spin Master's outstanding discovery obligations in a good faith attempt to resolve the matter. Those individuals present for the meet and confer included Thomas J. Wiegand, counsel for Spin Master, and Ben Barnow[2] and Aron Robinson, counsel for Plaintiffs. Also present, telephonically, were Laurence D. King, Mila F. Bartos, and Thomas J. O'Reardon II, additional counsel for Plaintiffs, and Dana Gilreath, counsel for Moose.

10.    At said meeting, counsel for Spin Master indicated that Spin Master would reevaluate its responses to Plaintiffs' discovery requests, and would consider supplementing them.

11.    In the days and weeks following the meet and confer, on various occasions, counsel for Spin Master indicated to Plaintiffs' counsel that additional time was needed to reevaluate Spin Master's responses and respond.

12.    Despite several extensions of time given by Plaintiffs' counsel to Spin Master, which failed to meet its own self-imposed deadlines to respond to the outstanding discovery obligations, Plaintiffs' received no response. As a result, on July 16, 2008, Ben Barnow, one of Plaintiffs' Co-Lead Counsel, sent a letter to counsel for Spin Master, attached hereto as Exhibit 4, stressing the

---

[2] Ben Barnow is one of the four Plaintiffs' Interim Co-Lead Counsel appointed by the Court. Order (Coar, J., May 5, 2008) (Dock. #5).

importance of Spin Master meeting its discovery obligations.  Said letter also advised Spin Master's counsel of the possibility of the present motion to compel, should Spin Master fail to supplement its responses.

13.    On July 17, 2008, Spin Master's counsel sent a letter to Plaintiffs' counsel, which purported to respond to Plaintiffs' outstanding discovery dispute with Spin Master.  A copy of said letter is attached hereto as Exhibit 5.

14.    Notwithstanding the purported resolution of some of Plaintiffs' outstanding discovery requests, Spin Master has still not provided Plaintiffs with the supplemental responses due to them pursuant to Spin Master's discovery obligations under the Federal Rules of Civil Procedure.

15.    "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  Spin Master's responses to Plaintiffs' discovery requests are both evasive and incomplete, as mentioned above and explained in more detail below, and, in Plaintiffs' view, have not been made in good faith.

16.    In light of counsel for Spin Master's repeated promises of delivery and subsequent delays, Spin Master's responses and production of documents are wholly inadequate, and it must be compelled to meet its discovery obligations.

## I.    PLAINTIFFS' FIRST SET OF INTERROGATORIES, NO.'S 3—10, AND 15–23.

17.    The interrogatories addressed by the parties at the meet and confer included, *inter alia*, the following:

> 3.    Identify the person or people responsible for establishing quality control standards for Defendant's Aqua Dots products.

> 4.    Describe Defendant's quality control standards for its Aqua Dots products.

5.      Describe Defendant's quality control processes for its Aqua Dots products.

6.      Identify the person or people responsible for establishing safety standards for Defendant's Aqua Dots products.

7.      Describe Defendant's safety standards for its Aqua Dots products.

8.      Identify the person or people responsible for ensuring that Defendant's quality control standards are met with respect to its Aqua Dots products.

9.      Identify the person or people responsible for ensuring that Defendant's safety standards are met with respect to its Aqua Dots products.

10.     Describe all processes and procedures that Defendant used to test its Aqua Dots products to ensure that they are safe for handling by children, and for each such process or procedure:

        A.      identify all locations where each process or procedure is implemented;

        B.      identify the job titles of the person or people responsible for supervising; and

        C.      identify the job titles of the person or people responsible for carrying out the process and procedure.

15.     For each company that Defendant hired or contracted with within the last four (4) years to inspect the quality and/or safety of its Aqua Dots products, state:

A.    the name of the company;

B.    the address of the company; and

C.    the name, title, and the phone number and address of the most senior-ranking person presently in charge of the company.

16.    Describe all quality control inspections or procedures, including the locations where said inspections or procedures occurred, that Defendant's Aqua Dots products underwent before the products were sold to consumers.

17.    Describe all quality control inspections or procedures, including the locations where said inspections or procedures occurred, that Defendant's Aqua Dots products underwent before the products were recalled.

18.    State whether Defendant received any complaints (written or verbal) relating in any way to children becoming sick or not feeling well after playing with Defendant's Aqua Dots products, either before or after Defendant announced the recall of said products, and if so, for each such complaint, state:

A.    the date of the complaint;

B.    the person or persons from whom the complaint was sent;

C.    the person or persons to whom the complaint was communicated; and

D.    the substance of the complaint.

19.     State whether Defendant has received any complaints (written or verbal) about its Defendant's Aqua Dots products that have not already been identified in response to Interrogatory 18, either before or after Defendant announced the recall of said products, and if so, for each such complaint, state:

A.      the date of the complaint;

B.      the person or persons from whom the complaint was sent;

C.      the person or persons to whom the complaint was communicated; and

D.      the substance of the complaint.

20.     Identify the date when Defendant discovered that its Aqua Dots products were coated with 1,4-butanediol.

21.     Identify the date when Defendant notified the Consumer Products Safety Commission (CPSC) that it had distributed for sale Aqua Dots products coated with 1,4-butanediol.

22.     Identify all persons and corporate entities that Defendant notified concerning the fact that its Aqua Dots products were coated with 1,4-butanediol before Defendant notified the CPSC.

23.     Identify all persons and corporate entities that Defendant notified concerning the fact that its Aqua Dots products were coated with 1,4-butanediol before notifying the public, other than those already identified in response to Interrogatory 22.

18.    At the formal meet and confer, and prior thereto, Spin Master objected to the vast majority of said interrogatories on the grounds that a motion to dismiss was pending.  That is not a valid objection; Spin Master is still obligated to respond to Plaintiffs' discovery requests.  *See* Order (Coar, J., Dec. 11, 2007) (ordering that discovery may commence at the conclusion of the parties' Rule 26(f) conference, and that "[t]he filing of a motion to dismiss will not relieve the parties from any obligation imposed by this order, except by further order of this court."),[3] attached hereto as Exhibit 6.

19.    Spin Master further objected to numerous other interrogatories, which pertained to its knowledge of certain facts and circumstances, on the ground that they were irrelevant to the claims at issue in the Consolidated Amended Complaint, particularly those relating to breach of warranties and unjust enrichment.  Specifically, Spin Master objected to Interrogatories No.'s 3–10, which relate to the quality control and safety measures Spin Master took with respect to the Aqua Dots products, on the grounds that they did not relate to any of Plaintiffs' claims.  However, despite the absolute lack of merit of that argument, such matters bear directly on Plaintiffs' consumer fraud and product liability claims, as Spin Master's knowledge of the defective nature of its Aqua Dots products goes towards, *inter alia*, the issue of punitive damages, which have been sought here.  *See, e.g. Hayman v. Autohaus on Edens, Inc.*, 315 Ill. App. 3d 1075, 1078, 734 N.E.2d 1012, 1015 (1st Dist. 2000) (punitive damages under Consumer Fraud Act allowed where actual damages shown); *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 17, 802 N.E.2d 752, 756 (2003) (under the consumer fraud act, "[t]he court could also award punitive damages").  Moreover, as stated in Plaintiffs' Consolidated Amended Class Action Complaint ("Consolidated Complaint"), Plaintiffs

---

[3] Interestingly, Spin Master's pending motion to dismiss has not stopped it from noticing and conducting the depositions of numerous Plaintiffs, which are presently going forward.

allege that Defendants did not adequately test or inspect the Aqua Dots products, and seek relief in the form of requiring Defendants to implement adequate safety procedures so as to avoid endangering the lives of children in the future.  *See, e.g.*, Consolidated Complaint at ¶¶ 2, 3, 7.  And, of course, federal courts rely on notice pleading.

20.     Regarding Interrogatories No.'s 15–17, Spin Master again objects on the grounds that Plaintiffs make no allegations that Spin Master failed to adequately test its Aqua Dots products.  But, again, as stated above, such interrogatories are clearly relevant to Plaintiffs' claims.  *See* Consolidated Complaint at ¶¶ 2, 3, 7.  And while Plaintiffs do not make any "claim for misrepresentation of testing," as Spin Master carefully articulates the issue, they do claim that Defendants misrepresented that the Aqua Dots toys were safe for children.  *See* Consolidated Complaint at ¶¶ 78–90.  Again, Spin Master's objection flies in the face of the fact that only notice pleading is required.

21.      "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper."  *Trading Technologies Intern., Inc. v. eSpeed, Inc.,* 2005 WL 1300778, at *1 (N.D. Ill. Apr.28, 2005).  Spin Master has failed to satisfy that burden here, as Plaintiffs' Interrogatories No.'s 3—10, and 15–23 are relevant to the claims as stated in the Consolidated Complaint.

22.     As for Interrogatories No.'s 18–23, which relate to when Spin Master discovered that the Aqua Dots products were coated with 1,4 butanediol, Spin Master objects, this time on the basis that Plaintiffs do not claim that Spin Master knew of the defective nature of the Aqua Dots products prior to their recall.  Again, Spin Master is patently wrong, as Plaintiffs explicitly alleged that "Spin Master Inc. and Spin Master Ltd. were notified [in early October], yet waited until nearly one month later to inform the public."  Consolidated Complaint at ¶¶ 61, 75.

23.    Spin Master's remaining general objection, which was repeated in virtually each of its deficient discovery responses, is that the requests are "overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence."  Such an objection is entirely without merit, though, particularly with respect to interrogatories such as, for example, No.'s 3 and 6, which merely asked Spin Master to name those individuals responsible for insuring the safety of its Aqua Dots products.

24.    For the reasons stated above with respect to its responses to Plaintiffs' Interrogatories No.'s 3—10, and 15–23, Spin Master's responses are wholly deficient, and it should be ordered to answer fully and completely each of the above-listed interrogatories.

## II.    PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, NO.'S 1, 2, 4, 5, 10, AND 14–17.

25.    Similarly, Spin Master's production of documents is grossly deficient.  Despite its preservation efforts, Spin Master has produced only thirty-nine (39) pages of documents pursuant to Plaintiffs' document requests.

26.    The requests for production for which Spin Master has failed to sufficiently respond to include the following:

1.    All documents relating to Defendant's discovery that its Aqua Dots products were coated with 1,4-butanediol.

2.    All documents relating to Defendant's safety and/or quality control processes and procedures for its Aqua Dots products, including but not limited to those processes and procedures relating to testing for the safeness for children of the Aqua Dots products.

4.      All documents relating to complaints, including any verbal complaints documented in any call log that Defendant may keep, that Defendant has received relating to its Aqua Dots products.

5.      All documents relating to Defendant's recall of its Aqua Dots products.

10.     All documents relating to Defendant hiring a third-party to carry out its safety and/or quality control processes and procedures with respect to its Aqua Dots products.

14.     All documents relating to Defendant notifying any individual or entity prior to notifying the Consumer Product Safety Commission that Defendant had sold Aqua Dots products coated with 1,4-butanediol.

15.     All documents relating to Defendant's discovery that its Aqua Dots products had tested positive for the presence of 1,4-butanediol.

16.     All documents relating to any rules or guidelines that Defendant's vendors agreed to follow as part of their contractual relationship with Defendant.

17.     All documents relating to Defendant's vendors violating rules, regulations, or agreements (including procurement agreements), relating to Defendant's Aqua Dots products being coated with 1,4-butanediol.

27.    Particularly striking is Spin Master's response to Interrogatory No. 5, which requested documents relevant to its recall of the Aqua Dots products; Spin Master produced just seven (7) pages of documents.

28.    Again, Spin Master objected on the same grounds as it did to Plaintiffs' interrogatories. *See* ¶¶ 18–23. Plaintiffs' arguments, as stated above, apply equally with respect to their requests for production. *Id.*

29.    Thus, for the reasons stated above with respect to its responses to Plaintiffs' interrogatories, Spin Master's production of documents is wholly deficient, and it should be ordered to produce all such documents relevant to Plaintiffs' Request for Production of Documents No.'s 1, 2, 4, 5, 10, and 14–17.

## III.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Compel Pursuant to Fed. R. Civ. P. Rule 37(a), and grant such other relief as the Court deems just and appropriate.

DATED:  July 24, 2008                        Respectfully submitted,


                                                   s/ Ben Barnow
                              _____

                              Ben Barnow
                              Barnow and Associates, P.C.
                              One North LaSalle Street, Suite 4600
                              Chicago, IL 60602
                              Telephone: (312) 621-2000
                              Facsimile: (312) 641-5504

John J. Stoia, Jr.
Rachel L. Jensen
Thomas J. O'reardon II
Coughlin Stoia Geller
  Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)


Fredric S. Fox
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:  212/687-1980
212/687-7714 (fax)


Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, NW
Washington, D.C. 20007
Telephone: 202/337-8000
202/337-8090 (fax)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| In re AQUA DOTS PRODUCTS LIABILITY LITIGATION | ) ) ) ) |
| | MDL No. 1940 |
| | Case Number 1:08-cv-02364 |
| This Document Relates To: | ) ) ) ) ) ) |
| ALL ACTIONS. | Honorable David H. Coar |
| | X -  Hon. Magistrate Judge Susan E. Cox |

**<u>CERTIFICATION</u>**

I, Ben Barnow, hereby certify that counsel for Plaintiffs have in good faith conferred with counsel for Spin Master with respect to its failure to adequately meet its discovery obligations, in an effort to obtain said discovery without Court action.

s/ Ben Barnow
_____

**<u>Certificate of Service By Electronic Means</u>**

I, Ben Barnow, hereby certify that Plaintiff's Motion to Compel Pursuant to Fed. R. Civ. P. Rule 37(a) was caused to be served electronically this 24 day of July, 2008, pursuant to ECF as to Filing users and I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

<u>/s/  Ben Barnow                                        </u>

# Exhibit 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE AQUA DOTS PRODUCTS LIABILITY LITIGATION** | **Case No. 08 CV 2364**<br><br>**THE HONORABLE DAVID H. COAR**<br>**MAGISTRATE JUDGE SUSAN E. COX** |

RESPONSES AND OBJECTIONS OF
SPIN MASTER LTD. AND SPIN MASTER, INC.
TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants Spin Master Ltd. and Spin Master, Inc., by their attorneys and pursuant to Federal Rule of Civil Procedure 33, hereby respond to Plaintiffs' First Set of Interrogatories.[1]

### GENERAL OBJECTIONS

1.      Defendants object to the Interrogatories because the Plaintiffs in the consolidated MDL proceeding have stated they are in the process of revising their claims into a consolidated complaint, but that complaint has not yet been filed, thus determining the relevance of the requested discovery requires guesswork at this stage of the proceedings.

2.      Defendants object to the Definitions and Instructions and to each Interrogatory to the extent that each purports to impose on Defendants obligations that differ from the requirements of Federal Rule of Civil Procedure 33 or the Local Rules or orders of the above-captioned Court.

---

[1] The First Set of Interrogatories were originally served upon Spin Master Ltd. in the action *Robyn Williams v. Spin Master, Ltd.*, No. 07 CV 6387 (N.D. Ill.), but have since been adopted by all Plaintiffs in the consolidated MDL proceeding *In Re Aqua Dots Product Liability Litigation*, No. 08 CV 2364 (N.D. Ill.), and were deemed to be served on Defendants Spin Master Ltd. and Spin Master, Inc. on April 30, 2008.

3.      Defendants object to the definition of "Defendant" in the Definitions and Instructions, as that definition is overly broad and beyond the obligations of Defendants under Rule 33 of the Federal Rules of Civil Procedure.

4.      Defendants object to the Definitions and Instructions and to each Interrogatory to the extent that each seeks the disclosure of information or documents containing attorney-client communications, attorney work product or trial preparation material on the grounds that such discovery is not permissible under the Federal Rules of Civil Procedure.  No response to any of the specific Interrogatories constitutes a waiver of such protected information or materials.

5.      Defendants object to the Definitions and Instructions and to each Interrogatory to the extent that each seeks information which is equally or more accessible to Plaintiffs and which is maintained primarily by persons or entities other than Defendants or are in the public records.

6.      To the extent that Defendants provide responses to specific Interrogatories to which they have objected, Defendants reserve the right to maintain such objections with respect to any additional information and such objections are not waived by the furnishing of a response.

7.      Without in any way obligating themselves to do so, Defendants reserve the right to make subsequent revisions, supplementation or amendments to these Responses based upon any information, evidence, documents, facts and things which hereafter may be discovered, or the relevance of which may hereafter be discovered.  Further, Defendants reserve the right to produce, introduce or rely upon additional or subsequently acquired or discovered writings, evidence and information at trial or in any pretrial proceedings held herein.

## RESPONSES AND OBJECTIONS
## TO SPECIFIC INTERROGATORIES

**1.** **Identify all persons responding or contributing to the answers to these interrogatories.**

**RESPONSE:** Defendants object to Interrogatory No. 1 as seeking information that is protected by the attorney-client privilege and that is not reasonably calculated to lead to the discovery of admissible evidence.

**2.** **Identify the person or persons with primary responsibilities for implementing Defendant's recall of its Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 2 on the basis of the General Objections and on the grounds that it is vague. Subject to and without waiving these objections, Defendants state that Iain Kennedy is a person with knowledge of the recall of Aqua Dots products.

**3.** **Identify the person or people responsible for establishing quality control standards for Defendant's Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 3 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

**4.** **Describe Defendant's quality control standards for its Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 4 on the basis of the General Objections and on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**5.** **Describe Defendant's quality control processes for its Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 5 on the basis of the General Objections and on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

6.    **Identify the person or people responsible for establishing safety standards for Defendant's Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 6 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

7.    **Describe Defendant's safety standards for its Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 7 on the basis of the General Objections and on the grounds that it is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

8.    **Identify the person or people responsible for ensuring that Defendant's quality control standards are met with respect to its Aqua dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 8 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

9.    **Identify the person or people responsible for ensuring that Defendant's safety standards are met with respect to its Aqua Dots products.**

**RESPONSE:** Defendants object to Interrogatory No. 9 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

10.    **Describe all processes and procedures that Defendant used to test its Aqua Dots products to ensure that they are safe for handling by children, and for each such process or procedure:**

A.    **identify all locations where each process or procedure is implemented;**

4

      B.      identify the job titles of the person or people responsible for supervising; and

      C.      identify the job titles of the person or people responsibilities for carrying out the process and procedure.

**RESPONSE:** Defendants object to Interrogatory No. 10 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendants refer Plaintiffs to documents identified by Bates numbers SP000013 to SP000039, and further state that Iain Kennedy is an employee with knowledge of testing performed regarding Aqua Dots.

      11.     **Identify all companies that Defendant contracted with to manufacture its Aqua Dots products, and for each such company state:**

      A.      the name of the company;

      B.      the address of the company; and

      C.      the name, title and the phone number and address of the most senior-ranking person presently in charge of the company.

**RESPONSE:** Defendants object to Interrogatory No. 11 on the basis of the General Objections and on the grounds that it is vague. Subject to and without waiving these objections, Defendants state that they entered into a Distribution Agreement with Moose Enterprises P/L dated November 22, 2006.

      12.     **Identify all companies, corporations, entities, and/or governmental authorities that Defendant notified relating to the recall of its Aqua Dots products, and for each such notification, state:**

      A.      the date of the notification;

      B.      the person or persons to whom the notification was communicated;

      C.      the substance of the notification;

> **D.**    the dates and manners in which Defendant became aware of the reason for the recall mentioned in the notification.

**RESPONSE:** Defendants object to Interrogatory No. 12 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendants refer Plaintiff to documents identified by Bates numbers SP000005 to SP000011.

**13.**    **Describe how Defendant has disposed of and is disposing of the Aqua Dots products it has recalled.**

**RESPONSE:** Defendants object to Interrogatory No. 13 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

**14.**    **For each factory and manufacturing plant where Defendant's Aqua Dots products were manufactured, state:**

> **A.**    the name of the factory or manufacturing plant;
>
> **B.**    the address of the factory or manufacturing plant; and
>
> **C.**    the name, title, and the phone number and address of the most senior-ranking person presently in charge of the factory or manufacturing plan.

**RESPONSE:** Defendants object to Interrogatory No. 14 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendants state that Aqua Dots products were manufactured at the direction of Moose Enterprises P/L.

**15.**    **For each company that Defendant hired or contracted with within the last four (4) years to inspect the quality and/or safety of its Aqua Dots products, state:**

> **A.**    the name of the company;
>
> **B.**    the address of the company; and

6

      C.     the name, title and the phone number and address of the most senior-
ranking person presently in charge of the company.

**RESPONSE:** Defendants object to Interrogatory No. 15 on the basis of the General

Objections and on the grounds that it is vague and not reasonably calculated to lead to the

discovery of admissible evidence.   Further answering, Defendants refer Plaintiffs to their

response to Interrogatory 10.

     **16.**    **Describe all the quality control inspections or procedures, including the
locations where said inspections or procedures occurred, that Defendant's Aqua Dots
products underwent before the products were sold to consumers.**

**RESPONSE:** Defendants object to Interrogatory No. 16 on the basis of the General

Objections and on the grounds that it is vague and not reasonably calculated to lead to the

discovery of admissible evidence.   Further answering, Defendants refer Plaintiffs to their

response to Interrogatory 10.

     **17.**    **Describe all quality control inspections or procedures, including the locations
where said inspections or procedures occurred, that Defendant's Aqua Dots products
underwent before the products were recalled.**

**RESPONSE:** Defendants object to Interrogatory No. 17 on the basis of the General

Objections and on the grounds that it is vague and not reasonably calculated to lead to the

discovery of admissible evidence.   Further answering, Defendants refer Plaintiffs to their

response to Interrogatory 10.

     **18.**    **State Whether Defendant received any complaints (written or verbal)
relating in any way to children becoming sick or not feeling well after playing with
Defendant's Aqua Dots products, either before or after Defendant announced the recall of
said products, and if so, for each such complaint, state:**

      A.     the date of the complaint;

      B.     the person or persons from whom the complaint was sent;

      C.     the person or persons to whom the complaint was communicated; and

D.    the substance of the complaint.

**RESPONSE:** Defendants object to Interrogatory No. 18 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

19.    **State whether Defendant has received any complaints (written or verbal) about its Defendant's Aqua Dots products that have not already been identified in response to Interrogatory 18, either before or after Defendant announced the recall of said products, and if so, for each such complaint, state:**

E.    the date of the complaint;

F.    the person or persons from whom the complaint was sent;

G.    the person or persons to whom the complaint was communicated; and

H.    the substance of the complaint.

**RESPONSE:** Defendants object to Interrogatory No. 19 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

20.    **Identify the date when Defendant discovered that its Aqua Dots products were coated with 1,4-butanediol.**

**RESPONSE:** Defendants object to Interrogatory No. 20 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

21.    **Identify the date when Defendant notified the Consumer Products Safety Commission (CPSC) that it had distributed for sale Aqua Dots products coated with 1,4-butanediol.**

**RESPONSE:** Defendants object to Interrogatory No. 21 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

22.    Identify all persons and corporate entities that Defendant notified concerning the fact that its Aqua Dots products were coated with 1,4-butanediol before Defendant notified the CPSC.

RESPONSE: Defendants object to Interrogatory No. 22 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

23.    Identify all persons and corporate entities that Defendant notified concerning the fact that its Aqua Dots products were coated with 1,4-butanediol before notifying the public, other than those already identified in response to Interrogatory 22.

RESPONSE: Defendants object to Interrogatory No. 23 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.

24.    Describe all steps Defendant has taken to notify the public that a recall of its Aqua Dots products had been issued.

RESPONSE: Defendants object to Interrogatory No. 24 on the basis of the General Objections and on the grounds that it is vague and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Defendants refer to documents identified by Bates numbers SP000005 to SP000011.

Dated:  May 30, 2008

Respectfully submitted,

SPIN MASTER LTD. and
SPIN MASTER, INC.

By: _____
One of their attorneys

Ronald Y. Rothstein
Thomas J. Wiegand
Joanna E. Clarke-Sayer
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5600
Facsimile (312) 558-5700

10

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney, hereby certify that on May 30, 2008, I caused a copy of the foregoing RESPONSES AND OBJECTIONS OF SPIN MASTER LTD. AND SPIN MASTER, INC. TO PLAINTIFFS' FIRST SET OF INTERROGATORIES to be served upon plaintiffs in the consolidated lawsuits by hand delivery and e-mail on:

Ben Barnow
Barnow and Associates PC
One North LaSalle Street
Suite 4600
Chicago, Illinois 60602
E-mail: b.barnow@barnowlaw.com

Thomas J. O'Reardon II
John J. Stoia, Jr.
Coughlin Stoia Geller
  Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
E-mail: toreardon@csgrr.com
E-mail: johns@csgrr.com

Frederic S. Fox
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
E-mail: ffox@kaplanfox.com

Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, DC 20007
E-mail: bfinkelstein@finkelsteinthompson.com

_____
Thomas J. Wiegand

# Exhibit 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Case No. 08 CV 2364

IN RE AQUA DOTS PRODUCTS
LIABILITY LITIGATION

THE HONORABLE DAVID H. COAR
MAGISTRATE JUDGE SUSAN E. COX

RESPONSES AND OBJECTIONS OF
SPIN MASTER LTD. AND SPIN MASTER, INC.
TO PLAINTIFFS FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants, Spin Master Ltd. and Spin Master, Inc., by their attorneys and pursuant to

Federal Rule of Civil Procedure 34, hereby respond and object to Plaintiff's First Request for

Production of Documents[1] as follows:

## GENERAL OBJECTIONS

1.     Defendants object to the Document Requests because the Plaintiffs in the

consolidated MDL proceeding have stated they are in the process of revising their claims into a

consolidated complaint, but that complaint has not yet been filed, thus determining the relevance

of the requested discovery requires guesswork at this stage of the proceedings.

2.     Defendants object to the Definitions and Instructions and to each Request to the

extent that each purports to impose on Defendants obligations that differ from the requirements

of Federal Rule of Civil Procedure 34 or the Local Rules or orders of the above-captioned Court.

3.     Defendants object to the definition of "Defendant" in the Definitions and

Instructions, as that definition is overly broad and beyond the obligations of Defendants under

Rule 34 of the Federal Rules of Civil Procedure.

---

[1] The First Request for Production of Documents was originally served upon Spin Master Ltd. in the action *Robyn Williams v. Spin Master Ltd.*, No. 07 CV 6387 (N.D. Ill.) but has since been adopted by all Plaintiffs in the consolidated MDL proceeding *In Re Aqua Dots Product Liability Litigation*, No. 08 CV 2364 (N.D. Ill.), and was deemed to be served on Defendants Spin Master Ltd. and Spin Master, Inc. on April 30, 2008.

4.      Defendants object to the Definitions and Instructions and to each Request to the extent that each seeks the disclosure of information or documents containing attorney-client communications, attorney work product or trial preparation material on the grounds that such discovery is not permissible under the Federal Rules of Civil Procedure.   To the extent Defendants state in response to a specific request for documents that they will produce documents, such statement means that they will produce only such documents as are not protected from discovery as described in the previous sentence.

5.      Defendants object to the Definitions and Instructions and to each Request to the extent that each calls for the production of documents that are not in the possession, custody or control of Defendants.

6.      Defendants object to the Definitions and Instructions and to each Request to the extent that each seeks information which is equally or more accessible to Plaintiffs and which is maintained primarily by persons or entities other than Defendants or are in the public records.

7.      A statement in response to a specific document request that Defendants will produce documents is not a statement that any such documents exist, but rather means only that such documents that exist will be produced.

8.      To the extent that Defendants produce documents in response to specific Requests to which they have objected, Defendants reserve the right to maintain such objections with respect to any additional information and such objections are not waived by the furnishing of documents.

9.      Without in any way obligating themselves to do so, Defendants reserve the right subsequently to revise, supplement or amend these Responses based upon any information, evidence, documents, facts or things which hereafter may be discovered, or the relevance of

which may hereafter be determined. Further, Defendants reserve the right to produce, introduce
or rely upon additional or subsequently acquired or discovered writings, evidence and
information at trial or in any pretrial proceedings held herein.

### SPECIFIC OBJECTIONS AND RESPONSES

1.    **All documents relating to Defendant's discovery that its Aqua Dots products
were coated with 1,4-butanediol.**

**RESPONSE:** Defendants object to Request No. 1 as stated in the General Objections
and on the grounds that it is overly broad, vague, and not reasonably calculated to lead to the
discovery of admissible evidence.

2.    **All documents relating to Defendant's safety and/or quality control processes
and procedures for its Aqua Dots products, including but not limited to those processes and
procedures relating to testing for the safeness for children of the Aqua Dots products.**

**RESPONSE:** Defendants object to Request No. 2 as stated in the General Objections
and on the grounds that it is overly broad, vague, and not reasonable calculated to lead to the
discovery of admissible evidence.

3.    **All documents that Defendant sent to or received from the United States
Consumer Product Safety Commission ("CPSC") regarding its Aqua Dots products.**

**RESPONSE:** Defendants object to Request No. 3 as stated in the General Objections
and on the grounds that it is overly broad and not reasonably calculated to lead to the discovery
of admissible evidence. Subject to and without waiving these objections, Defendants refer
Plaintiffs to documents identified by Bates numbers SP000001 to SP000004.

4.    **All documents relating to complaints, including any verbal complaints
documented in any call log that Defendant may keep, that Defendant has received relating
to its Aqua Dots products.**

RESPONSE: Defendants object to Request No. 4 as stated in the General Objections and on the grounds that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

5.     All documents relating to Defendant's recall of its Aqua Dots products.

RESPONSE: Defendants object to Request No. 5 as stated in the General Objections and on the grounds that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and without waiving them, Defendants refer Plaintiffs to documents identified by Bates numbers SP000005 to SP000011.

6.     All documents relating to Defendant's testing of its Aqua Dots products.

RESPONSE: Defendants object to Request No. 6 as stated in the General Objections and on the grounds that it is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and without waving them, Defendants refer Plaintiffs to documents identified by Bates numbers SP000013 to SP000039.

7.     All documents relating to Defendant contracting with or hiring companies to inspect its Aqua Dots products.

RESPONSE: Defendants object to Request No. 7 as stated in the General Objections and on the grounds that it is overly broad, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and without waiving them, Defendants refer Plaintiffs to their response to Request 6.

8.     All documents relating to Defendant contracting with or hiring Chinese companies to manufacture its Aqua Dots products.

RESPONSE: Defendants object to Request No. 8 as stated in the General Objections. Subject to these objections and without waiving them, Defendants state that they did not contract with or hire any Chinese company to produce Aqua Dots, thus no such documents exist.

4

9.    **All documents relating to any third-party safety inspections of Defendant's Aqua Dots products, including for purposes of detecting whether said products were safe for use by children.**

**RESPONSE:** Defendants object to Request No. 9 as stated in the General Objections and on the grounds that it is vague, unduly broad, and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to these objections and without waiving them, Defendants refer Plaintiffs to their response to Request 6.

10.    **All documents relating to Defendant hiring a third-party to carry out its safety and/or quality control processes and procedures with respect to its Aqua Dots products.**

**RESPONSE:** Defendants object to Request No. 10 as stated in the General Objections and on the grounds that it is vague, unduly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

11.    **All documents relating to any quality control or safety tests performed on the Aqua Dots products.**

**RESPONSE:** Defendants object to Request No. 11 as stated in the General Objections and on the grounds that it is vague, unduly broad, and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to these objections and without waiving them, Defendants refer to their response to Request 6.

12.    **All documents relating to the results of any quality control or safety tests performed on the Aqua Dots products.**

**RESPONSE:** Defendants object to Request No. 12 as stated in the General Objections and on the grounds that it is vague, unduly broad, and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to these objections and without waiving them, Defendants refer to their response to Request 6.

13.    All documents relating to Defendant disposing of the Aqua Dots products it recalled.

RESPONSE: Defendants object to Request No. 13 as stated in the General Objections and on the grounds that it is overly broad and vague. Subject to these objections and without waiving them, Defendants refer Plaintiffs to the document identified by Bates numbers SP000001 and SP000003.

14.    All documents relating to Defendant notifying any individual or entity prior to notifying the Consumer Product Safety Commission that Defendant had sold Aqua Dots products coated with 1,4-butanediol.

RESPONSE: Defendants object to Request No. 14 as stated in the General Objections and on the grounds that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

15.    All documents relating to Defendant's discovery that its Aqua Dots products had tested positive for the presence of 1,4-butanediol.

RESPONSE: Defendants object to Request No. 15 as stated in the General Objections and on the grounds that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

16.    All documents relating to any rules or guidelines that Defendant's vendors agreed to follow as part of their contractual relationship with Defendant.

RESPONSE: Defendants object to Request No. 16 as stated in the General Objections and on the grounds that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendants refer Plaintiffs to the document identified by Bates number SP000012.

17.    All documents relating to Defendant's vendors violating rules, regulations, or agreements (including procurement agreements), relating to Defendant's Aqua Dots products being coated with 1,4-butanediol.

**RESPONSE**: Defendants object to Request No. 17 as stated in the General Objections and on the grounds that it is vague, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

Dated: May 30, 2008

Respectfully submitted,

SPIN MASTER LTD. and
SPIN MASTER, INC.,

By: _____
     One of their attorneys

Ronald Y. Rothstein
Thomas J. Wiegand
Joanna E. Clarke-Sayer
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone (312) 558-5600
Facsimile (312) 558-5700

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney, hereby certify that on May 30, 2008, I caused a copy of the foregoing RESPONSES AND OBJECTIONS OF SPIN MASTER LTD. AND SPIN MASTER, INC. TO PLAINTIFFS FIRST REQUEST FOR PRODUCTION OF DOCUMENTS to be served upon plaintiffs in the consolidated lawsuits by hand delivery and e-mail on:

Ben Barnow
Barnow and Associates PC
One North LaSalle Street
Suite 4600
Chicago, Illinois 60602
E-mail: b.barnow@barnowlaw.com

Frederic S. Fox
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
E-mail: ffox@kaplanfox.com

Thomas J. O'Reardon II
John J. Stoia, Jr.
Coughlin Stoia Geller
    Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
E-mail: toreardon@csgrr.com
E-mail: johns@csgrr.com

Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, DC 20007
E-mail: bfinkelstein@finkelsteinthompson.com

_____
Thomas J. Wiegand

Exhibit 3

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

THOMAS J. WIEGAND
(312) 558-5947
twiegand@winston.com

June 16, 2008

**BY E-MAIL AND MESSENGER**

Ben Barnow
Barnow and Associates PC
One North LaSalle Street
Suite 4600
Chicago, Illinois  60602

Frederic S. Fox
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY  10022

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street
Suite 400
San Francisco, CA  94104

Thomas J. O'Reardon II
John J. Stoia, Jr.
Coughlin Stoia Geller
   Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA  92101

Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, DC  20007

Re:    In re Aqua Dots Products Liability Litigation, No. 08 CV 2364

Dear Counsel:

     This letter is sent to fulfill the Initial Disclosure obligations under Rule 26(a)(1) of Spin Master Ltd. and Spin Master, Inc. as well as of Target Corporation.  As for individuals and documents under subsections (A)(i) and (ii), the Spin Master Defendants identify Iain Kennedy on the topics of the product recall and testing of Aqua Dots and refer to the documents provided on May 30.  As for Target Corporation, we have not identified any topics under subsections (A)(i) or (ii) on which an individual or individuals would be identified or documents disclosed.

WINSTON & STRAWN

June 16, 2008
Page 2

As for insurance agreements under subsection (A)(iv), we are producing for the Spin Master Defendants the following insurance agreements:

St. Paul – Policy #CPC0078685 (Primary/Umbrella 06/07 & 07/08)
Ace Ina – Policy # XCP397449 (1st Excess 06/07)
Elliott Special Risks – Policy #XT32747 (2nd Excess 06/07)
Lloyds – Policy #C070758 (1st Excess 07/08)
Elliott Special Risks – Policy #XT32747 (2nd Excess 07/08)

The declarations page for Target's general liability coverage, with ACE USA, also is enclosed. These documents are identified by Bates numbers SP000040 through SP000347 and have been identified as Confidential.

Please call me with any questions.

Sincerely,

Thomas J. Wiegand

TJW:kp
Enclosures
cc: David A. Clinton
    Dana M. Gilreath

# Exhibit 4

BARNOW **AND** ASSOCIATES

*a professional corporation*

ATTORNEYS AT LAW

BEN BARNOW *
SHARON HARRIS
ERICH P. SCHORK
BLAKE A. STRAUTINS

* *also admitted in New York*

ONE NORTH LASALLE STREET
SUITE 4600
CHICAGO, ILLINOIS 60602

*Telephone:* 312-621-2000
*Facsimile:* 312-641-5504

July 16, 2008

*Via E-mail and U.S. Mail*

Thomas J. Wiegand, Esq.
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601

Re:    *In re Aqua Dots Products Liability Litigation*, 08-CV-2364

Dear Tom:

At the meet and confer held on June 19, 2008, you indicated that your clients would reevaluate their responses to Plaintiffs' discovery requests and consider supplementing them. It has been nearly four weeks since our meeting, and we have still received nothing from you or your clients. We have repeatedly asked you for supplemental responses from your clients, and you have made repeated commitments to address the matter, but have failed to do so. Initially, you indicated that the delay in responding was due to your clients being out of the country and unavailable; other reasons followed. We attempted to accommodate your clients on each occasion, and each time received your commitment that we would receive a response promptly. Nevertheless, to date, your clients have failed to address this matter or supplement their responses.

With regard to your letter of July 15, 2008, that is not an excuse for your clients' failure to respond to date; that matter was never raised by you before. Frankly, it is peculiar that you would be waiting for or relying upon research from Plaintiffs' counsel in this context. If indeed there is any issue about that, we are prepared to deal with it separately.

Unless we have your clients' supplemental responses by close of business today, we will have no choice but to file a motion to compel with the Court.

Very truly yours,

Ben Barnow

Ben Barnow

cc:    John J. Stoia, Jr., Esq.
Frederic S. Fox, Esq.
Burton H. Finkelstein, Esq.

BB/bas

# Exhibit 5

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

THOMAS J. WIEGAND
(312) 558-5947
twiegand@winston.com

July 17, 2008

**BY E-MAIL AND U.S. MAIL**

Ben Barnow
Barnow and Associates PC
One North LaSalle Street
Suite 4600
Chicago, Illinois  60602

Frederic S. Fox
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY  10022

Laurence D. King
Kaplan Fox & Kilsheimer LLP
350 Sansome Street
Suite 400
San Francisco, CA  94104

Thomas J. O'Reardon II
John J. Stoia, Jr.
Coughlin Stoia Geller
    Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA  92101

Burton H. Finkelstein
Finkelstein Thompson LLP
1050 30th Street, N.W.
Washington, DC  20007

Re:    In re Aqua Dots Products Liability Litigation, No. 08 CV 2364

Dear Counsel:

   This letter summarizes the points each of us raised at our discovery conference on June 19, at which Ben Barnow, Aron Robinson and I met in person at my office in Chicago, with Dina Gilreath for Defendant Moose Enterprises Pty Ltd. connected by phone conference together with additional counsel for Plaintiffs.  We met to discuss the responses of the Spin Master Defendants to Plaintiffs' discovery requests, as well as Plaintiffs' responses to the Spin Master Defendants' discovery requests.

WINSTON & STRAWN LLP

July 17, 2008
Page 2

I am able to provide some additional materials that we discussed at our meeting, and I will summarize these first. But we continue to believe that some of the areas discussed at our meeting are not appropriate for discovery in this case, and I will explain those areas next.

**Discovery That The Spin Master Defendants Will Produce**

Interrogatory 12: Spin Master already has produced a copy of each of the two letters, with attachments, that were sent on November 7, 2007 to retailers, relating to the recall announced that day. You have asked whether Plaintiffs also may have the identity of the retailers that received these two letters. We are gathering that information and will provide it to you.

Interrogatory 13: You explained that you want to know how the Aqua Dots that are returned to Spin Master are to be discarded. I still am checking, but should be able to give you an answer shortly.

Interrogatory 14: The response to this interrogatory stated that the Aqua Dots were manufactured by Moose. You asked where they were manufactured, and the response is that Moose had them manufactured in a plant in China operated by JSSY, Inc. I refer you to the responses of Moose for more information on that plant if you need it.

Interrogatory 24: You have asked what steps were taken by the Spin Master Defendants to notify the public of the November 7 recall. In addition to the letters to retailers, which we already have produced to you, Spin Master included with those letters a notice for retailers to post so that its customers could see it. In addition, while the CPSC issued and publicized the recall, the Spin Master website also disclosed the recall, placing a copy of the CPSC's notice on its site.

**Discovery That Is Not Properly Sought Here**

Interrogatories 3-9: Plaintiffs seek information relating to quality control and safety at Spin Master. I explained at our meeting that the reason we objected to these requests is that they do not relate to any of the claims in this case -- Plaintiffs seek economic damages for retail purchases of their Aqua Dots products, and the specifics of safety or quality control standards do not affect Plaintiffs' claims. You responded that you believe this discovery could lead to evidence admissible on the issue of punitive damages for the tort claims. However, because Plaintiffs' tort claims are precluded for the many reasons stated in our pending Rule 12 motion, including the economic loss rule, this is not a tort case. Further, because we are talking only about damages issues, and not liability, there can be no harm in waiting for the Court's ruling on the Rule 12 motion. For these reasons Spin Master continues to object to the burdensome and, we believe, irrelevant discovery that Plaintiffs request.

WINSTON & STRAWN LLP

July 17, 2008
Page 3


Interrogatories 15-17: Plaintiffs allege generally in the Consolidated Complaint that Spin Master represented that it performed testing. The allegation as to testing is not sufficient, as explained in the pending Rule 12 motion. Further, and I believe you will agree, Plaintiffs do not allege that Spin Master failed to perform the testing that you claim was represented. Nevertheless, because we were able to do it by showing you the succinct test results provided to Spin Master by third parties, we produced those test results so that you understand that indeed all required tests were performed. Without disputing that, you stated at our meeting that you wanted any notes or communications regarding testing. When I asked how this related to any claim of Plaintiffs, you were not able to provide a basis for seeking it and then responded that you want to see it anyway. Curiosity is not a basis for producing discovery. Because Plaintiffs have not stated a claim for misrepresentation of testing, and further because we have shown that indeed any required testing was performed, I do not understand there to be any reasonable basis for further production of the testing communications you want, especially because seeking them would not be a simple task.

Interrogatories 18-23: At our meeting you agreed that this set of interrogatories, while seeking somewhat different items, all are designed to elicit information as to when Spin Master discovered the basis for the recall. However, as I stated clearly and as set forth in the Rule 12 motion, Plaintiffs claim in this lawsuit only that Defendant Moose knew in advance of the recall that Aqua Dots contained a foreign substance, and *do not* claim that Spin Master knew that prior to the recall. Indeed, at the deposition of Kim Cosgrove two days ago, Ms. Cosgrove admitted that there is no basis to believe that Spin Master knew of the contents of Aqua Dots prior to the time of the recall. Nevertheless, you have submitted these several discovery requests attempting to find whether you can generate a claim against Spin Master. As I made clear at our meeting, the law precludes discovery designed for the purpose of finding a claim, and following are some citations:

- "The requirements of Rule 9(b) effectively prevent a claimant from searching for a valid claim after a civil action has been commenced." 2 Moore's Federal Practice, § 9.03(1)(a) (Matthew Bender 3d ed.); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (recognizing that a purpose of Rule 9(b) is "to eliminate fraud actions in which all the facts are learned after discovery"); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (affirming district court's grant of judgment in favor of defendants, stating in part that "in cases in which *fraud lies at the core of the action*, [Rule 9(b)] does not permit a complainant to file suit first, and subsequently to search for a cause of action") (citation omitted and emphasis in original).

- The Seventh Circuit recently noted that *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail ... to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Village of Lemont, Illinois*, 520 F.3d 797, 802-03 (7th Cir. 2008).

WINSTON & STRAWN LLP

July 17, 2008
Page 4

These authorities directly address the discovery you are pressing for, stating that it is not to be allowed.  In sum, Plaintiffs have not alleged knowledge by Spin Master prior to the recall, and you cannot use post-filing discovery to attempt to find claims that have not been made.

**Requests To Admit**

Finally, you raised at the meeting your belief that the responses to Plaintiffs' Requests To Admit were not proper because they contained objections, including objections to the vagueness of some of the terms used in the Requests.  I asked you to send the authority for that position, as we certainly made every effort to provide entirely appropriate responses.  You agreed to send me that law, but at least as of today have not done so.  I sent a letter two days ago asking for any such law, and you responded yesterday to not wait for that, because you are waiting for this letter.  We thus are sending this letter now, and understand that you are putting off any issue as to the appropriateness of our responses to the Requests To Admit.

**Discovery From Plaintiffs**

I reiterated at our meeting my past requests for documents from Plaintiffs showing their Aqua Dots transactions.  We discussed that some Plaintiffs no longer have a receipt of their transaction.  I proposed that in these cases you determine whether the purchase was made with a credit card and, if so, that you provide a copy of the credit card statement that would show the date and total amount of the purchase (which was the basis for having requested credit card statements in our initial discovery requests).  We can address any privacy concerns Plaintiffs have by redacting the card number.  I have received no response.

Please let me know whether, after reviewing the above, Plaintiffs have any remaining concerns with the Spin Master Defendants' discovery responses at this stage of the case.

Sincerely,

Thomas J. Wiegand

TJW:kp
cc:  David A. Clinton
     Dana M. Gilreath

# Exhibit 6

Order Form (01/2005)

## United States District Court, Northern District of Illinois

*MHN*

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 6387 | **DATE** | DEC 11 2007 |
| **CASE TITLE** | Robyn Williams vs. Spin Master Ltd., a Canadian Corp. | | |

**DOCKET ENTRY TEXT:**

Rule 16(b) Scheduling conference is set for February 4, 2008 at 9:00 a.m. Report of Parties Planning Conference pursuant to Rule 26(f) and the Proposed Scheduling Order pursuant to Rule 16(b) to be e-filed (forms of Report of Planning conference and Proposed Scheduling Order are available on the Court's web page or in chambers)

■[ For further details see text below.]                                      Docketing to mail notices

## STATEMENT

(a) Within fourteen (14) days of the receipt of this order, counsel shall meet as required by Rule 26(f) (Fed. R. Civ. P.) to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, and to develop a proposed discovery plan. In addition, counsel shall discuss the scheduling matters addressed in Rule 16(b) and © (Fed. R. Civ. P.). At the conclusion of the meeting of counsel, discovery may commence. The fact that a defendant has not answered does not relieve the parties from the obligation to comply with this order.

(b) Not less than five (5) days prior to the scheduling conference, counsel shall e- file the report of planning conference pursuant to Rule 26(f) and a proposed scheduling order pursuant to Rule 16(b). Failure to file a discovery plan will not be excused on the basis that counsel will be unable to estimate what discovery needs to be taken until answers to written discovery are received.

© If a defendant has not been served, or if no attorney has filed an appearance for a defendant who has been served, counsel for the plaintiff may advise the court of that fact, in writing, and request a continuance of the Rule 16(b) scheduling conference. Any such request shall include a detailed statement as to why service has not been accomplished and what steps are currently being taken to achieve service. If counsel for the plaintiff has been contacted by (or otherwise knows) counsel who has not filed an appearance, counsel for the plaintiff shall forward to other counsel a copy of the order setting the Rule 16 scheduling conference and proceed to schedule the Rule 26(f) meeting as if an appearance had been filed.

(d) The filing of a motion to dismiss will not relieve the parties from any obligation imposed by this order except by further order of this court.

Other Pretrial Conferences

In order to achieve a speedy, just and economical disposition of cases, the court may schedule periodic conferences or status hearings in all civil cases. These conferences may be held in chambers or in court with all counsel present, or with some or all counsel appearing telephonically. Any request to appear telephonically shall be in writing and made at least three (3) business days prior to the scheduled conference. In some cases, periodic written status reports may be used in lieu of conferences. The manner and frequency of pretrial conferences will be discussed at the Rule 16 scheduling conference.

| | Courtroom Deputy Initials: | PAMF |
|---|---|---|