UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re AQUA DOTS PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 1940 Case Number 1:08-cv-02364 Honorable David H. Coar |
| | ) | |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) | |

PLAINTIFFS' OPPOSITION TO SPIN MASTER LTD., SPIN MASTER, INC., TARGET CORPORATION, WAL-MART STORES EAST, LP, AND TOYS "R" US–DELAWARE, INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL ALLEGATIONS ................................................................................1

III.  LEGAL STANDARD............................................................................................2

IV.   APPLICATION OF ILLINOIS LAW ..................................................................3

V.    ARGUMENT .........................................................................................................4

    A.    Plaintiffs Adequately Plead Article III Standing ......................................4

        1.    Plaintiffs' Economic Injuries Constitute Injury in Fact.............................5

        2.    Exposure to the Hazardous Toys, Which Contain Toxins, Is
            Sufficient to Establish Standing.................................................................7

    B.    Constructive Knowledge............................................................................8

    C.    Plaintiffs State a Valid Claim Under the CPSA.........................................9

        1.    Plaintiffs Allege Violations of the Banned Toys Regulation......................9

        2.    Plaintiffs Sufficiently State Violations of the Reporting Rules ................11

            a.    Defendants Knowingly Violated 16 C.F.R. §1117.1 ....................11

            b.    Defendants Knowingly Failed to Report .......................................11

        3.    A Private Right of Action Exists for Violations of CPSA's
            Reporting Requirements ...........................................................................12

    D.    The CPSA Does Not Preempt Plaintiffs' State Law Claims ...................13

    E.    Plaintiffs State a Claim for Breach of Warranty......................................16

        1.    Defendants Had Notice of the Alleged Defect .........................................16

        2.    Aqua Dots Are Not Merchantable or Fit for Their Ordinary
            Purpose.....................................................................................................17

        3.    Defendants Breached Their Express Warranties with Regards to
            the Toys' Intended and Reasonably Foreseeable Uses .............................18

        4.    Express Warranty Claims Are Properly Pled............................................18

**Page**

      a.    Warranty Terms Are Pled ...................................................18

      b.    Basis of the Bargain Is Pled ..............................................19

   5.    Privity: Exceptions Exist and/or Is Not Required ....................................19

F.    Plaintiffs Have Alleged Viable Tort Claims ...........................................................20

   1.    Plaintiffs State Claims for Negligence and Strict Liability .......................20

G.    Plaintiffs Adequately Plead Their Statutory Consumer Claims ...........................22

   1.    Rule 9(b) Does Not Govern Plaintiffs' Consumer Protection Claims ....................................................................................................22

   2.    Plaintiffs State Claims Under Illinois' Consumer Protection Statutes ...................................................................................................22

   3.    Plaintiffs Sufficiently Alleged Claims Under the Various Consumer Protection Statutes of Their Home States.................................24

      a.    Arkansas..................................................................................24

      b.    Florida.....................................................................................25

      c.    Oklahoma................................................................................25

      d.    Pennsylvania ..........................................................................26

      e.    Texas .......................................................................................26

      f.    Missouri ..................................................................................27

      g.    New York ................................................................................27

      h.    Kentucky .................................................................................28

H.    Plaintiffs' Unjust Enrichment Claims Are Viable .................................................28

   1.    Plaintiffs Adequately Plead Unjust Enrichment Under Illinois Law.........29

      a.    Defendants' Retention Is Unjust, Inequitable, and Unconscionable........................................................................29

   2.    Unjust Enrichment Claims Are Properly Plead in the Alternative and Under Texas Law ...............................................................................30

**Page**

 I. The "Innocent Non-Manufacturer Doctrine" Does Not Preclude Claims ............31

VI. CONCLUSION.................................................................................................32

# TABLE OF AUTHORITIES

Page

## CASES

*B & B Land Acquisition, Inc. v. Mandell*,
  714 N.E.2d 58, 306 Ill. App. 3d 574 (Ill. App. Ct. 1999).................................................28

*Adkinson v. Kilgore*,
  970 S.W. 327 (Ark. Ct. App. 1998)...................................................................................28

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,
  499 F.3d 663 (7th Cir. 2007) ...............................................................................................3

*AKV Auto Transp., Inc. v. Syosset Truck Sales, Inc.*,
  806 N.Y.S .2d (N.Y. App. Div. 2005) ...............................................................................20

*Allen v. Wright*,
  468 U.S. 737 (1984)..............................................................................................................4

*Allstate Ins. Co. v. Daimler Chrysler*,
  No. 03 C 6107, 2004 WL 442679 (N.D. Ill. March 9, 2004) ...........................................19

*Am. Fertilizer Specialists, Inc. v. Wood*,
  635 P.2d 592 (Okla. 1981).................................................................................................16

*Am. Multi-Cinema, Inc. v. MCL REC, LLC*,
  No. 06 C 0063, 2008 WL 1744426 (N.D. Ill. April 11, 2008) .....................................8, 12

*API Enter., Inc. v. Am. Standard, Inc.*,
  No. CIV-07-853-M, 2008 WL 819335 (W.D. Okla. March 25, 2008) ............................25

*Arst v. Max Barken, Inc.*,
  655 S.W.2d 845 (Mo. Ct. App. 1983)................................................................................16

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*,
  397 U.S. 150 (1970)..............................................................................................................6

*Azimi v. Ford Motor Co.*,
  977 F. Supp. 847 (N.D. Ill. 1997) .......................................................................................9

*Baker v. Family Credit Counseling Corp.*,
  440 F. Supp. 2d 392 (E.D. Pa. 2006).................................................................................26

*Barlow v. Collins*,
  397 U.S. 159 (1970)..............................................................................................................5

*Barron v. Ford Motor Co.*,
  965 F.2d 195 (7th Cir. 1992) ...............................................................................................3

**Page**

*Bell Atlanta Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)........................................................................................2, 3

*Bic Pen Corp. v. Carter*,
    171 S.W. 3d 657 (Tex. App. 2005).........................................................................15, 16

*Bittler v. White & Co., Inc.*,
    203 Ill. App. 3d 26, 560 N.E.2d 979 (Ill. App. Ct. 1990)....................................9

*Blackmon v. Am. Home Prods. Corp.*,
    346 F. Supp. 2d 907 (S.D. Tex. 2004) ..............................................................8

*Boehm v. Fox*,
    473 F.2d 445 (10th Cir. 1973) .........................................................................17

*Brazier v. Hasbro, Inc.*,
    No. 99 Civ. 11258, 2004 WL 515536 (S.D.N.Y. March 16, 2004)....................17

*Briehl v. GMC*,
    172 F.3d 623 (8th Cir. 1999) ...........................................................................5

*Brown v. Daisy Mfg. Co.*,
    724 F. Supp. 44 (N.D.N.Y. 1989) ....................................................................14

*Brown v. R.J. Reynolds Tobacco Co.*,
    92-0836, 1992 WL 161128 (E.D. La. June 23, 1992) .......................................8

*Brown v. SBC Communications, Inc.*,
    No. 05-777, 2007 WL 684133 (S.D. Ill. March 1, 2007) ..................................23

*Brownlee v. Conine*,
    957 F.2d 353 (7th Cir. 1992) ...........................................................................3

*Butcher v. Robertshaw Controls Co.*,
    550 F. Supp. 692 (D. Md. 1981).................................................................10, 13, 14

*Carlough v. Amchem Prods.*,
    834 F. Supp. 1437 (E.D. Pa. 1993) ..............................................................4, 7

*Carroll Instrument Co., Inc. v. B.W.B. Control, Inc.*,
    677 S.W.2d 654 (Tex. App. 1984)....................................................................16

*CBS, Inc. v. Ziff-Davis Pub. Co.*,
    553 N.E.2d 997 (N.Y. 1990)............................................................................19

**Page**

*Cement Kiln Recycling Coal. v. EPA,*
    493 F.3d 207 (7th Cir. 2007) ................................................................10

*Christensen v. Boone,*
    483 F.3d 454 (7th Cir. 2007) ..................................................................3

*Churchill Village, LLC v. GE,*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..................................................14

*City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,*
    736 S.W.2d 247 (Tex. App. 1987).........................................................30

*Clayton v. Batesville Casket Co., Inc.,*
    No. 07-214, 2008 WL 1970312 (E.D. Ark. May 7, 2008).........................25

*Clement v. St. Charles Nissan, Inc.,*
    103 S.W.3d 898 (Mo. App. 2003) .........................................................27

*Cole v. GMC,*
    484 F.3d 717 (5th Cir. 2007) ..................................................................6

*Collins v. DaimlerChrysler Corp.,*
    894 So. 2d 988 (Fla. Dist. Ct. App. 5th Dist. 2004) ................................25

*Colon v. Bic USA,*
    136 F. Supp. 2d 196 (S.D.N.Y. 2000)....................................................15

*Connick v. Suzuki Motor Co. Ltd.,*
    675 N.E.2d 584, 174 Ill. 2d 482 (Ill. 1990) ...................................16, 17, 23, 24

*Corley v. Rosewood Care Ctr., Inc.,*
    142 F.3d 1041 (N.D. Ill. 1998) .............................................................22

*Crispin Co. v. Petrotub-S.A.,*
    No. CIV-05-159-C, 2006 WL 2812535 (W.D. Okla. September 28, 2006)......12

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo,*
    349 F.3d 376 (7th Cir. 2003) ................................................................30

*Danvers Motor Co. v. Ford Motor Co.,*
    432 F.3d 286 (3d Cir. 2005).....................................................................5

*DeAngelis v. Timberpeg East, Inc.,*
    858 N.Y.S. 2d 410 (N.Y. App. 3rd Dep't Div. 2008).............................27

**Page**

*Dillon v. Evanston Hosp.*,
771 N.E.2d 357, 199 Ill. 2d 483 (Ill. 2002) ....................................................20

*Drake v. N. Am. Phillips Corp.*,
204 F. Supp. 2d 1204 (E.D. Mo. 2002)....................................................31, 32

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
438 U.S. 59 (1978)...........................................................................................7

*Durove v. Fabian Transport, Inc.*,
No. 04-7000, 2004 WL 2912891 (S.D.N.Y. December 14, 2004) .....................9

*Eberts v. Kawasaki Motors Corp., U.S.A.*,
306 F. Supp. 2d 890 (D.N.D. 2004)................................................................15

*Engelbecht v. Daimlerchrysler Corp.*,
No. G-06-CV-800, 2007 WL 1040886 (S.D. Tex. April 2, 2007)....................31

*Everett v. TK Taito, L.L.C.*,
178 S.W.3d 844 (Tex. Ct. App. 2005) ............................................................26

*Farm Bureau Ins. Co. v. Case Corp.*,
878 S.W.2d 741 (Ark. 1994)..........................................................................21

*Felley v. Singleton*,
705 N.E.2d 930 (Ill. App. Ct. 2d Dist. 1999)..................................................18

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.*,
960 S.W.2d 41 (Tex. 1998).............................................................................21

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000).............................................................................30

*Frederick v. Simmons Airlines*,
144 F.3d 500 (7th Cir. 1998) ...........................................................................3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167 (2000).........................................................................................7

*Gastineau v. Fleet Mortg. Corp.*,
137 F.3d 490 (7th Cir. 1998) ...........................................................................3

*Gavin v. AT&T Corp.*,
543 F. Supp. 2d 885 (N.D. Ill. 2008) ..............................................................23

**Page**

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)..................................................................................14, 15, 16

*Gershengorin v. Vienna Beef, LTD.*,
    No. 06 C 6820, 2007 WL 2840476 (N.D. Ill. September 28, 2007)...................................16

*Gibson v. Chicago*,
    910 F.2d 1510 (7th Cir. 1990) ...........................................................................2

*Giuffrida v. American Family Brands, Inc.*,
    Nos. 96-7062, 96-7256, 1998 WL 196402 (E.D. Pa. April 23, 1998)..............................19

*Goss v. Schering-Plough Corp.*,
    No. 6:06-CV-251, 2006 WL 2546494 (E.D. Tex. August 30, 2006) ...............................31

*Gould v. Artisoft, Inc.*,
    1 F.3d 544 (7th Cir. 1993) ...............................................................................4

*Graves v. Berkowitz*,
    15 S.W.3d 59 (Mo. Ct. App. 2000 ....................................................................28

*Grove v. Manchester Tank & Equip. Co.*,
    Nos. 07-1263, 07-1268, 07-1280, 2008 WL 2626366
    (C.D. Ill. June 26, 2008) .................................................................................31

*Guarantee Elec. Co. v. Big Rivers Elec. Corp.*,
    669 F. Supp. 1371 (W.D. Ky. 1987 ...................................................................28

*Haeberle v. McCall, Currens, Toper & Thompson, P.S.C.*,
    No. 05-2265, 2007 WL 1201587(Ky. Ct. App. April 20, 2007..................................28

*Harmon v. Plapao Labs.*,
    218 S.W. 701 (Mo. Ct. App. 1920).....................................................................8

*Harrison v. Leviton Mfg. Co., Inc.*,
    No. 05-0491, 2006 WL 2990524 (N.D. Okla. October 19, 2006) ...................................8

*Heil Co. v. Polar Corp.*,
    191 S.W.3d 805 (Tex. 3rd. Div. App. 2006) ........................................................20

*Henry v. Mylan Pharm., Inc.*,
    No. 05-CV-40092, 2005 WL 2101049 (W.D. Mo. August 31, 2005)..............................32

*Henry v. Rehab Plus Inc.*,
    404 F. Supp. 2d 435 (E.D.N.Y. 2005) ...............................................................19

**Page**

*Hess v. Chase Manhattan Bank, USA, N.A.*,
    220 S.W.3d 758 (Mo. 2007) ...............................................................................27

*Hosp. Comp. Sys., Inc. v. Staten Island Hosp.*,
    788 F. Supp. 1351 (D.N.J. 1992) ......................................................................16

*Hyundai Motor Am., Inc. v. Goodin*,
    822 N.E.2d 947 (Ind. 2005) ..............................................................................19

*In re Diamond Mortg. Corp.*,
    118 B.R. 588 (Bankr. N.D. Ill. 1989) ...............................................................23

*In re Genetically Modified Rice Litig.*,
    Nos. 06-1811, 07-825, 2007 U.S. Dist. LEXIS 76435
    (E.D. Mo. October 15, 2007) ............................................................................21

*In re Intel Corp. Microprocesor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007)....................................................................3

*In re Managed Care Litig.*,
    185 F. Supp. 2d 1310 (S.D. Fla. 2002) .............................................................29

*In re Terazosin Hydrochloride*,
    220 F.R.D. 672 (S.D. Fla. 2004).......................................................................29

*Indem. Ins. Co. v. Am. Aviation, Inc.*,
    891 So. 2d 532 (Fla. 2004)..........................................................................20, 21

*Int'l Union of Operating Eng'rs, Local 148  v. Ill. Dept. of Employment Sec.*,
    828 N.E.2d 1104, 215 Ill. 2d 37 (2005) .............................................................5

*Jackson v. Swift-Eckrich*,
    830 F. Supp. 486 (W.D. Ark. 1993).................................................................16

*Kasel v. Remington Arms Co.*,
    24 Cal. App. 3d 711 (1972) ................................................................................8

*Kelly v. Hanscom Bros, Inc.*,
    331 A.2d 737 (Pa. Super. Ct. 1974)..................................................................17

*Kelsey v. Muskin, Inc.*,
    848 F.2d 39 (2d Cir. 1988).................................................................................9

*Killingsworth v. HSBC Bank Nev., N.A.*,
    507 F.3d 614 (7th Cir. 2007) ..............................................................................2

**Page**

*Labajo v. Best Buy Stores, L.P.,*
    478 F. Supp. 2d 523 (S.D.N.Y. 2007)..............................................................................3

*LaChance v. Hollenbeck,*
    695 S.W.2d 618 (Tex. App. 1985)..................................................................................30

*Lapkin v. Garland Bloodworth, Inc.,*
    23 P.3d 958 (Okla. Civ. App. 2000..............................................................................28

*Leal v. Weightman,*
    No. 01-03-01006-CV, 2004 WL 2251570
    (Tex. App. October 7, 2004)..........................................................................................30

*Leipart v. Guardian Indus.,*
    234 F.3d 1063 (9th Cir. 2000) ..........................................................................13, 14, 15

*Limestone Dev. Corp. v. Lemont,*
    520 F.3d 797 (7th Cir. 2008) ..........................................................................................2

*Lohmann & Rauscher, Inc. v. Ykk (U.S.A.) Inc.,*
    477 F. Supp. 2d 1147 (D. Kan. 2007)............................................................................18

*Los Angeles Nut House v. Holiday Hardware Corp.,*
    825 F.2d 1351 (9th Cir. 1987) ......................................................................................16

*Loughridge v. Chiles Power Supply Co.,*
    431 F.3d 1268 (10th Cir. 2005) ......................................................................................8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..............................................................................................4, 6, 7

*Manheim v. Ford Motor Co.,*
    201 So. 2d 440 (Fla. 1967)............................................................................................19

*Matagorda County v. Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool,*
    975 S.W.2d 782 (Tex. App. 1998 ..................................................................................28

*McDonnell Douglas Corp. v. Thiokol Corp.,*
    124 F.3d 1173 (9th Cir. 1997) ......................................................................................19

*McMurray v. Merck & Co., Inc.,*
    No. C 07-1007, 2007 WL 1456042 (N.D. Cal. May 17, 2007) ........................................18

*Medtronic Inc. v. Lohr,*
    518 U.S. 470 (1996)......................................................................................................14

**Page**

*Merkle v. Health Options, Inc.*,
  940 So. 2d 1190 (Fla. Dust, Ct, App. 4th Dist. 2006)......................................28

*Miller v. Horn*,
  254 S.W.3d 920 (Mo. Ct. App. 2008)..............................................................28

*Mills v. Curioni, Inc.*,
  238 F. Supp. 2d 876 (E.D. Mich. 2002).............................................................8

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  435 N.E.2d 443, 91 Ill. 2d 69 (Ill. 1982) ........................................................20

*Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*,
  276 F.3d 845 (6th Cir. 2002) ...........................................................................21

*Muelhbauer v. GMC*,
  431 F. Supp. 2d 847 (N.D. Ill. 2006) ...............................................7, 28, 29, 30

*Mullins v. Wyatt*,
  887 S.W.2d 356 (Ky. 1994) ..............................................................................16

*Muncy v. Magnolia Chemical Company*,
  437 S.W.2d 15 (Tex. App. 1969) ........................................................................8

*N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*,
  929 P.2d 288 (Okla. Ct. App. 1996) .................................................................28

*O'Neil v. Simplicity, Inc.*,
  553 F. Supp. 2d 1110 (D. Minn. 2008) ...............................................................6

*Oak Lawn Pavillion, Inc. v. United States Dept. of Health and Human Servs.*,
  No. 98 C 614, 1999 WL 1023920 (N.D. Ill. 1999).............................................5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  647 N.E.2d 741 (N.Y. 1995)..............................................................................28

*Oxford v. Williams Cos., Inc.*,
  137 F. Supp. 2d 756 (E.D. Tex. 2001) ..............................................................30

*Peck v. Bridgeport Machs., Inc.*,
  237 F.3d 614 (6th Cir. 2001) ..............................................................................8

*Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005)..............................................................................22

**Page**

*Perona v. Volkswagen of Am., Inc.*,
    684 N.E.2d 859, 292 Ill. App. 3d 59 (Ill. App. Ct. 1997)..................................17

*Pfizer, Inc. v. Farsian*,
    682 So. 2d 405 (Ala. 1996) ...........................................................................8

*Pickler v. Fisher*,
    644 S.W.2d 644 (Ark. Ct. App. 1983) ...........................................................16

*Pinney v. Nokia, Inc.*,
    402 F.3d 430 (4th Cir. 2005) ........................................................................17

*Plas-Tex, Inc. v. United States Steel Corp.*,
    772 S.W.2d 442 (Tex. 1999)..........................................................................17

*Popp v. Cash Station, Inc.*,
    244 Ill. App. 3d 87, 613 N.E.2d 1150 (Ill. App. 1 Dist. 1992).........................24

*Post v. Am. Cleaning Equip. Corp.*,
    437 S.W.2d 516 (Ky. 1968) ..........................................................................28

*Potter v. Electrolux Home Prod., Inc.*,
    No. 06-C- 4811, 2006 WL 2930972 (N.D. Ill. October 11, 2006) ...................31

*Presnell Managers, Inc. v. E.H. Const.*,
    134 S.W.3d 575 (Ky. 2004)..........................................................................20

*Pritchard v. Liggett & Myers Tobacco Co.*,
    350 F.2d 479 (3d Cir. 1965).........................................................................17

*Pro-Comp Mgmt, Inc., et al., v. R.K. Enter., LLC.*,
    366 Ark. 463 (Ark. 2006) .............................................................................28

*Prophet v. Myers*,
    No. 08-0492, 2008 WL 2328349 (S.D. Tex. June 4, 2008)..............................22

*Rape v. Medtronic, Inc.*,
    No. Civ.A. 9:04CV225, 2005 WL 147268 (E.D. Tex. January 11, 2005) ...................8, 14

*Rastelli v. Goodyear Tire & Rubber Co.*,
    79 N.Y.2d 289 (1992) ...................................................................................8

*Recreation Servs. Inc. v. Odyssey Fun World, Inc.*,
    952 F. Supp. 594 (N.D. Ill. 1997)..................................................................22

**Page**

*Redmac, Inc. v. Computerland of Peoria*,
    489 N.E.2d 380 , 140 Ill. App. 3d 741 (Ill. App. Ct. 3d Dist. 1986) ...............................18

*Rios v. State Farm & Fire Cas. Co.*,
    469 F. Supp. 2d 727 (S.D. Iowa 2007) ..............................................................................3

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) .......................................................................................5, 6

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ......................................................................28

*Romano v. Motorola, Inc.*,
    No. 07-60517, 2007 WL 4199781 (S.D. Fla. November 26, 2007) ...........................22, 25

*Royal Business Machs., Inc. v. Lorraine Corp.*,
    633 F.2d 34 (7th Cir. 1980) ...........................................................................................19

*Royal Typewriter Co. v. Xerographic Supplies Corp.*,
    719 F.2d 1092 (11th Cir. 1983) ......................................................................................16

*Rush v. Whirlpool Corp.*,
    No. 07-2022, 2008 WL 509562 (W.D. Ark. February 22, 2008) ...............................20, 24

*S.D.S. Autos, Inc. v. Chrzanowski*,
    982 So. 2d 1 (Fla. Dist. Ct. App. 1st Dist. 2007)............................................................25

*Salazar v. Merck & Co., Inc.*,
    No. 05-0445, 2005 WL 2875332 (S.D. Tex. November 2, 2005) .......................................8

*Saltzman v. Pella Corp.*,
    No.06-CV-04481, 2007 WL 844883 (N.D. Ill. March 20, 2007)......................................30

*Sanchez v. Wal-Mart Stores, Inc.*,
    No. 06-CV-2573, 2007 WL 1345706 (E.D. Cal. May 8, 2007) ........................................16

*Sappington v. Skyjack Inc.*,
    No. 04-5076-CV-SW-FJG, 2008 WL 795598 (W.D. Mo. March 20, 2008)....................32

*In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litigation*
    Nos. 05-4742, 05-2623, 2006 WL 3754823 (N.D. Ill. December 18, 2006)....................29

*Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*,
    199 S.W.3d 228 (Mo. Ct. App. 2006)............................................................................27

**Page**

*Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*,
    703 S.W.2d 901 (Mo. 1986) ........................................20

*Sharp v. Kosmalski*,
    40 N.Y.2d 119 (N.Y. 1976) ........................................28

*ShopLocal LLC v. Cairo, Inc.*,
    No. Civ.A. 05-C-6662, 2006 WL 495942 (N.D. Ill. February 27, 2006) ........30

*Sierra Club v. Morton*,
    405 U.S. 727 (1972).........................................7

*Singer v. AT & T Corp.*,
    185 F.R.D. 681 (S.D. Fla.1998)........................................29

*Small v. Lorillard Tobacco Co.*,
    720 N.E.2d 892 (N.Y. 1999).........................................27

*Smith v. BOC Group PLC*,
    No. 00-C-7909, 2001 WL 477237 (N.D. Ill. May 4, 2001)................18

*Smith v. Hennessey & Assocs.*,
    103 S.W.3d 567 (Tex. App. 2003)........................................26

*Solarz v. DaimlerChrysler Corp.*,
    No. 2033, 2002, 2002 WL 452218 (Pa.Com.Pl.) (March 13, 2002)................26

*Sollenbarger v. Mountain States Tel. & Tel. Co.*,
    121 F.R.D. 417 (D.N.M.1988)........................................29

*Soules v. Gen. Motors Corp.*,
    402 N.E.2d 599, 79 Ill. 2d 282 (Ill. 1980) ........................21

*Southern Broad. Group, LLC v. Gem Broad., Inc.*,
    145 F. Supp. 2d 1316 (M.D. Fla. 2001)........................................19

*Spivack v. Berks Ridge Corp.*,
    586 A.2d 402 (Pa. Super. Ct. 1990).........................................20

*State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*,
    557 So. 2d 107 (Fla. Dist. Ct. App. 3d Dist. 1990).........................17

*Stella v. LVMH Perfumes and Cosmetics ISA, Inc.*,
    No. 07 C 6509, 2008 WL 26696622 (N.D. Ill. July 8, 2008) ................16

**Page**

*Stevens v. Motorists Mut. Ins. Co.*,
  759 S.W.2d 819 (Ky. 1988) ........................................................................................28

*Stoeckinger v. Presidential Fin. Corp. of Del. Valley*,
  948 A.2d 828 (Pa. Super. Ct. 2008) ............................................................................28

*Summerline v. Scott Petroleum Corp.*,
  324 F. Supp. 2d 810 (S.D. Miss. 2004) ...............................................................15, 16

*Sutton v. St. Jude Med. S.C., Inc.*,
  419 F.3d 568 (6th Cir. 2005) .................................................................................4, 6

*Swenson v. Emerson Elec. Co.*,
  374 N.W.2d 690 (Minn. 1985) .............................................................................13, 14

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) .....................................................................................3

*Tober v. Graco Childrens' Prods.*,
  No. 02-1682, 2004 WL 1085178 (S.D. Ind. March 4, 2004) ........................................15

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) .....................................................................................21

*United States v. Atl. Research Corp.*,
  127 S. Ct. 2331 (2007) ...............................................................................................10

*United States  v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
  412 U.S. 669 (1973) ......................................................................................................4

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
  454 U.S. 464 (1982) ......................................................................................................6

*Van Waters & Rogers, Inc. v. Quality Freezers, Inc.*,
  873 S.W.2d 460 (Tex. Ct. App. 1994) .........................................................................27

*Verb v. Motorola, Inc.*,
  284 Ill. App. 3d 460, 672 N.E.2d 1287, Ill. Dec. 275 (Ill. App. Ct. 1996) .......................7

*Waggoner v. Town & Country Mobile Homes, Inc.*,
  808 P.2d 649 (Okla. 1990) ..........................................................................................20

*Walker v. S.W.I.F.T. SCRL*,
  491 F. Supp. 2d 781 (N.D. Ill. 2007) .............................................................................6

**Page**

*Walker v. Woolbright Motors, Inc.*,
620 S.W.2d 451 (Mo. Ct. App. 1981)..........................................................................19

*Wheeler v. Sunbelt Tool Co., Inc.*,
537 N.E.2d 1332, 181 Ill. App. 3d 1088 (Ill. App. 4 Dist. 1989).....................................18

*Whitmore v. Arkansas*,
495 U.S. 149 (1990)...........................................................................................................6

*Wiernik v. PHH US Mortgage Corp.*,
736 A.2d 616 (Pa. Super. Ct. 1999)...............................................................................28

*Wikoff v. Vanderveld*,
897 F.2d 232 (7th Cir. 1990) ..........................................................................................19

*Williams v. Gerber Prods. Co.*,
523 F.3d 934 (9th Cir. 2008) ..........................................................................................18

*Windy City Metal Fabricators & Supply, Inco. v. CIT Technical Financing*,
No. 07-1567, 2008 WL 2941171 (7th Cir. August 1, 2008).............................................22

*Wood v. City of Elgin*,
No. 07 C 05418, 2008 WL 151382 (N.D. Ill. January 14, 2008) ...................................2, 3

*Woodill v. Parke Davis & Co.*,
58 Ill. App. 3d 349, 374 N.E.2d 683 (Ill. App. Ct. 1978)....................................................8

*Worldwide Equip., Inc. v. Mullings*,
11 S.W.3d 50 (Ky. Ct. App. 1999) ....................................................................................8

*Yates v. Clifford Motors, Inc.*,
423 A.2d 1262 (Pa. Super. 1980)....................................................................................16

*Young v. Robertshaw Controls Co.*,
560 F. Supp. 288 (N.D.N.Y. 1983)...................................................................................14

*Zepik v. Tidewater Midwest, Inc.*,
856 F.2d 936 (7th Cir. 1988) ....................................................................................12, 13

*Zions First Nat. Bank v. Paul Green*,
No. 07-3760, 2007 WL 4109125 (N.D. Ill. November 16, 2007) ...................................21

*Zwiercan v. Gen. Motors Corp.*,
No. 3232, 2002 WL 31053838 (Pa. Com. Pl. September 11, 2002)................................26

Page

## STATUTES, RULES AND REGULATIONS

15 United States Code
  §1261 ................................................................................................11
  §2051(b) ..........................................................................................15
  §2064(d) ..........................................................................................15
  §2072 ......................................................................................9, 11, 15
  §2072(a) ......................................................................................9, 13
  §2072(c) ..........................................................................................13
  §2074 ..............................................................................................13
  §2074(a) ..........................................................................................13
  §2075 ..............................................................................................13
  §2075(a) ..........................................................................................13

Arkansas Codes Annotated
  §4-88-101 ........................................................................................24
  §4-88-107 ........................................................................................24
  §4-88-107(10) ..................................................................................24

Fla. Stat.
  §501.201 ..........................................................................................25

735 ILCS
  5/1-621(c) ..................................................................................31, 32

815 ILCS
  §505/1 ..............................................................................................22

Ky. Rev. Stat. Ann.
  §411.340 ............................................................................................8
  §367.170(1) ......................................................................................28

Mo. Rev. Stat.
  §537.762 ....................................................................................31, 32
  §537.762(2) ......................................................................................32

New York's Deceptive Business Acts and Practices Statute,
  N.Y. Gen. Bus. Law
  §349 ................................................................................................27

15 Okla. St.
  §751 ................................................................................................25

73 Pa. Cons Stats.
  §201-1 ..............................................................................................26

Page

§201-2(4)(i)-(xxi) ..................................................................................................26
§201-2(4)(v) ........................................................................................................26

Tex. Bus. & Com. Code Ann.
§17.50(a) .............................................................................................................27
§171.41 ...............................................................................................................26

Tex. Civ. Pract. & Rem. Code
§82.003 .............................................................................................................8, 31
§82.003(a)(6) ......................................................................................................31

Federal Rule of Civil Procedure
Rule 8 ...................................................................................................................3
Rule 8(a) .............................................................................................................22
Rule 8(e)(2) ........................................................................................................30
Rule 9(b) .............................................................................................21, 22, 25, 26
Rule 12 ...............................................................................................................30

16 C.F.R.
§1500.18(a)(2) .................................................................................................9, 10
§1117.1 .......................................................................................................9, 11, 12
§1117.3 ...............................................................................................................11
§1117.4(a) ..........................................................................................................11
§1117.9(c) ..........................................................................................................12

62 Fed. Reg. 39,827 (July 24, 1997) ..................................................................12

Mo. Code Regs.
§60-80.020(2) .....................................................................................................27

## SECONDARY AUTHORITIES

13 C.A. Wright & A. Miller,
*Federal Practice & Procedure* (2d ed. 2008)
§3531.4 .................................................................................................................5

H.R. 4040, 110th Cong. §231(a) (2008) .............................................................13

Restatement (First) of Restitution §1 (1937) .....................................................28

Am. Jur. *Restitution* §13 (2008) ........................................................................28

## I.    INTRODUCTION

Defendants Spin Master, Ltd, Spin Master, Inc. (collectively "Spin Master"), Target Corp. ("Target"), Wal-Mart Stores, Inc. ("Wal-Mart"), and Toys "R" Us, Inc. ("Toys "R" Us") (collectively "Retailer Defendants") exposed thousands of children to dangerous chemicals through Aqua Dots toys that were marketed directly for young children.[1]  Knowing that the toys were intended for use by small children likely to handle, lick, taste, bite, and/or swallow the toys, Defendants failed to conduct proper testing to ensure that the millions of Aqua Dots they distributed and/or sold throughout the United States were safe.  Yet Defendants would have this Court find that the parents that purchased the toxic toys and the children that played with the toxic toys have ***no*** remedy for a refund for the defective toys.  In fact, Defendants almost argue that such coatings do not make the product unfit as a child's toy.  Defendants' offer of replacement toys from the same unreliable source is no complete remedy.  The law does not intend that victims be left without a remedy while the wrongdoer reaps the benefits of the profits.  Rather, the law provides specific remedies to redress Defendants' misrepresentations and omissions, Defendants' sale of a toxic substance to which children were exposed, and the fact that consumers did not receive the benefit of their bargain.

## II.    FACTUAL ALLEGATIONS

Aqua Dots contains packets of small, brightly colored beads which fuse together when sprayed with water.  ¶¶40-42.[2]  On November 7, 2007, the Consumer Products Safety Commission ("CPSC") announced a recall of Aqua Dots toys (hereinafter referred to as the "Hazardous Toys").  The Hazardous Toys were found to be coated with 1,4 butanediol, a substance that metabolizes into gamma-hydroxy butyrate (known as "GHB" or the "date rape drug") and is capable of causing significant harm or even death when ingested.  *See* ¶¶1, 4.  Millions of potentially deadly Aqua Dots toys were distributed, marketed, and sold throughout the United States by Spin Master Ltd. and its wholly-owned subsidiary Spin Master Inc. (collectively "Spin Master").  ¶¶4, 45.  Plaintiffs each purchased or received the toxic Aqua Dots.  ¶¶11-19.

---

[1]    Plaintiffs name Wal-Mart, Inc. and Toys "R" Us, Inc. as Defendants, however, neither entity joins in the motion to dismiss.  Instead, for reasons not known to Plaintiffs, Wal-Mart Stores East, LP and Toys "R" Us–Delaware, Inc. seek dismissal.

[2]    All "¶" and "¶¶" references herein are to the Consolidated Amended Class Action Complaint.

In October 2007, Defendant Moose became aware of the hazardous 1,4 butanediol coating after children in Australia became ill from ingesting Aqua Dots. ¶50. In October 2007, Moose informed Spin Master that the Aqua Dots were coated with butanediol 1,4. ¶75. On November 6, 2007, Moose ordered a recall of the Aqua Dots it sold throughout Australia, offering a full-refund or safe replacement beads. ¶57. On November 7, 2007, the CPSC announced a recall of approximately 4.2 million Aqua Dots in the United States, and directed the toys to be removed from children immediately. ¶4. The recall was complicated, fraught with hurdles, and instead of offering a full refund to consumers, merely replaced the toxic beads with other beads from Defendants. ¶5. The recall failed to ensure the replacement beads were manufactured and distributed with proper quality and safety control measures. ¶6. It also required concerned parents, who rightfully lost trust in the safety of Defendants' products, to continue to deal with Defendants, rather than receive a refund. But Plaintiffs are not stuck with Defendants' take it or leave it offer of other potentially hazardous toys. As explained herein, Plaintiffs are entitled to damages, restitution, and the cost of diagnostic screening as remedies under applicable federal and state statues, regulations, and common law.

## III.    LEGAL STANDARD

A court must accept a complaint's well-pleaded allegations as true and draw all favorable inferences for the plaintiff. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case." *Wood v. City of Elgin*, No. 07 C 05418, 2008 WL 151382, at *1 (N.D. Ill. January 14, 2008) (citing *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)).[3] The Supreme Court in *Bell Atlanta Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), made clear it was not imposing a heightened pleading standard: "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*, at 1974; *see also Limestone Dev. Corp. v. Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) ("[*Twombly*] must not be over read. The Court denied 'requir[ing] heightened fact pleading of specifics.'"). Following *Twombly*, the Seventh Circuit has held that a complaint should be dismissed only when the "factual

---

[3]    All cited authority found on electronic databases, Bankruptcy Reporter and Code of Federal Regulations are attached as Exhibit 3 to the Declaration of Thomas J. O'Reardon II in Support of Plaintiffs' Opposition to Spin Master Ltd., Spin Master, Inc., Target Corporation, Wal-Mart Stores East, LP, and Toys "R" Us-Delaware, Inc.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("O'Reardon Decl."). All "Ex." and "Exs." references are to the O'Reardon Decl.

detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (*Twombly* "did not . . . supplant the basic notice-pleading standard."). Contrary to Defendants' suggestion, all Plaintiffs are required to do "is 'outline or adumbrate' a violation of the statute or constitutional provision upon which [they] rel[y], and connect the violation to the named defendants." *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).[4] Although Plaintiffs do in fact painstakingly detail their claims, a conclusory complaint does not necessitate automatic dismissal. *Id.* This ensures that "claims are determined on their merits rather than on pleading technicalities." *Christensen v. Boone,* 483 F.3d 454, 458 (7th Cir. 2007). Finally, "[a]ll reasonable inferences are to be drawn in favor of the plaintiff." *Wood*, 2008 WL 151382, at *1 (citing *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 493 (7th Cir. 1998)). Thus, under any pleading standard, Defendants' motion should be denied.

## IV.    APPLICATION OF ILLINOIS LAW

Defendants' attempt to force this Court to decide the substantive law to be applied to Plaintiffs' claims is premature. Class certification is the proper juncture at which this Court should engage in a choice of law analysis. *See In re Intel Corp. Microprocesor Antitrust Litig.*, 496 F. Supp. 2d 404, 411 (D. Del. 2007) (because the "litigation is still in its infancy," choice of law questions should be deferred until class certification); *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007) (choice-of-law analysis more appropriate at class certification stage after discovery); *Rios v. State Farm & Fire Cas. Co.*, 469 F. Supp. 2d 727, 741-42 (S.D. Iowa 2007) (same). However, if this Court should decide to conduct a choice of law analysis now, then it is appropriate to apply Illinois law to each of Plaintiffs' claims. "A federal court sitting in diversity, applies the choice of law rules of the state in which it sits." *Frederick v. Simmons Airlines*, 144 F.3d 500, 503 (7th Cir. 1998). In deciding a choice of law question, the Court first must determine whether there is actually a conflict between the laws. *See Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992). Defendants have failed to identify any actual conflict amongst the various state laws. Yet, in the Seventh Circuit, if parties have not identified an actual conflict between the states'

---

[4]    Here as elsewhere, all citations are omitted and all emphasis is added unless otherwise noted.

laws then the law of the forum applies. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993). As such, Illinois law should apply.

Regardless of whether this Court ultimately decides to apply the law of Illinois, or the law of each individual Plaintiff's home state, the Complaint states claims against each of the Defendants as explained herein.

## V.    ARGUMENT[5]

### A.    Plaintiffs Adequately Plead Article III Standing

Defendants' motion focuses primarily on the erroneous assertion that Plaintiffs lack standing to pursue their claims. Notably, Defendants' challenge is limited to whether Plaintiffs suffered an injury in fact. As explained below, Plaintiffs' well-pled allegations easily satisfy this low-threshold requirement.

Standing is satisfied if a plaintiff has a "'personal stake in the outcome of the controversy.'" *Carlough v. Amchem Prods.*, 834 F. Supp. 1437, 1446 (E.D. Pa. 1993). General factual allegations may be sufficient to show standing when assessing the issue on a motion to dismiss. *See Sutton v. St. Jude Med. S.C., Inc.,* 419 F.3d 568, 571 (6th Cir. 2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). The Supreme Court has repeatedly held that a plaintiff has the requisite personal stake if they can show: (1) a concrete injury in fact (2) traceability; and (3) redressability. *See Carlough*, 834 F. Supp. at 1446 (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)). The severity of the injury is immaterial; according to the Supreme Court, "'[t]hese injuries need not be large, an "'identifiable trifle' will suffice."'" *Id.*; *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 (1973). Here, Defendants only challenge the first component of standing – injury in fact.

Plaintiffs have adequately alleged injuries sufficient to show injury in fact and to confer standing through: (1)economic harm from the purchase of a hazardous and defective product containing 1,4 butanediol, which was declared a health hazard by the FDA in 1999; and (2) costs for diagnostic testing. Defendants try to undercut Plaintiffs' claim of harm by suggesting a physical injury is necessary. However, Plaintiffs have not plead a personal injury case, but bring their claims

---

[5]    Plaintiffs' Opposition to Spin Master Ltd., Spin Master, Inc., Target Corporation, Wal-Mart Stores East, LP, and Toys "R" Us–Delaware, Inc.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint incorporates all relevant arguments made in Plaintiffs' Opposition to Moose Enterprise's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint.

to recover for their purchase price for the toys (¶¶7, 11-19) and out-of-pocket losses stemming from the exposure to the Hazardous Toys.  ¶¶32-33, 36-39, 40-49.

### 1.    Plaintiffs' Economic Injuries Constitute Injury in Fact

Economic injuries are sufficient to show injury in fact for purposes of Article III.  *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005); 13 C.A. Wright & A. Miller, *Federal Practice & Procedure* §3531.4 (2d ed. 2008).  *Monetary* harm is a classic form of injury in fact.  *Danvers Motor*, 432 F.3d at 293; *see also Oak Lawn Pavillion, Inc. v. United States Dept. of Health and Human Servs.*, No. 98 C 614, 1999 WL 1023920, at *5 (N.D. Ill. 1999) (citing *Barlow v. Collins*, 397 U.S. 159 (1970) (allowing standing for those suffering economic harms)); *Int'l Union of Operating Eng'rs, Local 148  v. Ill. Dept. of Employment Sec.*, 828 N.E.2d 1104, 1115, 215 Ill. 2d 37, 54 (2005).  Defendants erroneously argue that Plaintiffs "attempt to hide their lack of injury by grounding their claims in contract".  Defs' Mem. at 6.  Here, all Plaintiffs have adequately alleged economic injuries in their purchase of defective and dangerous toys and/or diagnostic screening.  ¶7.  Plaintiffs define their economic injuries as the cost of the toy and/or any out-of-pocket expenses associated with diagnostic testing due to the exposure to the toxic substance. ¶115.  This is more than sufficient to demonstrate Article III standing.

Defendants' cases are distinguishable. [6]  Memorandum of Law in Support of Spin Master Ltd., Spin Master, Inc., Target Corporation, Wal-Mart Stores East, LP, and Toys "R" Us—Delaware, Inc.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Defs' Mem.") at 4-7.  In *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), the plaintiffs alleged Wyeth failed to warn them its prescription painkiller could cause liver damage.  The court held that plaintiffs did not have standing for their economic claim because they failed to allege that the drug was ineffective as a painkiller.  *See id.* at 320.  But *Rivera* involved a class that ***explicitly excludes any patient*** who was injured by the drug, and plaintiffs who claimed the drug "was ineffective as a pain killer or has any future health consequences."  *Id.* at 317.  Here, Plaintiffs have asserted in each

---

[6]      Defendants mistakenly cite to *Briehl v. GMC,* 172 F.3d 623, 628 (8th Cir. 1999), a decision holding that an allegation of economic harm based on the loss in resale value as a result of the defect is insufficient as a matter of law.  Unlike the cars at issue in *Briehl*, which could still be used by the plaintiffs, the Plaintiffs have lost the complete use of the toy.  In *Briehl*, the defect arises out of the *operation* of the product, whereas here, the defect arose out of the *character* of the toy.  Plaintiffs wanted a toy safe for their children's use, not a toy coated with a toxic substance.  Plaintiffs' loss of the benefit of the bargain arises out of the complete loss of the purchased/received toy's use.

claim for relief that they suffered injuries, including, *inter alia*, the purchase price of the Hazardous Toys and the cost of diagnostic screening.  ¶126.  Rather than the conclusory and undefined assertions of "economic injury" in *Rivera*, Plaintiffs in this case have sufficiently set forth the damages associated with their ownership of the Hazardous Toys.

Additionally, in *O'Neil v. Simplicity, Inc.,* 553 F. Supp. 2d 1110 (D. Minn. 2008), the plaintiffs were unable to allege an economic injury because plaintiffs failed to adequately allege that the crib was inoperable; and therefore, plaintiffs failed to prove loss of the benefit of their bargain. *Id.* at 1118.  Here, however, Plaintiffs expressly allege that the toys were worthless and defective at the time of purchase due to the dangers it poses if used in the foreseeable manner.  ¶¶7, 93, 171. Hence, Plaintiffs have lost the benefit of their bargain.

Instead, plaintiffs believe *Cole v. GMC*, 484 F.3d 717, 722 (5th Cir. 2007), is more instructive.  There, the Court rejected the argument that since the allegedly defective air bags in plaintiffs' vehicles never deployed inadvertently, they did not suffer an injury in fact.  *Id.*  Observing plaintiffs' allegations that the air bag components were defective at the moment of purchase, the Fifth Court held "it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered." *Id.*, at 723.  Similarly here, Plaintiffs received toxic toys that were not only worthless and defective, but dangerous and hazardous *at the moment of purchase*. ¶¶40, 45-49, 57, 61, 78-88.  Plaintiffs "would not have purchased the Aqua Dots had [they] known" their children "would be exposed to hazardous chemicals." ¶¶11-19.  As in *Cole*, Plaintiffs' factual allegations are not conclusory; Plaintiffs have specifically alleged that they were harmed because they bought toys that were defective at the time of purchase; they have also specifically alleged how and why the toys were defective; and that they would not have purchased the toys had they known they contained a hazardous chemical.  ¶¶1, 32-49-51, 56.  Nothing more is required at this stage in the proceedings. [7] *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 787-89

---

[7]    Defendants attempt to impose a non-existent evidentiary standard that Plaintiffs prove their claims. Defs' Mem. at 4-8.  However, since *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 152-53 (1970), in which it adopted the injury-in-fact test, the Supreme Court has repeatedly confirmed that standing focuses on the party "'seeking to get his [or her] complaint before a federal court and not on the issues [s/]he wishes to have adjudicated.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 484 (1982).  In other words, Article III standing "'in no way depends on the merits of the [plaintiff's claim].'" *Whitmore v. Arkansas*, 495 U.S. 149, 155, (1990); *see Lujan,* 504 U.S. at 561 (holding that general factual allegations of injury resulting from the defendants suffice at the pleading stage); *Sutton,* 419 F.3d at 571 (general factual allegations may be sufficient to show standing when assessing the issue on a motion to dismiss).

(N.D. Ill. 2007); *see also Muehlbauer v. GMC,* 431 F. Supp. 2d 847, 849, 860, 868-69 (N.D. Ill. 2006).

### 2.     Exposure to the Hazardous Toys, Which Contain Toxins, Is Sufficient to Establish Standing

Further, Plaintiffs have suffered an injury due to their exposure to the hazardous chemicals in the Toys. Defendants do not, and cannot dispute, that Plaintiffs adequately allege that 1,4 butanediol is toxic and can lead to serious health problems. ¶¶32-49. Contrary to Defendants' "personal injury" requirement (Defs' Mem. at 7), courts have repeatedly held that exposure to toxins is sufficient to confer Article III standing, even without physical symptoms of injury. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 73-74 (1978); *Carlough v. Amchem Prods., Inc.,* 834 F. Supp. at 1446; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000).

In *Carlough,* the plaintiffs filed a suit against a manufacturer for exposure to asbestos. *Carlough,* 834 F. Supp. 1437. The court certified, for settlement purposes, a class of those exposed to the products either themselves or through a spouse or household member. *Id.* at 1445. Certain objectors opposed on the grounds that some class members had not sustained an "'injury in fact'" in the form of an asbestos-related condition. *Id.,* at 1447. The court rejected this argument and found that exposure to a toxic substance constituted sufficient injury in fact, reasoning that the Class was "personally affected by defendants' conduct in a concrete and particular way whether or not they ever develop a serious medical condition." *Id.,* at 1455. Here, Plaintiffs have alleged that the Hazardous Toys have an actual, manifested defect, namely, every toy contains a poison that exposed children to immediate risk of "life-threatening harm." ¶¶32-33, 38. When children played with the beads, which were designed to be sprayed with water, it was foreseeable that children would ingest the poison by licking or sucking their hands, or inadvertently swallowing the beads. ¶49. The toys' condition ***as sold*** presented the risk of life-threatening harm to all children who played with the beads.

Defendants' authorities are inapposite and two are summary judgment opinions. Plaintiffs in those cases, did not have a personal stake in the litigation because they were not among those injured, *see Sierra Club v. Morton,* 405 U.S. 727, 741 (1972) (the club's members did not use the facilities); *Verb v. Motorola, Inc.,* 284 Ill. App. 3d 460, 469-71, 672 N.E.2d 1287, 1293-95, 220, Ill. Dec. 275, 281-83 (Ill. App. Ct. 1996) (failed to adequately allege his personal injury), or sought speculative and non-concrete injuries. *See Lujan,* 504 U.S. at 556, 561 (summary judgment granted

against plaintiffs with interest in protecting wildlife); *Harrison v. Leviton Mfg. Co., Inc.,* No. 05-0491, 2006 WL 2990524, *4-*5 (N.D. Okla. October 19, 2006) (a speculative potential *future* physical injury); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) (summary judgment granted where valves only had a potential to fail).  Plaintiffs in this case are not merely "interested" parties with speculative potential future damages, but have been directly affected by a manifested defect resulting in current and concrete pecuniary loss.  ¶¶7, 115.  As such, Defendants' supporting case law is distinguishable and inapplicable.

   **B.    Constructive Knowledge**

   Spin Master and the Retailer Defendants are deemed to have had constructive knowledge of the danger of the toys at the time that Moose knew of any dangers.  *See Am. Multi-Cinema, Inc. v. MCL REC, LLC*, No. 06 C 0063, 2008 WL 1744426, at *6 (N.D. Ill. April 11, 2008) (defining constructive knowledge as "'knowledge that one using reasonable care or diligence should have'").  In fact, numerous courts have determined that sellers, just as manufacturers, have a duty to warn users of the dangers of products if they have actual or constructive knowledge.[8]

   In fact, if a member of the distribution chain should have known of the defect in the exercise of reasonable care, they are deemed equally liable for damages.[9]  Moreover, in Kentucky a seller or manufacturer may be held liable regardless of actual or constructive knowledge if the product is unreasonably dangerous.  *Worldwide Equip., Inc. v. Mullings*, 11 S.W.3d 50, 55-56 (Ky. Ct. App. 1999).  Courts have defined the term "seller" broadly in the context of strict products liability, extending a duty to warn to a party that has any "participatory connection, for his personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance upon the product."  *Kasel v. Remington Arms Co.,* 24 Cal. App. 3d 711, 725 (1972);

---

[8]    *See, e.g., Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 617-18 (6th Cir. 2001); *Blackmon v. Am. Home Prods. Corp*., 346 F. Supp. 2d 907, 916 (S.D. Tex. 2004); *Mills v. Curioni, Inc*., 238 F. Supp. 2d 876, 887 (E.D. Mich. 2002); *Brown v. R.J. Reynolds Tobacco Co.*, 92-0836, 1992 WL 161128, at *1 (E.D. La. June 23, 1992); *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 297 (1992); *Woodill v. Parke Davis & Co.*, 58 Ill. App. 3d 349, 352-53, 374 N.E.2d 683, 685-86 (Ill. App. Ct. 1978); *Muncy v. Magnolia Chemical Company*, 437 S.W.2d 15, 17 (Tex. App. 1969).

[9]    *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1279-80 (10th Cir. 2005); Ky. Rev. Stat. Ann. §411.340 (West 2008); *Rape v. Medtronic, Inc.*, No. Civ.A. 9:04CV225, 2005 WL 147268, at *4-*5 (E.D. Tex. January 11, 2005) (citing Tex. Civ. Pract. & Rem. Code §82.003); *Salazar v. Merck & Co., Inc.*, No. 05-0445, 2005 WL 2875332, at *3 (S.D. Tex. November 2, 2005); *Harmon v. Plapao Labs.*, 218 S.W. 701, 703 (Mo. Ct. App. 1920).

*see also Bittler v. White & Co., Inc.,* 203 Ill. App. 3d 26, 30, 560 N.E.2d 979, 982 (Ill. App. Ct. 1990) (where exclusive sales representative derived economic benefit from sale of product in question, strict products liability claim for failure to warn survived motion to dismiss); *Durove v. Fabian Transport, Inc.*, No. 04-7000, 2004 WL 2912891, at *6 (S.D.N.Y. December 14, 2004). Thus, Defendants had constructive if not actual knowledge of the defect.

Defendants also have knowledge formed by the existence of an agency relationship between Moose and Spin Master and Spin Master and the Retailer Defendants.  Although a question of fact for the jury, the Court has held that a dealer may be an agent of the manufacturer when one "'undertakes to manage some affairs to be transacted for [and] . . . on account of the . . . principal.'" *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 851 (N.D. Ill. 1997).  An "apparent" agency exists where a reasonably prudent person exercising diligence and discretion, in the view of the principal's conduct, would naturally suppose the agent to possess the principal's authority.  *Azimi*, 977 F. Supp. at 851.  Here, Spin Master acted as an apparent agent of Moose because Spin Master undertook and managed the distribution of the Aqua Dots packages with Moose's logo and warranty representations.  In the same respect, the Retailer Defendants acted as agents of Spin Master when they presented displays of the Aqua Dots packages with Spin Master's and Moose's logos and warranty representations.  Hence, once Moose received knowledge of the Aqua Dots defect, as agents, Defendants also had knowledge of defect.

### C.    Plaintiffs State a Valid Claim Under the CPSA

In arguing that Plaintiffs have failed to allege a violation under the Consumer Product Safety Act (15 U.S.C. §2072) ("CPSA"), Defs' Mem. at 8-9, Defendants fail to address why the rules alleged to have been violated – including 16 C.F.R. §1117.1, *et seq*. and 16 C.F.R. §1500.18(a)(2) – are not rules within the meaning of 15 U.S.C. §2072(a).  They also ignore that the CPSA provides "a private right of action to any person injured 'by reason of any knowing (including willful) violation of a consumer product safety rule, ***or any other rule or order issued by the Commission***.'" *Kelsey v. Muskin, Inc.,* 848 F.2d 39, 42 (2d Cir. 1988).  Accordingly, Defendants' arguments fail.

### 1.    Plaintiffs Allege Violations of the Banned Toys Regulation

Plaintiffs allege that Defendants knowingly violated 16 C.F.R. §1500.18(a)(2) ("Banned Toys Intended For Use By Children"). ¶¶152, 154.  That Rule bans, *inter alia*, any toy having "attachments capable of being dislodged by the operating features of the toy or capable of being deliberately removed by a child, which toy has the potential for causing … aspiration, ingestion or other injury."  16 C.F.R. §1500.18(a)(2).  Plaintiffs allege the Aqua Dots themselves are

"attachments" as defined by the statute and thus fall under the purview of 16 C.F.R. §1500.18(a)(2). The "attachments" consist of the fused together toxic beads attached to the plastic tray, and they are capable of being dislodged or deliberately removed by a child from the tray "[o]nce the design becomes fixed." ¶40.

The toys were intended for children who could and would ingest the toys coated with hazardous chemicals. Defendants do not dispute that the beads have the "potential for causing . . . injury, aspiration, ***ingestion or other injury***," and admit in the recall notice, that children who swallow the toxic beads can become severely ill. ¶62. In fact, several children swallowed the toxic beads and required hospitalization. *See* ¶¶50, 52, 56, 75-76.

The CPSA is intended for the protection of the public against unreasonable risks of injury associated with "consumer products," a term which is to be liberally construed consistent with the statute's patently remedial purpose. *Butcher v. Robertshaw Controls Co.*, 550 F. Supp. 692, 695 (D. Md. 1981). The CPSA's express purposes would not be served under these circumstances, if the provisions of 16 C.F.R. §1500.18(a)(2) were narrowly construed to pure choking, as Defendants suggest.[10] The Aqua Dots toys fall squarely within the meaning of 16 C.F.R. §1500.18(a)(2).

Furthermore, when Spin Master announced the recalls of the Aqua Dots toys, it determined its toys had a potential to cause injury thereby requiring them to be recalled. The fact that the CPSC and Spin Master issued a recall on the Aqua Dots toys acknowledges that such toys created a potential to cause injury under the CPSA and/or were in violation of a consumer product safety rule. Indeed, one of the Defendants' recalls notice admits that children who swallow the toxic beads can become severely ill. ¶62. The recall and the language in the recall is an admission by Spin Master that the recalled toys had a potential to cause injury creating a substantial risk of injury to the public. Thus, the Plaintiffs have stated a claim under the CPSA.

---

[10]    Defendants, although admitting that 16 C.F.R. §1500.18 (a)(2) covers "other injury" (where Plaintiffs allege the injury from toxicity is considered "other injury" as defined by the regulation), rely on *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 221 (7th Cir. 2007), to incorrectly argue that the injury of toxicity is not "similar in nature" to those identified in the first [four] (laceration, puncture wound injury, aspiration, or ingestion), and therefore injury from toxicity does not fall within this list. Defs' Mem. at 9. In other words, Defendants would have the court render two forms of injury listed in the regulation ("ingestion or other injury") superfluous and only enforce the other four forms of injury. However, the Court has determined that a statute must be read as a whole. *See United States v. Atl. Research Corp.*, 127 S. Ct. 2331, 2336 (2007). *Cement Kiln* is not only distinguishable, the case is irrelevant, in that it analyzed an inapplicable Environmental Protection Agency regulation. *Cement Kiln*, 493 F.3d. at 211.

## 2.    Plaintiffs Sufficiently State Violations of the Reporting Rules

Section 102 of the Child Safety Protection Act (the "Child Safety Act"), 15 U.S.C. §1261, describes mandatory reporting requirements for manufacturers, distributors, retailers and importers of, *inter alia*, "a toy or game that contains" a "small part." This is the Commission's interpretative regulations for reporting of choking incidents required by the Child Safety Act. 16 C.F.R. §1117.1.

With respect to this reporting requirement, Defendants argue that in order to state a valid claim, Plaintiffs must allege "that those for whom they purchased Aqua Dots suffered an obstruction of the airways." Defs' Mem. at 8-9. Thus, again Defendants seek to impermissibly restrict the regulation to fit their purpose. The issue, however, is not whether Plaintiffs choked on the toys, but whether Defendants were aware of, and failed to timely report, a reportable incident. Indeed, Defendants were aware of several incidents and did not report them.

### a.    Defendants Knowingly Violated 16 C.F.R. §1117.1

The Complaint alleges Defendants knowingly violated 16 C.F.R. §1117.1, *et seq.* ¶154. "A subject firm ***shall*** report any information it obtains which reasonably supports the conclusion that a reportable incident occurred." 16 C.F.R. §1117.3. Section 1117.4(a) provides that "[a] subject firm ***must report within 24 hours*** of obtaining information which reasonably supports the conclusion that an incident occurred in which a child (regardless of age) choked on . . . [a] small part contained in a toy or game and, as a result of that incident the child died, suffered serious injury, ceased breathing for any length of time, or was treated by a medical professional." Defendants failed to meet these requirements. Thus, a firm has to report not only obstruction of airways but also other forms of serious injury or treatment by a medical professional.

### b.    Defendants Knowingly Failed to Report

On or about October 8, 2007, and again on November 4, 2007, Defendants obtained information that reasonably supported the conclusion that several reportable incidents occurred. Several children swallowed the tiny parts contained in the Aqua Dots toys and, as a result, children suffered serious injury, may have ceased breathing for any length of time, and/or were treated by a medical professional. ¶¶50, 52, 56, 75-76. Based upon these factual allegations, Defendants were required to report ***within 24 hours*** of obtaining such information but did not announce a recall of the poisonous toys until almost a month after a biochemical geneticist's warning of the dangers of

defendants' product. ¶¶51-52, 61. [11] Defendants also suggest the Complaint does not allege they knowingly violated the Commission-issued rules discussed herein. Defs' Mem. at 9-10. But, "[k]nowing means the having of actual knowledge or the presumed having of knowledge deemed to be possessed by a reasonable person who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations." 16 C.F.R. §1117.9(c). Spin Master, as one of Moose's major export customers, cannot escape the knowledge assigned to Moose on October 8, 2007, when it was first contacted by Dr. Carpenter. But, as set forth above, the recall did not occur until a month after Dr. Carpenter's warning. ¶61.

Defendants are deemed to have had constructive knowledge of the danger of the toys at the time that Moose knew of any dangers. *See Am. Multi-Cinema, Inc. v. MCL REC, LLC*, No. 06-0063, 2008 WL 1744426, at *6 (N.D. Ill. April 11, 2008) (defining constructive knowledge as "knowledge that one using reasonable care or diligence should have"). Both Defendants had a reasonable obligation to ensure that the toys they were distributing/selling for small children to play with were safe. In fact, as early as November 2006 (¶63), Defendants were on notice that toys manufactured in China were at risk for containing toxins. With this knowledge, Defendants should have exercised more reasonable care in the sale of toys manufactured in China. *See Crispin Co. v. Petrotub-S.A.*, No. CIV-05-159-C, 2006 WL 2812535, at *9 (W.D. Okla. September 28, 2006) (negligence found where defendant had credible information alerting it to risks of the defective product which may have given rise to a duty to warn). Because the Defendants either knew or should have known of the hazardous nature of the toys through their relationship with Moose and the alarming manufacturing processes in China, they had knowledge of the defect. [12] ¶¶22, 50-55, 75, 154. For all these reasons, Plaintiffs have stated a valid claim for violations of 16 C.F.R. §1117.1, *et seq.*

### 3. A Private Right of Action Exists for Violations of CPSA's Reporting Requirements

Relying upon *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936, 941 (7th Cir. 1988), Defendants argue that even if Plaintiffs could allege that they knew of a problem with Aqua Dots

---

[11]    Plaintiffs acknowledge that Defendants' reporting obligation under 16 CFR §1117.3 is different from Defendants' obligation to implement an acceptable corrective action under 62 Fed. Reg. 39,827 (July 24, 1997). Upon information and belief, Defendants knowingly failed to timely file a report with the CPSC. ¶¶50-62, 74-76. Plaintiffs will further support this allegation through evidence produced during discovery.

[12]    Again the allegations in Plaintiffs' complaint should be taken as true and Defendants' actual and constructive knowledge will be brought to light through the discovery process.

before the recall, there is no private cause of action for violations of CPSA reporting requirements. Defs' Mem. at 9, n.4.  *Zepik* is distinguishable here because it is a summary judgment decision, in which there were no facts to support the cause of action.[13]

### D.    The CPSA Does Not Preempt Plaintiffs' State Law Claims

The CPSA contains an express preemption clause,  section 2075, and two savings clauses, sections 2072(c) and 2074(a).  Section 2075 states in pertinent part:

> Whenever a consumer product safety standard under this Act is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are ***identical*** to the requirements of the Federal standard.

15 U.S.C. §2075(a).  Section §2072(c), however, provides that other remedies, including common law remedies, are not preempted by §2072(a).  *See Leipart v. Guardian Indus.*, 234 F.3d 1063, 1067 (9th Cir. 2000).  Section 2072(c) specifically provides that "[t]he remedies provided for in this section shall be in addition to ***and not in lieu of*** any other remedies provided by common law or under Federal or State law."  15 U.S.C. §2072(c).  Section 2074 of the CSPA provides that common law and state statutory remedies are not pre-empted even when a defendant has complied with federal consumer product safety rules.  15 U.S.C. §2074(a) ("Compliance with consumer product safety rules or other rules or orders under this Act shall not relieve any person from liability at common law or under State statutory law to any other person.").  Additionally, on July 31, 2008, Congress passed the Consumer Product Safety Improvement Act of 2006, which clarifies that, "[i]n accordance with the provisions of [the CPSA], the [CPSC] may not construe any such Act as preempting any cause of action under State or local common law or State statutory law regarding damage claims."  H.R. 4040, 110th Cong. §231(a) (2008).

---

[13]    Several state and federal courts have held that section 23(a) permits private actions based on violations of reporting requirements. *See e.g., Swenson v. Emerson Elec. Co*., 374 N.W.2d 690, 699 (Minn. 1985) (holding that based on the plain language of section 2072, the federal Consumer Product Safety Act provides for a private cause of action); *Butcher v. Robertshaw Controls Co.*, 550 F. Supp. 692, 700 (D. Md. 1981) (denying defendants' motions to dismiss and finding that it has federal question jurisdiction over the cause of action brought under the CPSA).

- 13 -

Furthermore, the Supreme Court addressed an analogous issue in *Medtronic Inc. v. Lohr*, 518 U.S. 470, 471 (1996), when it examined whether the Medical Device Amendments of 1976 ("MDA") preempted state common law actions against the manufacturer. The MDA did not contain a savings clause such as the one in the CPSA, however. The Court determined that common law remedies premised on violations of the federal requirement were not preempted. *Id*. at 489. The Supreme Court held that the presence of a damages remedy does not amount to the additional or different requirement that is necessary under the statute; rather, it merely provides another reason for manufacturers to comply with identical existing requirements under federal law. *Id*. Thus, following the guidance established in *Medtronic,* the state common law remedies do not amount to different or additional requirements and should not be preempted.

Defendants ignore the statute and a long line of federal case law holding that the CPSA ***does not preempt state law claims*** when arguing that the CPSA preempts Plaintiffs' "claim for a refund." Defs' Mem. at 11; *see*, *e.g., Swenson*, 374 N.W.2d at 699; *Young v. Robertshaw Controls Co*., 560 F. Supp. 288, 294 (N.D.N.Y. 1983); *Butcher*, 550 F. Supp. at 695; *Brown v. Daisy Mfg. Co*., 724 F. Supp. 44, 46-47 (N.D.N.Y. 1989). Indeed, Defendants fail to cite *any* case law holding that the CPSA preempts Plaintiffs' state law claims and instead rely on conclusory self-serving arguments. Their contentions cannot trump the strong presumption against federal preemption. *See Churchill Village, LLC v. GE*, 169 F. Supp. 2d 1119, 1127 (N.D. Cal. 2000).

Defendants' arguments are not clear and may only rely on the theory of conflict preemption principles.[14] *See* Defs' Mem. at 11. Conflict preemption occurs, *inter alia*, where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Leipart,* 234 F.3d at 1069; *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000). Defendants claim that Plaintiffs' "claim" for a refund would deprive Spin Master of its "federal right" to choose between providing repairs, replacements, or refunds, and would present an obstacle to Congress' 'full purposes and objectives.'" Defs' Mem. at 11. According to Defendants, Congress' purpose and objective for the election of remedies, appears to be no deeper than to relinquish the choice to the manufacturers. *See id.*

---

[14]    Thus, Defendants have impliedly conceded that the CPSA does not expressly preempt state law claims.

However, Defendants focus on only a narrow portion of the Act instead of the overall scheme of the statute.[15]  The CPSA explicitly states that the purposes and objectives of the Act are: (1) to protect the public against unreasonable risks of injury associated with consumer products; (2) to assist consumers in evaluating the comparative safety of consumer products; (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and (4) to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries. 15 U.S.C. §2051(b).

Therefore, one of the "overarching goal[s] of the CPSA [is] to create a system in which federal standards and state common law requirements both have roles to play." *Leipart,* 234 F.3d at 1070.  Moreover, the CPSA creates only a "'minimum safety standard,' above which state common law requirements were permitted to impose further duties" and is not intended to preempt state law. *Id*; *see also Colon v. Bic USA*, 136 F. Supp. 2d 196, 208 (S.D.N.Y. 2000); *Summerline v. Scott Petroleum Corp.*, 324 F. Supp. 2d 810, 814 (S.D. Miss. 2004).  Thus, the election of a remedy does not create a ceiling and therefore does not preempt state law claims.

Given this statutory framework, Plaintiffs' claims are not preempted since state law does not "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *See Leipart,* 234 F.3d at 1069; *Geier*, 529 U.S. at 881.  *Leipart* found that plaintiff's state law claims potentially premised on a different and higher standard of care than that imposed by the CPSA safety standard, did not interfere with the CPSA's stated goals.  234 F.3d at 1070; *see also Tober v. Graco Childrens' Prods.*, No. 02-1682, 2004 WL 1085178, at *11-*14 (S.D. Ind. March 4, 2004); *Eberts v. Kawasaki Motors Corp., U.S.A.,*, 306 F. Supp. 2d 890, 894 (D.N.D. 2004).[16]  The same is true here.

---

[15]     The regulation provides that the Commission "*may*" order the manufacturer to elect either a repair, recall, or refund. 15 U.S.C. §2064(d).  Therefore, the election is only at the Commission's *discretion* – not a "federal right" as Defendants contend – and cannot function as complete preemption of Plaintiffs' claims.

[16]     For this reason, *Geier*, the case on which Defendants principally rely, is inapposite.  In *Geier*, the Supreme Court evaluated federal preemption of state common law claims under the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act").  The Safety Act contained an express preemption and savings clause similar to those found in the CPSA.  The Court looked at those provisions and held that state requirements imposed under common law tort actions were distinct from state "standards" within the meaning of the Safety Act and thus held that common law tort actions were not preempted by the text of the statute. *Id.* at 868.  Here, just as in *Geier*, plaintiffs' state law claims will be excluded from the express preemption provision of the CPSA by its saving clauses.  *Id.*; *see also Tober*, 2004 WL 1085178, at *11 (holding that the "saving clause of the CPSA saves the tort claims from express preemption"); *Bic Pen Corp. v. Carter*, 171

Many other courts have concluded that state common law claims do not conflict with the CPSA. *Id.* at 894; *Summerline*, 324 F. Supp. 2d at 814; *Bic Pen*, 171 S.W.3d 657, 664.[17] This Court should similarly hold Plaintiffs' state law claims are not pre-empted by the CPSA.

### E.    Plaintiffs State a Claim for Breach of Warranty

#### 1.    Defendants Had Notice of the Alleged Defect

Defendants had actual knowledge of the Hazardous Toys' defect on November 7, 2007, prior to the filing of any of the transferred actions when Spin Master issued a voluntary recall, after notice of numerous injuries and complaints. ¶4, 62. In fact, Spin Master made an offer – albeit inadequate – to replace the toxic beads. ¶6. Thus, at the very latest, by November 7, 2007, Defendants were on notice of the Aqua Dots toys' defect.

Even if notice is required, and in many states it is not, the filing of the Complaint or the seller's actual knowledge of the defect satisfies the notice requirement.[18] *Stella v. LVMH Perfumes and Cosmetics ISA, Inc.*, No. 07 C 6509, 2008 WL 26696622, at *2-*3 (N.D. Ill. July 8, 2008). In *Stella*, this Court cited *Connick v. Suzuki Motor Co. Ltd.*, 675 N.E.2d 584, 589, 174 Ill. 2d 482, 491 (Ill. 1990), and held that the actual knowledge exception where plaintiffs alleged defendant should

---

S.W. 3d 657, 663 (Tex. App. 2005) (stating that the parties' agree that the design defect claim was not expressly preempted by the CPSA).

[17]    Defendants unsupported contention that the CPSC's approval of Spin Master's corrective action plan preempts any state law refund requirement is easily rejected under a similar analysis. Defs' Mem. at 12. It is dubious to suggest that requesting a refund as a remedy in a lawsuit would cause manufacturers to leave a dangerous product in the market given the CPSC's reporting requirements. *Id.*

[18]    *See also* Illinois: *Gershengorin v. Vienna Beef, LTD.*, No. 06 C 6820, 2007 WL 2840476 at *4 (N.D. Ill. September 28, 2007) (actual knowledge alleged); Pennsylvania: *Yates v. Clifford Motors, Inc.*, 423 A.2d 1262, 1270 (Pa. Super. 1980) (complaint adequate notice); Kentucky: *Mullins v. Wyatt*, 887 S.W.2d 356 (Ky. 1994) (complaint adequate notice); Florida: *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1103 (11th Cir. 1983) (sufficiency of notice is a question of fact); Texas: *Carroll Instrument Co., Inc. v. B.W.B. Control, Inc.*, 677 S.W.2d 654, 657 (Tex. App. 1984) (notice is a question of fact); Missouri: *Arst v. Max Barken, Inc.*, 655 S.W.2d 845, 848 (Mo. Ct. App. 1983) (notice not required); New York: *Hosp. Comp. Sys., Inc. v. Staten Island Hosp.*, 788 F. Supp. 1351, 1360 (D.N.J. 1992) (applying NY law, notice satisfied where seller was informed of the defect through complaints made on a continuing basis); Arkansas: *Pickler v. Fisher*, 644 S.W.2d 644, 649 (Ark. Ct. App. 1983) (sufficiency of notice is a question of fact); Arkansas: *Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 491-92 (W.D. Ark. 1993) (actual knowledge or reason to know of defect suffices); Oklahoma: *Am. Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 597 (Okla. 1981) (sufficiency of notice is a question of fact). In California a Consumer's Legal Remedies Act notification letter puts defendants on notice for warranty claims. *Cf. Sanchez v. Wal-Mart Stores, Inc.*, No. 06-CV-2573, 2007 WL 1345706 at *4 (E.D. Cal. May 8, 2007) *with* Exs. 1-2; *Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1354 (9th Cir. 1987) (notice is question of fact).

have known the subject products did not meet its marketing representations. *Id.* Because Defendants knew or should have known of the defect, issued a voluntary (though inadequate) recall *and* offered to replace the Hazardous Toys *before* any complaint was filed, Defendants had the required "actual knowledge." ¶¶67, 125, 138, 146. Nothing more is required at this stage.[19]

### 2.    Aqua Dots Are Not Merchantable or Fit for Their Ordinary Purpose

Defendants brazenly argue that because the Aqua Dots toys – children's toys laced with GHB – are fit for their ordinary purpose, Plaintiffs' implied warranty claims fail. Defs' Mem. at 16. Defendants' citation to *Brazier v. Hasbro, Inc.*, a summary judgment decision, leaves out the critical statement that "'the . . . inquiry focuses on expectations for the performance of the product when used in customary, usual, *and reasonably foreseeable manners*.'" *Brazier v. Hasbro, Inc.*, No. 99 Civ. 11258, 2004 WL 515536, at *4 (S.D.N.Y. March 16, 2004); ¶¶3, 49. Recognizing that children will put toys in their mouths, Defendant Wal-Mart tests for parts that could end up in children's mouths. ¶84. In fact, *Kelly v. Hanscom Bros, Inc.*, 331 A.2d 737 (Pa. Super. Ct. 1974), found sufficient evidence of defendant's breach of the implied warranty of merchantability because "[t]he toys which caused the death of [Plaintiff] was not fit as a plaything for infants, considering *infants' universal penchant for putting things into their mouths* . . ." *Id.* at 739.

Further, whether the Aqua Dots toys were fit for their ordinary or reasonably foreseeable usage is a question of fact not appropriately resolved at this stage. *State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami*, 557 So. 2d 107, 108-09 (Fla. Dist. Ct. App. 3d Dist. 1990) (citing *Boehm v. Fox*, 473 F.2d 445 (10th Cir. 1973)); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 444 (4th Cir. 2005).[20] Plaintiffs allege the Toys are unreasonably dangerous and not fit for reasonably foreseeable uses. This is sufficient at the pleading stage.

---

[19]    *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863, 292 Ill. App. 3d 59, 63 (Ill. App. Ct. 1997), cited by Defendants, is distinguishable because plaintiffs there did not allege actual knowledge.

[20]    Defendants fail to cite a single case dismissing warranty claims at the motion to dismiss stage. *Brazier*, 2004 WL 515536, at *4 (summary judgment); *Plas-Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442 (Tex. 1999) (jury verdict); *Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479 (3d Cir. 1965) (jury verdict).

### 3.    Defendants Breached Their Express Warranties with Regards to the Toys' Intended and Reasonably Foreseeable Uses

Defendants argue that Plaintiffs' express warranty claims fail because a "'condition precedent' to a claim for breach of express warranty is 'substantial compliance with the directions' for the product's use." Defs' Mem. at 17. Stating that the toys' intended use of the beads are to designed on a plastic tray, and not ingested, they argue that Plaintiffs' warranty claim fails because they did not allege that the toys they purchased were "unfit for *this* purpose." *Id.* But, contrary to Defendants' express warranties, the Aqua Dots toys were not appropriate for children aged 4 and up (¶¶42, 79) and did not comply with applicable law and regulations, including ASTM F963-03 and ASTM D-4236 (¶¶86-89).[21] The law is clear that a products warranty extends to "reasonably foreseeable uses," which is itself a jury question. *Wheeler v. Sunbelt Tool Co., Inc.*, 537 N.E.2d 1332, 1343, 181 Ill. App. 3d 1088, 1103-04 (Ill. App. 4 Dist. 1989). As discussed above, it was reasonably foreseeable (and at the very least a question of fact) that children would place Toys in their mouths or lick their fingers after wetting the beads according to the toy's instructions. ¶¶3, 49. Because the Toys contain GHB, the Toys are not appropriate for children.

### 4.    Express Warranty Claims Are Properly Pled

#### a.    Warranty Terms Are Pled

Contrary to Defendants' suggestion, express warranty allegations meet the notice pleading requirement if they are outlined or generally stated in the complaint. *Smith v. BOC Group PLC*, No. 00-C-7909, 2001 WL 477237, at *6 (N.D. Ill. May 4, 2001).[22] In fact, the Complaint notes what is precisely on the packaging: the toys are appropriate for certain ages (¶79), the packages carry images of children playing with the Hazardous Toys (¶79), and the packaging states compliance with ASTM standards (¶86). *See also* ¶¶129-30, 132-33. Nothing more is required.[23]

---

[21] Actionable warranties are not limited to words written on the Aqua Dots packaging, but include pictures of children playing on the toy's packaging. *Williams v. Gerber Prods. Co.*, 523 F.3d 934 (9th Cir. 2008); *Lohmann & Rauscher, Inc. v. Ykk (U.S.A.) Inc.*, 477 F. Supp. 2d 1147, 1153 (D. Kan. 2007). As such, the depictions on the Toys' packages and labeling of children playing with the Toys are false and misleading. ¶79.

[22] *See also McMurray v. Merck & Co., Inc.*, No. C 07-1007, 2007 WL 1456042 (N.D. Cal. May 17, 2007) (precise warranty language not required under the liberal pleading requirements).

[23] Defendants argue the alleged warranty terms amount to mere puffery. Defs' Mem. at 18-19. But deciding whether statements are puffing (unverifiable boasts and exaggerations) or warranties is a question of

b.        **Basis of the Bargain Is Pled**

Contrary to Defendants' argument, Plaintiffs allege that they relied on the warranties and that they formed part of the basis of the bargain. *See* ¶¶11-19 ("Plaintiff [] would not have purchased the Aqua Dots had he known that his children would be exposed to hazardous chemicals."), ¶79 ("Plaintiffs and members of the Class purchased the Hazardous Toys believing that the toys were safe for children's foreseeable use."); ¶90, 155.[24]  Taking the allegations as true, Defendants' argument must be rejected.[25]

5.        **Privity: Exceptions Exist and/or Is Not Required**

Spin Master's privity arguments fail based on well-established privity exceptions.. [26] Moreover, Spin Master's own actions have brought the company into privity with consumers. ¶121; *see also supra* §V.B.

Spin Master's attempt to pick off the claims from certain states fails.  Illinois does not require privity for implied warranty claims where, as here, more than mere economic damages are alleged. *See Allstate Ins. Co. v. Daimler Chrysler*, No. 03 C 6107, 2004 WL 442679 at *2 (N.D. Ill. March 9, 2004); ¶¶126, 139 (injuries include "exposure to toxic chemicals, increased risk of serious health problems, and the cost of diagnostic screening").  Florida does not require privity for express or implied warranty claims. *Manheim v. Ford Motor Co.*, 201 So. 2d 440, 441-43 (Fla. 1967); *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 957 n.8 (Ind. 2005).  Further, "in New York, privity is

---

fact. *Felley v. Singleton*, 705 N.E.2d 930, 935 (Ill. App. Ct. 2d Dist. 1999); *Redmac, Inc. v. Computerland of Peoria*, 489 N.E.2d 380, 382 , 140 Ill. App. 3d 741, 743 (Ill. App. Ct. 3d Dist. 1986).

[24]      Although reliance is alleged, reliance on express warranties is not required in most states.  Florida: *Southern Broad. Group, LLC v. Gem Broad., Inc.*, 145 F. Supp. 2d 1316, 1321-22 (M.D. Fla. 2001); Illinois: *Wikoff v. Vanderveld*, 897 F.2d 232, 240-41 (7th Cir. 1990); Pennsylvania: *Giuffrida v. American Family Brands, Inc.*, Nos. 96-7062, 96-7256, 1998 WL 196402 at *4 (E.D. Pa. April 23, 1998); New York: *CBS, Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1000-01 (N.Y. 1990); Missouri: *Walker v. Woolbright Motors, Inc.*, 620 S.W.2d 451, 453 (Mo. Ct. App. 1981).

[25]      Whether statements become part of the basis of the bargain is a question of fact. *See, e.g., Royal Business Machs., Inc. v. Lorraine Corp.*, 633 F.2d 34, 43 (7th Cir. 1980); *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997).

[26]      Privity with Retailer Defendants is not challenged.  Privity for Plaintiff Botch, Burgess, Erbach, Streett, Soderstedt, and Williams' implied warranty claims and Plaintiff Botsch, Cosgrove, Erbach, Ford, Streett, Soderstedt, and Williams' express warranty claims against Spin Master are also not challenged.

no longer required for recovery under a theory of breach of implied warranty." *Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435, 443 (E.D.N.Y. 2005). Spin Master's privity arguments thus fail.

### F.    Plaintiffs Have Alleged Viable Tort Claims

#### 1.    Plaintiffs State Claims for Negligence and Strict Liability

Defendants do not, and cannot, dispute that they sold, and/or distributed toys for young children containing butanediol. *See* ¶¶140-49, 158. Defendants' only challenge to Plaintiffs' negligence and strict liability claims is Plaintiffs' injury. *See* Defs' Mem. at 22-23, 33-34. However, Plaintiffs allege cognizable injuries for their tort claims and, therefore, these claims must be upheld.

Defendants' conduct caused Plaintiffs to suffer a compensable injury, including exposure to a chemical defined as a Class I Health Hazard, thereby creating a risk of serious health problems and associated costs of diagnostic screening.[27]¶¶33, 148-49; *Dillon v. Evanston Hosp.*, 771 N.E.2d 357, 370, 199 Ill. 2d 483, 504 (Ill. 2002) (For negligence, "[a] plaintiff can obtain compensation for a future injury that is not reasonably certain to occur."). As such, the economic loss doctrine is inapplicable and does not defeat Plaintiffs' tort claims. Defs' Mem. at 22-23. Even assuming *arguendo*, the Court did not find each Plaintiff alleged an injury, their negligence and strict liability claims **are not** barred under Illinois law. Finally, even if the Court applies the law of the various states in which Plaintiffs reside, Plaintiffs' claims are not barred there either. For instance, the claims of Arkansas' Plaintiffs Erbach and Street are not barred by the economic loss doctrine.[28]

---

[27]    *See Spivack v. Berks Ridge Corp.*, 586 A.2d 402 (Pa. Super. Ct. 1990) (noting that economic loss doctrine does not bar recovery in tort where physical injury or other property damage is present); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 91 Ill. 2d 69 (Ill. 1982) (same); *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004) (same); *Presnell Managers, Inc. v. E.H. Const.*, 134 S.W.3d 575 (Ky. 2004) (same); *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901 (Mo. 1986) (same); *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649 (Okla. 1990) (same); *Heil Co. v. Polar Corp.*, 191 S.W.3d 805 (Tex. 3rd. Div. App. 2006) (same); *AKV Auto Transp., Inc. v. Syosset Truck Sales, Inc.*, 806 N.Y.S .2d 254 (N.Y. App. Div. 2005) (same).

[28]    As Arkansas does not apply the economic loss doctrine to strict liability and negligence claims, Defendants attempt to argue that Plaintiffs did not allege a defect in the toys or damage to the toys themselves. Defs' Mem. at 23-24. Not true. Plaintiffs allege that the Toys Defendants designed, marketed, and sold are defective, extremely dangerous and potentially lethal and seek damages to reimburse both the cost of the Toys and for medical screening. ¶¶2, 4, 46, 67, 115, 148; *Rush v. Whirlpool Corp.*, No. 07-2022, 2008 WL 509562, at *2-*3 (W.D. Ark. February 22, 2008).

While the Illinois Supreme Court recognized the economic loss doctrine in *Moorman Mfg. Co.*, 435 N.E.2d at 451-53, 91 Ill. 2d at 86-90, it made an exception for fraudulent misrepresentations. For this reason, Plaintiffs' tort claims are not barred by this doctrine.[29]  *Id.* Plaintiffs allege that Defendants continued to market and advertise their toys as safe for children's playthings and that they had been adequately tested, when they were not. *See* ¶¶79-90. Defendants made these false statements with the full intent that consumers would rely on them.  *See id.* Plaintiffs and the Class did rely on these representations; they would not have purchased the Toys had they known that they contained a toxic substance. *Id.*; *see also id.* at ¶¶11-19. Plaintiffs and the Class suffered substantial injuries as a result of purchasing the Toys.  *Id.*  As Defendants' false misrepresentations caused Plaintiffs' injuries here, the economic loss doctrine is inapplicable under Illinois law.

In the event that the Court finds the laws of Plaintiffs' home states apply, Plaintiffs' tort claims are not prohibited by the laws of those states either.[30]  As Defendants acknowledge, Arkansas permits "the recovery of economic loss where a defect in a product has manifested itself, thereby damaging the product." Defs' Mem. at 23.  Indeed, Arkansas upholds strict liability and negligence claims even where there is purely economic loss. *Farm Bureau Ins. Co. v. Case Corp.*, 878 S.W.2d 741, 743 (Ark. 1994); *In re Genetically Modified Rice Litig.*, Nos. 06-1811, 07-825, 2007 U.S. Dist. LEXIS 76435, at *11 (E.D. Mo. October 15, 2007) (interpreting Arkansas law).  Moreover,

---

[29]     Under Illinois law, the elements for fraudulent misrepresentation are: "(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601, 79 Ill. 2d 282, 285-86 (Ill. 1980).

   Assuming *arguendo* the Court believes Rule 9(b) applies to Plaintiffs' negligence and strict liability count because they allege fraudulent misrepresentations, the expansive Complaint provides the requisite "who, what, when, where, and how." *Zions First Nat. Bank v. Paul Green*, No. 07-3760, 2007 WL 4109125 at *2 (N.D. Ill. November 16, 2007) (quoting *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).  As in *Zions*, Plaintiffs satisfy the requirements by alleging that between April 2007 and November 2007 (when), Defendants designed, manufactured, marketed, sold and/or distributed the Hazardous Toys (how) to consumers (who) throughout the United States (where) with misrepresentations that the toys were fit for children as playthings, compliant with all relevant laws, and free from any defect (what). *Zions*, 2007 WL 4109125 at *3.

[30]     Like Illinois, Florida and Texas recognize a fraudulent misrepresentation exception to the economic loss doctrine, which applies here. *See Indem. Ins. Co.*, 891 So. 2d at 543; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.,* 960 S.W.2d 41, 47 (Tex. 1998).

Kentucky has not adopted this doctrine. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848-49 (6th Cir. 2002).

**G.    Plaintiffs Adequately Plead Their Statutory Consumer Claims**

**1.    Rule 9(b) Does Not Govern Plaintiffs' Consumer Protection Claims**

Defendants' bald assertion that Rule 9(b) applies to Plaintiffs' claims under state consumer fraud and protection statutes (Counts 1-3) is incorrect. Defs' Mem. at 24. Rule 9(b)'s pleading standard only applies to "circumstances constituting fraud or mistake," not to malice, intent, or knowledge. Fed. R. Civ. P. 9(b). Rule 9(b) is inapplicable to claims for violations of the states' consumer protection statutes; rather, Rule 8(a) notice pleading governs such claims.[31] Indeed, the Seventh Circuit recently held "[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices . . . need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inco. v. CIT Technical Financing*, No. 07-1567, 2008 WL 2941171, at *4 (7th Cir. August 1, 2008). Nevertheless, even if Rule 9(b) applies, Plaintiffs have pled their state consumer fraud claims with the requisite particularity to satisfy Rule 9(b).[32]

**2.    Plaintiffs State Claims Under Illinois' Consumer Protection Statutes**

Contrary to Defendants' assertion, Plaintiffs have adequately alleged claims under counts one and two, the Illinois Consumer Fraud Protection Act ("ICFA"), 815 ILCS §505/1 *et seq.*, and the Illinois Deceptive Trade Practices Act ("IDTPA"), respectively. Plaintiffs allege that Defendants engaged in a deceptive act or practice by: (1) misrepresenting on the packaging and labeling that the

_____

[31]    *See Romano v. Motorola, Inc.*, No. 07-60517, 2007 WL 4199781, at *1-*2 (S.D. Fla. November 26, 2007) (Florida Deceptive and Unfair Trade Practices Act claims need not be pled with particularity, as statute creates a remedy outside the reach of common law fraud); *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (New York's consumer fraud statute is not subject to Rule 9(b)); *Prophet v. Myers*, No. 08-0492, 2008 WL 2328349, at *3 (S.D. Tex. June 4, 2008) (Texas DTPA is governed by Rule 8(a), not Rule 9(b)).

[32]    Federal Rule 9(b) requires only: (1) "the identity of the person who made the misrepresentation;" (2) "the time, place and context of the misrepresentation;" (3) and the "method by which the misrepresentation was communicated to the plaintiff." *Recreation Servs. Inc. v. Odyssey Fun World, Inc.*, 952 F. Supp. 594 (N.D. Ill. 1997). The Complaint is replete with detail satisfying these criteria. Moreover, Plaintiffs need only plead information within their possession; 9(b) is relaxed where plaintiffs lack access to all facts necessary to detail their claims. *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (N.D. Ill. 1998).

Toys were safe, quality products that were age-appropriate and complied with safety and quality standards, and (2) failing to disclose the Toys were coated in a hazardous and toxic substance. ¶¶79, 80, 82, 86-88, 101, 103. Defendants' representations were false and deceptive as the Toys were covered in lethal butanediol. *See* ¶¶32-39.

First, Defendants callously mischaracterize their representations as "mere puffery." Defs' Mem. at 25-26. However, "[w]hile a seller has some latitude in 'puffing' the product being sold, the seller is not permitted to misrepresent the product or to assign to it benefits or virtues it does not possess." *In re Diamond Mortg. Corp.*, 118 B.R. 588, 595 (Bankr. N.D. Ill. 1989). Here, puffery cannot immunize Defendants from liability where they misrepresented that the products possess an important quality which they do not: safety compliance.[33] ¶¶79-80.

Second, Defendants argue Plaintiffs' allegations do not specify how the representations were false or deceptive. Defs' Mem. at 26. However, Plaintiffs allege the Toys were not safe or age-appropriate because it was reasonably foreseeable that children would ingest or come into contact with lethal butanediol and the contrary to Defendants' representations, the Toys did not comply with ASTM D-4236 and ASTM F963 because they were not adequately tested for toxicity, did not list ingredients presenting health hazards, and were not free from hazardous substances. ¶¶1-2, 5, 49, 86-89.

Third, Plaintiffs allege actionable omissions. "To withstand a motion to dismiss, the plaintiff must allege that defendants made a material omission and that the plaintiff would have acted differently had she known the omitted information." *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 909 (N.D. Ill. 2008). Plaintiffs allege Defendants omitted the material information that the Toys contained lethal butanediol and each allege they would not have purchased or accepted the Toys had they known their child would be exposed to hazardous chemicals.[34] ¶¶11-19.

Defendants' proximate causation argument fails. Defs' Mem. at 26. "At the pleading stage...all that is necessary to allege proximate causation is to assert . . . that after the alleged

---

[33]    In any event, puffery is a question of fact not appropriate at this stage. *Supra*, at 18 n.20.

[34]    Under Illinois law, "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *Connick*, 675 N.E.2d at 595, 174 Ill. 2d at 504-05, 221 Ill. Dec. at 400. Moreover, "[a] material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Id.*

misrepresentations were made, the wrongful charges were paid." *Brown v. SBC Communications, Inc.*, No. 05-777, 2007 WL 684133 at *5 (S.D. Ill. March 1, 2007) (citing *Connick*, 675 N.E.2d at 595). Plaintiffs allege that the misrepresentations were stamped on the Toys each of them purchased. Plaintiffs would not have purchased the Toys had they known their children would be exposed to lethal butanediol. ¶¶11-19, 90. Thus, Plaintiffs properly allege proximate harm and Count One (IFCA) is properly plead.

Finally, Plaintiffs also properly allege claims under IDTPA which permits consumers to bring an action for injunctive relief where a defendant's unfair competition is likely to cause damage in the future. *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 98-99, 613 N.E.2d 1150, 1156 (Ill. App. 1 Dist. 1992). Accordingly, Plaintiffs allege for example that Defendants' recall is inadequate, complicated and fraught with hurdles and fails to reasonably ensure that the lethal nature of the Toys are adequately publicized and ultimately removed from homes. ¶¶5, 7. Plaintiffs also allege that following the recall the misrepresented and lethal Toys continued to enter this country and the stream of commerce. ¶64. Thus, Plaintiffs seek an order requiring Defendants to implement a full and proper recall. ¶7. Such injunctive relief is within the scope of the DTPA. *See also generally* Pltfs' Opposition to Moose's Motion to Dismiss at 15-18.

### 3. Plaintiffs Sufficiently Alleged Claims Under the Various Consumer Protection Statutes of Their Home States

Even if the Court does not apply Illinois' consumer protection statutes to each of the Plaintiffs, Plaintiffs have state claims under the consumer protection and unfair and deceptive trade practices acts of all 50 states. For the same reasons that Plaintiffs' allegations demonstrate violations of the ICFA and IDTPA, they also support claims under the various state consumer protection laws. ¶114. Defendants' challenges to Plaintiffs' claims under the consumer protection statutes of their home states are mostly duplicative of earlier arguments, and are similarly unpersuasive.

#### a. Arkansas

Defendants challenge only the knowledge and injury elements for Plaintiffs' claims under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code. Ann. §4-88-101, *et seq.* Defs' Mem. at 27. However, the ADTPA only requires knowledge with respect to some deceptive practices, not all conduct. Ark. Code Ann. §4-88-107. For instance, Defendants' violations of the ADTPA's prohibition of "any other unconscionable, false, or deceptive act" does not contain a knowledge requirement. Ark. Code Ann. §4-88-107(10). Regardless, Plaintiffs allege Defendants' knowledge. *See* ¶¶67, 146-147, 161; *see also supra* §V. Plaintiffs also allege actual injury and have

thus sufficiently alleged a claim under the ADTPA.  *See* ¶115; *see also Rush*, 2008 U.S. Dist. LEXIS 17210, at \*8-\*9; *Clayton v. Batesville Casket Co., Inc.,* No. 07-214, 2008 WL 1970312, at \*2 (E.D. Ark. May 7, 2008).

### b.    Florida

Likewise, Plaintiffs properly allege claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §501.201, *et seq.*  First, as explained above, Rule 9(b) ***does not*** apply to FDUTPA claims where, as here, Defendants' conduct is short of fraud.  *See Romano*, 2007 WL 4199781, at \*1.   The Complaint details Defendants' deceptive conduct, including misrepresentations as to the safety of the Toys, their failure to disclose their inadequate testing or screening of the Toys, and their concealment as to their hazardous nature.  ¶170.  Second, Plaintiffs need not rely on specific statements or practices to allege a claim under FDUTPA "because an actionable trade practice is one which is "likely to deceive a consumer acting reasonably in the same circumstances," not one upon which any plaintiff "actually relied."  *S.D.S. Autos, Inc. v. Chrzanowski*, 982 So. 2d 1 (Fla. Dist. Ct. App. 1st Dist. 2007).  Thus, Plaintiffs' properly allege a FPUTPA violation.[35]

### c.    Oklahoma

Plaintiffs allege a viable claim under the Oklahoma Consumer Protection Statute, 15 Okla. St. §751, *et seq.  See API Enter., Inc. v. Am. Standard, Inc.*, No. CIV-07-853-M, 2008 WL 819335 (W.D. Okla. March 25, 2008).   Plaintiffs and members of the class allege they suffered actual injuries, in addition to the purchase price, in the form of diagnostic screening for the hazardous chemicals in the Toys.[36]  *See* ¶¶116.  As such, Plaintiffs are aggrieved consumers under the statute. Defendants' argument that Plaintiffs failed to allege the Toy malfunctioned or the defect manifested itself is baseless in light of Defendants' recall.  Defs' Mem. at 31-32.

---

[35]    Plaintiffs also allege how they have been damaged. A diminution in the product's value (here to zero) constitutes damages.  *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990-91 (Fla. Dist. Ct. App. 5th Dist. 2004); ¶7.  Plaintiffs need not show "that a defect manifested itself by failing to operate in an emergency or by causing injury."  *Id.*

[36]    Defendants argue that Plaintiff Williams cannot recover because he has not alleged that he has suffered some detriment or loss beyond the payment of the purchase price. Defs' Mem. at 31-32.  However, this ignores the well-pleaded allegations of the Complaint.  ¶116.

### d.    Pennsylvania

Defendants focus on a single subsection and wrongly argue that Plaintiffs must establish the elements of fraud to recover under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"), 73 Pa. Cons. Stat. §201-1, *et seq.* Defs' Mem. at 32-33.  The UTP/CPL specifically enumerates twenty prohibited practices – none of which require proving fraud's elements.  73 Pa. Cons. Stat. §201-2(4)(i)-(xxi).  Defendants' practices violate many of these provisions, including "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have..."  73 Pa. Cons. Stat. §201-2(4)(v); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392 (E.D. Pa. 2006).  In addition to these specifically enumerated acts, any "fraudulent or deceptive conduct which creates the likelihood of confusion or of misunderstanding" is actionable.[37]  *Zwiercan v. Gen. Motors Corp.*, No. 3232, 2002 WL 31053838, at *2 (Pa. Com. Pl. September 11, 2002).  Under this "catchall provision," "a party must either prove the elements of common law fraud, *or* that Defendant's deceptive conduct caused harm to the Plaintiff."  *Id.*  Nor is reliance a required element.[38]  *Id.*  As such Rule 9(b) does not apply; however, even if it does, Plaintiffs plead with the requisite particularity and state a claim under the UTP/CPL.

### e.    Texas

Plaintiffs allege a viable claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code §171.41, *et seq.*  Defendants mistakenly rely on *Everett v. TK Taito, L.L.C.*, 178 S.W.3d 844 (Tex. Ct. App. 2005), in arguing that Plaintiffs and members of the class have no cognizable injuries.  However, unlike that case, Plaintiffs and members of the class allege more than "potential loss-of-the-benefit-of-the-bargain injuries," *id.* at 858, they have alleged actual damages due to monetary expenditures.  *See* ¶115.  Moreover, unlike plaintiffs in *Everett* who did not allege their vehicles were not operational, Plaintiffs also allege their Aqua Dots were defective and worthless.  *Everett*, 178 S.W.2d at 859; ¶¶122, 125, 131, 160, 164,

---

[37]    The UTP/CPL "is to be construed liberally to effect its object of preventing unfair or deceptive practices."  *Solarz v. DaimlerChrysler Corp.*, No. 2033, 2002, 2002 WL 452218, at *6 (Pa.Com.Pl.) (March 13, 2002).

[38]    Although reliance is not a required element, reliance can be presumed by the materiality of the statement and the parties' relationship.  *Zweircan*, 2002 WL 31053838, at *2, *4.

166.  In other words, the defect is not in the operation of the product (*i.e.* it does not work well) but in the very nature and character of the product (*i.e.*, it is poisonous).

Moreover, Plaintiffs adequately allege causation.  A plaintiff need only show "producing cause," which is akin to causation in fact, not proximate cause to recover under TDTPA.  *Smith v. Hennessey & Assocs.*, 103 S.W.3d 567, 569 (Tex. App. 2003) (citing Tex. Bus. & Com. Code Ann. §17.50(a)).  Plaintiffs have alleged that Defendants' deceptive conduct was the cause-in-fact of their injuries.  *See* ¶115;  *Van Waters & Rogers, Inc. v. Quality Freezers, Inc.*, 873 S.W.2d 460 (Tex. Ct. App. 1994).  Thus, Plaintiffs and members of the class have alleged a viable claim under TDTPA.

### f.    Missouri

Defendants attempt to paint Plaintiffs' Missouri Merchandising Practices Act ("MMPA") claim as a fraud claim.  Defs' Mem. at 29-30.  In so doing, they ignore that the MMPA "serves as a supplement to the definition of common law fraud; it eliminates the need to prove an intent to defraud or reliance."  *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 232 (Mo. Ct. App. 2006); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007) (noting that an MMPA claim "expressly" does not require intent that others rely); *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 899 (Mo. App. 2003); Mo. Code Regs. 15 §60-80.020(2).

Defendants' deceptive conduct falls within the broad definition of an unfair practice under the MMPA because it presented a risk of, and caused, substantial injury to consumers.  *See Schuchmann*, 199 S.W.3d at 233.  Moreover, Defendants' failure to disclose the hazards of the Toys and to adequately inspect the Toys amounts to actionable omissions of material fact under the MMPA.  *See Hess*, 220 S.W.3d at 774; ¶¶3, 145.

### g.    New York

Plaintiffs state valid claims under New York's Deceptive Business Acts and Practices Statute, N.Y. Gen. Bus. Law §349, *et seq.*  Plaintiffs must only allege "defendants engaged in consumer-oriented acts or practices that are 'deceptive or misleading in a material way and that plaintiff has been injured by reason thereof.'"  *DeAngelis v. Timberpeg East, Inc.*, 858 N.Y.S. 2d 410, 414 (N.Y. App. 3rd Dep't Div. 2008).

While Defendants admit that Plaintiffs sufficiently allege that Defendants' deceptive conduct misled Plaintiffs, Defendants argue that Plaintiffs fail to identify the harm – pecuniary or otherwise – caused thereby.  Defs' Mem. at 31.  However, as explained above, in addition to economic damages, Plaintiffs and members of the class alleged actual harm in the form of exposure to the Toys.  ¶115.  Thus, the facts here are distinguishable from *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y.

1999), where plaintiffs did not plead facts showing actual injury. Finally, Defendants argue Plaintiffs fail to allege they saw or relied on the deceptive representations. Defs' Mem. at 31. However, reliance on the misrepresentations is not required and thus Plaintiffs properly state a claim under the GBL. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 647 N.E.2d 741, 745 (N.Y. 1995); ¶¶11-19, 79.

### h.    Kentucky

Plaintiffs properly allege claims under the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. §367.170(1). While Spin Master argues the KCPA requires privity of contract, the Kentucky legislature "created a statute which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988). Thus, direct privity is relaxed in cases where an injury has occurred from an inherently dangerous product. *See Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516, 519 (Ky. 1968). The Kentucky Supreme Court has yet to determine this issue. Plaintiffs allege the Toys, children's toys containing the date rape drug, are an inherently dangerous product and thus properly plead claims under the KCPA. Plaintiffs allege that Moose manufactured them, Spin Master distributed them, and the Retailer Defendants sold them to Plaintiffs. This is sufficient for privity under Kentucky law.

### H.    Plaintiffs' Unjust Enrichment Claims Are Viable

Defendants concede that despite different "formulations,"[39] the unjust enrichment contains essentially the same elements in all jurisdictions, *i.e.*, a wrongly retained benefit conferred by the plaintiff.[40] Defs' Mem. at 34. Defendants essentially concede a benefit was in fact retained but only argue that Plaintiffs have not adequately plead that it is unjust for them to retain it. *Id.* at 34-35.

---

[39]    Despite the formulation, whether the word used is unjust, unfair, unconscionable or inequitable, the central purpose is to assign reproach for the retention of the benefit. Am. Jur. *Restitution* §13 (2008).

[40]    According to the Restatement, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement (First) of Restitution §1 (1937); *see, e.g.,* Illinois: *Muehlbauer v. General Motors Corp.,* 431 F. Supp. 2d 847, 851 (N.D. Ill. 2006); *see, e.g., Muehlbauer v. General Motors Corp.,* 431 F.Supp.2d 847, 851 (N.D. Ill. 2006); Arkansas: *Adkinson v. Kilgore,* 970 S.W. 2d 327, 330-31 (Ark. Ct. App. 1998); *Pro-Comp Mgmt, Inc., et al., v. R.K. Enter., LLC.,* 366 Ark. 463, 469 (Ark. 2006); Florida: *Rollins, Inc. v. Butland,* 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006); *Merkle v. Health Options, Inc.,* 940 So. 2d 1190, 1199 (Fla. Dust, Ct, App. 4th Dist. 2006); Illinois: *B & B Land Acquisition, Inc. v. Mandell,* 714 N.E.2d 58, 63, 306 Ill. App. 3d 574 (Ill. App. Ct. 1999); Kentucky: *Haeberle v. McCall, Currens, Toper & Thompson, P.S.C.,* No. 05-2265, 2007 WL 1201587, at *7 (Ky. Ct. App. April 20, 2007); *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987); Missouri:

1.    **Plaintiffs Adequately Plead Unjust Enrichment Under Illinois Law**

a.    **Defendants' Retention Is Unjust, Inequitable, and Unconscionable**

Regardless of which state's law is viewed, the unjust enrichment claim elements are similar nationwide in that most courts have adopted the Restatement in the relevant and substantive respects.[41]

Plaintiffs adequately allege a benefit conferred upon Defendants at Plaintiffs' expense in violation of the fundamental principles of justice, equity, and good conscience, which Defendants must disgorge. Plaintiffs allege that Defendants received monies and conferred a benefit from Plaintiffs and the Class, which were excessive and unreasonable, for the purchase of hazardous toys containing butanediol. ¶¶170-71; *see also* ¶¶5,11-19, 78-90. With full knowledge that their acts were unconscionable, Defendants accepted and retained these benefits by not providing an adequate refund or exchange remedy to Plaintiffs and the Class. *Id.*

Defendants erroneously argue that the benefit that they have retained is due to a Hobson's choice they put to Plaintiffs to acquiesce to their inadequate recalls or request a refund. *See* Defs'

---

[41] *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. Ct. App. 2008); *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000); New York: *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123 (N.Y. 1976); Oklahoma: *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2000); *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Ct. App. 1996); Pennsylvania: *Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008); *Wiernik v. PHH US Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999); Texas: *Matagorda County v. Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool*, 975 S.W.2d 782, 785 (Tex. App. 1998). For reasons unknown, Defendants ignore the Complaint and selected the unjust enrichment laws of the states in which *most* of the Plaintiffs reside and ignore Florida law (Plaintiff Bertanowski). However, in doing so, Defendants also fail to acknowledge that Plaintiffs' Complaint alleges unjust enrichment applying Illinois law to a nationwide class. A 50 state-by-state analysis is available to the Court upon request.

[41] *See, e.g., In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697, n.40 (S.D. Fla. 2004)( unjust enrichment claims "are materially the same throughout the United States." )(citing *Sollenbarger v. Mountain States Tel. & Tel. Co.,* 121 F.R.D. 417, 428 (D.N.M.1988)); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1336 -1337 (S.D. Fla. 2002) (citing *Singer v. AT & T Corp.,* 185 F.R.D. 681, 692 (S.D. Fla.1998). Although the Court in *In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litigation* held that an unjust enrichment claim could not be maintained by a nationwide class of purchasers, the instant case is distinguishable. Nos. 05-4742, 05-2623, 2006 WL 3754823 (N.D. Ill. December 18, 2006). The *Sears* court's rejection of plaintiffs' argument that all unjust enrichment laws are similar was not based on an inadequate legal theory, but based on an inadequate legal proof. Namely, when invited to prove its similarity, plaintiffs in *Sears* failed to meet that burden by failing to submit *any* materials to the Court. *See id.*, at *9 n.7. In other words, *Sears* does not hold that the unjust enrichment laws are different but only that plaintiffs *there* failed to prove they were the same. Plaintiffs here amply meet that burden.

- 29 -

Mem. at 35. In *Muehlbauer*, the defendant also argued that its recall returned the benefit and mooted the unjust enrichment claim because the recall returned any benefit conferred to it by plaintiffs. 431 F. Supp. 2d at 854. However, in rejecting that argument, the court held that an ***inadequate*** remedy (the recall), still supported the unjust enrichment claim since the defendant retained a benefit in the form of purchase price for the product. *Id.* Here, Plaintiffs allege that Defendants' recall and refusal to provide a return of monies paid for the Aqua Dots toy and that the offer of replacement beads that may or may not contain a hazardous substance are inadequate. ¶¶6, 46, 171. Under *Meuhlbauer*, this recall does not constitute a "return of the benefit." *Meuhlbauer*, 431 F. Supp. 2d at 855. More importantly, as the nature of the recall presents a question of fact, it is inappropriate to discuss it in a Rule 12 motion. *Id.*

### 2. Unjust Enrichment Claims Are Properly Plead in the Alternative and Under Texas Law

Defendants' arguments that an adequate remedy at law exists, *see* Defs' Mem. at 35, fail to take note that Plaintiffs' unjust enrichment claims are pled in the alternative. ¶169. Alternative pleading is not only permitted under Federal Rule of Civil Procedure 8(e)(2), but it is common. *See, e.g., Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Hence, the Complaint sufficiently pleads the unjust enrichment claim in the alternative.[42] Moreover, dismissal of the unjust enrichment claims based on the existence of (disputed) contract (the warranty) would be premature. *Saltzman v. Pella Corp.,* No.06-CV-04481, 2007 WL 844883, at *6 (N.D. Ill. March 20, 2007).

Finally, if Illinois law does not apply nationwide, Texas does recognize a claim for unjust enrichment as a separate cause of action.[43] *See Leal v. Weightman*, No. 01-03-01006-CV, 2004 WL 2251570, at *4 (Tex. App. October 7, 2004); *compare* Defs' Mem. at 36-37, *with Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 683-85 (Tex. 2000).

---

[42]    The Illinois Courts also hold that when an unjust enrichment claim is based on a tort, plaintiff need not plead the unjust enrichment claim in the alternative. *See ShopLocal LLC v. Cairo, Inc.,* No. Civ.A. 05-C-6662, 2006 WL 495942, at *2 (N.D. Ill. February 27, 2006).

[43]    Defendants' citations mainly apply Texas appellate court decisions analyzing claims under an implied quasi-contract or quantum meruit theory rather than an unjust enrichment principle. *See Oxford v. Williams Cos., Inc.,* 137 F. Supp. 2d 756, 762 (E.D. Tex. 2001) (citing *LaChance v. Hollenbeck,* 695 S.W.2d 618, 620 (Tex. App. 1985)); *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.,* 736 S.W.2d 247, 250 (Tex. App. 1987). Thus, *Oxford and City of Corpus Christi* are irrelevant and do not conflict with binding Texas Supreme Court case law that recognizes a claim for unjust enrichment.

I.    The "Innocent Non-Manufacturer Doctrine" Does Not Preclude
      Claims

Spin Master lastly argues it is not liable under the "innocent non-manufacturer" doctrine in
Texas, Illinois and Missouri.  Plaintiffs allege that Defendants knew, or should have known, that the
Aqua Dots were hazardous.  *See* ¶¶3, 67, 142-143, 156, 161.  At this stage, these allegations must be
taken as true, given that Spin Master's[44] knowledge is a question of fact yet to be determined.[45]  In
Texas and Illinois, knowledgeable non-manufacturing defendants are held strictly liable.[46]  For the
Texas exceptions to apply, Plaintiffs need only show that they *may* prove Spin Master was
knowledgeable of the hazard.[47]  The Illinois and Missouri law exceptions are not defeated by
Defendant's declaration attesting to its distributor role either.[48]  Plaintiffs have alleged that Spin
Master is much more than a "seller in the stream of commerce" or distributor and should have the
opportunity to prove their allegations.  *See* ¶¶21, 79.  Moreover, any financial instability of the
manufacturer, any hint at the Plaintiffs' ability to recover from it, such as a small foreign corporation

---

[44]    Defendants' innocent non-manufacturer argument only addresses the dismissal of claims against Spin
Master – not Target or the other Retailer Defendants.

[45]    *See Goss v. Schering-Plough Corp.*, No. 6:06-CV-251, 2006 WL 2546494, at *3 (E.D. Tex.
August 30, 2006)  (allowing claim to proceed under §82.003 exceptions where defendant's knowledge of the
defect is "ambigu[ous] or contested issue of fact"); *Potter v. Electrolux Home Prod., Inc.*, No. 06-C- 4811,
2006 WL 2930972, at *1-2 (N.D. Ill. October 11, 2006) (upholding plaintiff's strict liability claim when
complaint alleged defendant had knowledge of product defect); *Grove v. Manchester Tank & Equip. Co.*,
Nos. 07-1263, 07-1268, 07-1280, 2008 WL 2626366, at *2 (C.D. Ill. June 26, 2008) ("it is unclear without
further discovery whether plaintiffs could show that [defendant] satisfies one of the exceptions to dismissal.
Because that material issue of fact remains to be resolved in this case, a judgment on the pleadings is
inappropriate").

[46]    Texas Civil Practices and Remedies Code §82.003(a)(6)'s exception to §82.003 deems non-
manufacturer sellers strictly liable when "(A) the seller actually knew of a defect to the product at the time the
seller supplied the product; and (B) the claimant's harm resulted from the defect."; 735 ILCS 5/1-621(c) (non-
manufacturing defendants are strictly liable if they "exercised some significant control over the design or
manufacture of the product, "provided instructions or warnings to the manufacturer relative to the alleged
defect," or "had actual knowledge of the defect"); *see Grove*, 2008 WL 2626366 at *1.

[47]    *See Engelbrecht v. Daimlerchrysler Corp.*, No. G-06-CV-800, 2007 WL 1040886, at *2 (S.D. Tex.
April 2, 2007).

[48]    Under §537.762 of Missouri Revised Statutes ("Missouri Code"), dismissal of a non-manufacturer is
only proper when the defendant's liability is based solely on its status as a seller in the stream of commerce.
*Drake v. N. Am. Phillips Corp.*, 204 F. Supp. 2d 1204, 1206 (E.D. Mo. 2002).

like Moose, allows Plaintiffs' claims against Spin Master to survive.[49]  Additionally, Missouri's statute does not apply to actions against sellers that include independent negligence claims, as brought by Plaintiffs here.[50]  Lastly, §537.762 of the Missouri Code does not affect the substantive liability of a seller, thus Plaintiffs may still hold Spin Master strictly liable.[51]

## VI.    CONCLUSION

For these reasons, Defendants' motion to dismiss should be denied in its entirety.[52]

DATED:  August 8, 2008                          Respectfully submitted,

                                                FINKELSTEIN THOMPSON LLP
                                                BURTON H. FINKELSTEIN
                                                MILA F. BARTOS
                                                ROSALEE B. CONNELL


                                                _____
                                                    s/ Rosalee B. Connell
                                                   ROSALEE B. CONNELL

                                                1050 30th Street, NW
                                                Washington, D.C. 20007
                                                Telephone: 202/337-8000
                                                202/337-8090 (fax)

---

[49]     *See* 735 Ill. Comp. Stat. 5/2-621(b)(4)-(5) (preventing dismissal of claims against distributor/retailer if "manufacturer is unable to satisfy any judgment as determined by the court; or . . . the manufacturer would be unable to satisfy a reasonable settlement or other agreement with plaintiff."); Mo. Rev. Stat. §537.762(2) (2000) (forbidding dismissal of distributor/retailer when manufacturer would be unable to provide a "total recovery . . . for plaintiff's claims").

[50]     *Sappington v. Skyjack Inc.,* No. 04-5076-CV-SW-FJG, 2008 WL 795598, at *3 (W.D. Mo. March 20, 2008).

[51]     *Drake*, 204 F. Supp. 2d at 1206 (holding "by its very terms, does not change the substantive law relating to an innocent seller's liability; ***as its effect is only procedural***") (emphasis in original); *see also Henry v. Mylan Pharm., Inc.,* No. 05-CV-40092, 2005 WL 2101049, at *5 (W.D. Mo. August 31, 2005).

[52]     Should the Court dismiss any of Plaintiffs' claims, Plaintiffs should be granted leave to amend their Complaint.

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR.
RACHEL L. JENSEN
THOMAS J. O'REARDON II
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)


BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JACK REISE
ELIZABETH A. SHONSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

KAPLAN FOX & KILSHEIMER LLP
FREDRIC S. FOX
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone:  212/687-1980
212/687-7714 (fax)

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone:  415/772-4700
415/772-4707 (fax)

Plaintiffs' Interim Co-Lead Class Counsel

S:\CasesSD\Aqua Dots\BRF 00053244.doc

CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 12, 2008.

s/ Rosalee B. Connell
ROSALEE B. CONNELL

FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, D.C. 20007
Telephone: 202/337-8000
202/337-8090 (fax)

E-mail:  rconnell@finkelsteinthompson.com

# Mailing Information for a Case 1:08-cv-02364

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ben Barnow**
  b.barnow@barnowlaw.com,s.harris@barnowlaw.com

- **Joanna E. Clarke-Sayer**
  jsayer@winston.com,ECF_CH@winston.com

- **Rosalee B. Connell**
  rconnell@finkelsteinthompson.com

- **Bryna Joyce Roth Dahlin**
  bdahlin@winston.com,ECF_CH@winston.com

- **Dana Michele Gilreath**
  dgilreath@clinton-clinton.com

- **Laurence David King**
  kweiland@kaplanfox.com,agutierrez@kaplanfox.com,lking@kaplanfox.com

- **Jack Reise**
  jreise@csgrr.com,e_file_fl@csgrr.com

- **William N. Riley**
  wriley@price-law.com

- **Aron David Robinson**
  adroblaw@aol.com

- **Ronald Y Rothstein**
  rrothstein@winston.com,mconroy@winston.com,ECF_CH@winston.com

- **Thomas Joseph Wiegand**
  twiegand@winston.com,ECF_CH@winston.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Mila F. Bartos
Finkelstein, Thompson & Loughran
```

1050 30th Street, NW
Washington, DC 20007

**Burton I Finkelstein**
Finkelstein, Thompson & Lougran
1050 30th Street, NW
Washington, DC 20007

**Frederic S. Fox**
Kaplan Fox and Kilsheimer
850 Third Avenue
14th Floor
New York, NY 10022

**Ralph K. Phalen**
Ralph K. Phalen, Attorney At Law
1000 Broadway
Suite 400
Kansas City, MO 64105

**John K Sherk**
Shook, Hardy & Bacon
2555 Grand Boulevard
Kansas City, MO 64108-2613

**John J. Stoia**                                    **, Jr**
Coughlin  Stoia Geller Rudman and Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**James A. Streett**
Streett Law Firm, PA
107 West Main
Russellville, AK 72811