UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **In re AQUA DOTS PRODUCTS LIABILITY LITIGATION**  <br><br>  ———————————————————  <br><br> **THIS DOCUMENT RELATES TO: ALL ACTIONS** | Case No. 1-08-cv-2364  <br><br> Judge David H. Coar  <br> Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

The matter before the Court is plaintiffs' Motion to Undesignate Certain Documents and Written Discovery Responses Marked "Confidential" [dkt 218]. Defendants, Spin Master, LTD., Spin Master, Inc., Toys "R" Us, Inc., Target Corporation and Wal-Mart Stores, Inc. marked the disputed documents confidential pursuant to the May 16, 2008 Stipulated Protective Order [dkt 12], which protects documents that contain "trade secrets or proprietary, non-public commercial information protected by applicable law" or "individual consumer financial and medical records."[1] This description includes "sensitive information of a non-public nature that would not generally be available to the public" and information that "contains proprietary business information protected under Fed. R.Civ. P. 26."[2] Rule 26(c) allows for protection of "a trade secret or other confidential

---
[1] Stipulated Protective Order, p.1
[2] *Id.*

1

research, development, or commercial information."[3] Since the filing of the motion, the parties have come to an agreement on numerous documents. Presently, the issue is whether the rest of the documents are within the scope of the Protective Order.

Generally, "pretrial discovery must take place in the public" unless there is a "compelling reason" for "denying the public access."[4] Defendants must show "good cause" for keeping materials confidential, which includes showing that disclosure will lead to "a clearly defined and very serious injury."[5]

First, plaintiffs assert that documents introduced during depositions of Iain Kennedy, Alan P. Kaufman, and Jamie Uitdenhowen are not confidential.[6] But even if they are, they argue that the confidentiality was waived because the documents were not designated at the time of the deposition. Defendants counter that this was not a voluntary waiver of confidentiality and that the Protective Order protects inadvertent disclosure of information without the confidential designation, when the designating party sends a "written request" to the other party for confidentiality. And defendants did, in fact, send plaintiffs a letter regarding these documents. In addition, defendants argue that the deponents were not provided with a copy of the Protective Order. In light of paragraphs 8-9 and 5 of the Protective Order, it seems defendants did not waive the confidentiality of documents disclosed during these depositions. Therefore, plaintiffs need to demonstrate why they think these documents should not be confidential.

Secondly, plaintiffs argue that there is no good cause for the other disputed documents to remain

---

[3] Fed. R. Civ. P. 26(c)(1)(G).

[4] *Am. Tel. & Tel. Co v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979).

[5] *Culinary Foods, Inc. v. Raychem Products*, 151 F.R.D. 297, 301 (N.D. Ill. 1993) (citations omitted).

[6] Ex.3 attached to Wal-Mart Stores, Inc.'s May 8, 2009 Amended Opposition to Plaintiff's Motion to Undesignate.

confidential and that they should be undesignated due to public interest and safety concerns. Defendants counter that there are four categories of protected documents that should remain designated. As to these four categories, defendants claim that the public interest is not as strong because Aqua Dots has been recalled and that undesignation would cause defendants commercial harm. Defendants' first point has merit. In another defective product case, a court rejected the plaintiffs' public safety argument because the defendant had "not kept the existence of the...defect a secret from the public" and had cooperated by voluntarily recalling the product.[7] In the present case, Aqua Dots has been voluntarily recalled and the information about the hazardous ingredients is available to the public.

As to whether the undesignation would cause defendants unwarranted commercial harm, the Court will analyze this issue within the confines of the four categories of documents that remain in dispute: (A) internal business methods, protocols, and procedures; (B) financial information; (C) investigatory and testing data, and; (D) trade secrets.

**A. Internal Business Methods, Protocols, and Procedures**

Defendants assert that documents containing "policies and procedures with regard to product recalls, product development and launch, negotiations with distributors with regards to market strategy, and product disposal" should be kept confidential, because they will put defendants at a competitive disadvantage if disclosed. Defendants point out that making this type of information public would provide "competitors with information that they would otherwise have to spend money to create and develop on their own," providing them with a "guideline" as to how their business is

---

[7]*Muehlbauer v. General Motors Corp.*, No. 05-C-2676, 2009 WL 874511, at *3 (N.D. Ill. March 31, 2009).

run. In their reply brief, plaintiffs concede that Spin Master's internal safety and testing procedure manual, Spin Master's marketing presentation, and Target's marketing presentation should remain confidential.[8] Plaintiffs argue that the rest of the documents pertain to non-secret and routine matters, and that defendants fail to show specific harm that would result from undesignation. These documents contain mostly e-mail correspondence that includes general instructions to remove the product from the shelves, a list of affected products, discussion about Aqua Dots landfill disposal, discussions about quantities of recalled Aqua Dots, and logistical details for recall.[9] Overall, the disputed documents are less detailed and less formal than the protocol manual and marketing presentations mentioned above (which were left designated).

Internal business information is not confidential merely because it is "traditionally. . . private."[10] However, "matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business," warrant protection.[11] For example, documents containing "internal evaluation reports" and "potential business strategies" have been recognized as commercial confidential information.[12] Finally, mere allegations of "competitive disadvantage" is not enough to show "good cause" for confidentiality.[13]

In the present case, the remaining documents fit more into the "traditionally. . . private" category

---

[8] Exs.B1; B16; B20 attached to Spin Master, Ltd., Spin Master, Inc., Toys "R" Us, Inc., and Target Corporation's June 9, 2009 Opposition to Plaintiff's Motion to Undesignate.

[9] Exs.5A; 5B; 5C; 5D; 5E attached to Wal-Mart Stores, Inc.'s May 8, 2009 Amended Opposition to Plaintiff's Motion to Undesignate; Exs. B3; B4; B7-B11; B13-15.

[10] *In re Bank One Securities Litigation*, 222 F.R.D. 582, 589 (N.D. Ill. 2004) (holding that meeting minutes from a board meeting were not confidential).

[11] *Culinary*, 151 F.R.D. at 301.

[12] *Muehlbauer*, WL 874511 at *2.

[13] *In re Bank One*, 222 F.R.D. at 589.

than into the protected commercial information category.[14] Unlike reports, manuals, or other more formal and detailed documents, these communications do not provide a "guideline" for competitors to copy and disadvantage defendants. While it is understandable that defendants would prefer to keep any internal business information from the public eye, it is not immediately clear that the disclosure of these particular documents would cause defendants "serious injury."[15]

**B. Financial Information, Including Marketing and Pricing**

Defendants argue that the documents containing financial information should remain confidential because they have "inherent competitive value" and revealing them would cause competitive disadvantage and jeopardize their relationships with third-parties. They cite case law from other districts to demonstrate the federal courts' general inclination to protect financial information.[16] In addition, they argue that the documents will reveal their business strategies. Plaintiffs counter that the documents contain pricing information already available to the public and that the information does not constitute a trade secret.

The Court agrees with defendants that the financial documents should remain designated. First, plaintiffs did not present a public safety argument that would make the public disclosure of these documents necessary. Second, while the information is not a trade secret, it fits into the category of non-public commercial information because the documents contain more than public pricing information. They contain calculations of profit margins, sales agreement, price points in connection with the recall, estimates of recall costs, product launch strategy, and retail value of the product, as

---

[14] *See id.*

[15] *See Culinary Foods, Inc.*, 151 F.R.D. at 301.

[16] *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151, 2008 WL 2038047, at *5 (N.D. Cal. May 12, 2008); *Avocent Redmond Corp. v. Rose Elec., Inc.*, 242 F.R.D. 574, 576 (W.D. Wash. 2007); *Learjet Inc v. MPC Prods Corp.*, 2007 WL 2287836, at *5 (D. Kan. Aug. 8, 2007).

5

well as cost forecasts and pricing strategies.[17] These documents took time and money to create and develop, and they contain sufficient detail about defendants' strategies. Plaintiffs already conceded that marketing presentations should be protected so it is not clear why documents of similar importance and formality should be disclosed without a compelling reason. In addition, financial information involving "cost projections" has been recognized as protected commercial information. Financial documents involving forecasting costs, therefore, are properly designated as such.[18]

Finally, even though some of these documents pertain to a product that is no longer on the market, they contain pertinent information, such as costs of reworking the product, that reveals "information about. . . current operations." This kind of information should also be protected.[19]

**C. Investigatory and Testing Data**

Defendants argue that documents containing "investigatory and testing methods" should remain designated. Plaintiffs already agreed that Wal-Mart's toy testing protocol should remain confidential. But now Wal-Mart seeks to keep laboratory test results of Aqua Dots and its analysis of the results confidential,[20] asserting that these documents will inevitably reveal the protected toy testing strategy to its competitors and cause them harm. Similarly, Spin Master argues that its testing results cannot be separated from the "investigatory strategy" it used in getting the results. In their reply, plaintiffs concede that the document containing analysis of the test results, and the composition of a replacement product, should remain confidential. But plaintiffs argue that the rest of the documents contain only testing techniques, which are not entitled to protection.

---

[17]Exs. 5F; 5G; 5H; B2; B5; B9; B12; B22; Ex.B17; B19; Ex.B24.

[18]*See Muehlbauer*, WL 874511 at *2.

[19]*See Culinary,* 151 F.R.D. at 303 (including older documents into the protective order).

[20]Exs. 5I; 5J.

Defendants have to make more than "conclusory" statements to demonstrate that the "end results" of testing should be protected; there has to be "specific demonstrations of fact."[21] In the present case, the remaining documents consist mainly of laboratory results of Aqua Dots testing. Defendants may be reluctant to make this information public because some of it involves the defective Aqua Dots being deemed safe by the testing companies. However, it is not patently clear beyond the defendants' statements that the results reveal proprietary information.

**D. Trade Secret**

Finally, defendants argue that the Aqua Dots formula is a trade secret and should be confidential. Plaintiffs counter that the Aqua Dots formula is a "matter of great public interest" and that Spin Master "has already made public statements regarding the ingredients." Spin Master asserts that public statements regarding the whole formula have not been made, and that the formula, rather than the ingredients, is still a trade secret.

The Illinois Trade Secret Act includes protection of formulas, that are "sufficiently secret to derive economic value" and are "the subject of efforts that are reasonable. . . to maintain secrecy."[22] The Court agrees with defendants that disclosure of Aqua Dots ingredients is not necessarily disclosure of the formula, which contains additional information such as percentages of each ingredient.[23] Those details should remain confidential if they have been kept secret. On the other hand, if plaintiffs can demonstrate that the *formula* has been disclosed, the correspondence regarding the formula has no reason to remain confidential. In support of secrecy, defendants make a persuasive showing that a third-party is the owner of the formula and that it has required Spin Master not to

---

[21] *Culinary,* 151 F.R.D. at 303.
[22] 765 ILCS 1065/2 (d).
[23] Ex. B44

7

disclose the information.[24] In addition, it is a plausible that even though Aqua Dots is no longer on the market, the formula still has potential economic value for future development. Finally, the hazardous ingredients in the toys have already been disclosed to the public, which again, lessens the weight of a public interest argument for knowing the entire formula.

CONCLUSION

The Court grants in part plaintiffs' Motion [dkt 218]. Documents in categories (A) and (C) are to be undesignated, while documents in categories (B) and (D) are to remain confidential.

**IT IS SO ORDERED.**

Date: June 23, 2009

**Susan E. Cox**
**U.S. Magistrate Judge**

---

[24]Ex.B43