# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re AQUA DOTS PRODUCTS LIABILITY LITIGATION | Case No. 08 C 2364 |
| | Judge David H. Coar |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Susan E. Cox, Magistrate Judge

Plaintiffs have filed a motion to compel responses to interrogatories and certain documents from defendants Spin Master Ltd., Spin Master, Inc., (collectively, "Spin Master") and Moose Enterprises Pty Ltd ("Moose") [dkt 380]. Specifically at issue are the following interrogatories, which ask both defendants for the same financial disclosures: Interrogatory 1 requests "gross income, net income, and profits/losses in 2007, 2008, 2009, and 2010" and Interrogatory 2 requests defendant state "whether you own or have interests in tangible or intangible property, and for each such property, state the current market value of the property and the annual income derived from the property in 2007, 2008, 2009, and 2010."[1] Plaintiffs also seek the production of any documents relevant to these interrogatories.[2] The other issue in the motion is plaintiffs' request for the production of documents exchanged between Spin Master and the Consumer Product Safety Commission ("CPSC").[3] The court grants plaintiffs' motion in its entirety [dkt 380].

---

[1] Br. at 2.
[2] Br. at 3.
[3] Br. at 5.

**I.      Financial Information**

The court will grant plaintiffs' motion to compel responses to Interrogatories numbers 1 and 2 and related documents on the basis that the information is relevant to the Plaintiffs' claim for punitive damages. In *TXO Production Corp. v. Alliance Resources Corp.*, the Supreme Court explained that a defendant's wealth is one factor that the jury may consider in determining punitive damages.[4] Federal Rule of Civil Procedure 26(b)(1) allows the discovery of relevant non-privileged information that is "reasonably calculated to lead to the discovery of admissible evidence."[5] Since evidence of a defendant's wealth may be admissible at trial, as it relates to punitive damages, courts have allowed the discovery of financial information on those grounds.[6]

The defendants rely on the Seventh Circuit decision in *Zazu Designs v. L'Oreal* and its progeny to argue that the financial information of a corporation is not relevant to a claim for punitive damages.[7] The court in *Zazu Designs* found a lack of factual foundation for the award of punitive damages and took issue with the district court's calculation of damages.[8] Within that discussion, the court theorized that consideration of a defendant's wealth does not serve the same deterrent goals when applied to a corporation.[9]

Other courts have interpreted this discussion as controlling precedent. A case from the Southern District of Indiana, *Yund v. Covington Foods, Inc*., denied a plaintiff's motion to compel

---

[4] 509 U.S. 443, 464 (1993).
[5] Fed. R. Civ. P. 26(b)(1).
[6] *See JCW Investments, Inc. v. Novelty, Inc.* 2003 WL 742184 (N.D.Ill. Mar. 4, 2003); *Jones v. Scientific Colors,* 2001 WL 902778 (N.D.Ill. July 3, 2001); *EEOC v. Staffing Network* 2002 WL 31473840 (N.D.Ill. Nov. 4, 2002); *Iosello v. Lawrence,* 2004 WL 442609 (N.D.Ill. Mar. 5, 2004) (allowing discovery of defendant's financial statements related to claims for punitive damages).
[7] *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992); *see also Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F.Supp. 220 (N.D.Ill. 1996); *Yund v. Covington Foods*, 193 F.R.D. 582 (S.D.Ind. 2000); (denying motion to compel defendant's financial information explaining that *Zazu Designs* is controlling precedent).
[8] *Zazu Designs,* 979 F.2d at 507-08.
[9] *Id.* at 508.

financial information finding that "*Zazu Designs'* statements are more than mere theorizing - they are controlling precedent."[10] In *Pivot Point International, Inc. v. Charlene Products, Inc.* Judge Easterbrook, sitting by designation in this district, ruled to exclude evidence of the counterdefendant's wealth at trial.[11] He explained that the holding of *Zazu Designs* is that corporate wealth is not a factor in punitive damages for claims based on federal law.[12] Judge Easterbrook also denied admissibility of financial information in relation to the state law claims in that case, but explained that "this decision is conditional with respect to the state claims."[13] His concern in *Pivot Point* was that the position of the counterplaintiff in the case was "unfocused" and the introduction of financial information had the potential to "distract the jury from the essential issues."[14]

Defendants also cite *Kemezy v. Peters*, as a case confirming that punitive damages do not apply to corporations.[15] The case itself deals with an award of punitive damages assessed on an individual rather than a corporation.[16] In discussing the economic theory behind the relevance of a defendant's wealth in punitive damages, the court includes a parenthetical saying "*Zazu Designs* emphasizes [that the theory] does not apply to institutions as distinct from natural persons."[17] However, *Kemezy* goes on to refer to the discussion in *Zazu Designs* as a "suggestion," which may or may not be persuasive to the deciding judge.[18] Thus, *Kemezy* does not conclusively confirm that *Zazu Designs* is controlling on the relevance of corporate wealth to punitive damages.

More recent cases in this district, however, have dismissed this portion of *Zazu Designs* as

---

[10] *Yund,* 193 F.R.D. at 586.
[11] *Pivot Point Int'l,* 932 F.Supp. at 223.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996).
[16] *Id.*
[17] *Id.* at 36.
[18] *Id.* at 37.

dicta. For example, in *Jones v. Scientific Colors*, the defendant corporation sought to bar discovery of its financial status and the court explained that it "remains unpersuaded, at this stage, that the *Zazu Designs* dictum represents controlling authority."[19] In *EEOC v. Staffing Network, LLC* the court stated that "*Zazu Designs* merely raises the possibility that a defendant's net worth may be irrelevant, and the majority of courts addressing this issue have reached the opposite conclusion."[20] So the more recent cases that discuss this issue demonstrate that despite a defendant being a corporation, financial information may be relevant to a claim for punitive damages.

It is also important to note that *Zazu Designs* dealt with an appeal of damage calculations, while *Pivot Point* considered the equity of presenting evidence of wealth at trial.[21] The issues being considered at the discovery phase of litigation are very different than those debated in *Zazu Designs* and *Pivot Point*. Discovery should be reasonably calculated to lead to admissible evidence.[22] In this case, the claims for punitive damages are based on state law claims and, as Judge Easterbrook explained in *Pivot Point,* there is no *per se* rule as to whether corporate wealth is relevant to punitive damages based on state law.[23] Instead the determination of admissibility should be made on a case-by-case basis and presumably at a more developed stage in the litigation. At this point, it is enough to say that evidence of the defendants' wealth may be admissible at trial and is, thus, discoverable.

Defendants also argue that discovery of financial information is improper in this case because the claim for punitive damages is insufficient. Defendants specifically discuss the plaintiffs' claims under contract law and cite the Seventh Circuit case, *Extra Equipamentos E Exportacao Ltda.*

---

[19] 2001 WL 902778 at 1.
[20] 2002 WL 31473840 at *4 (stating that "*Zazu Designs* merely raises the possibility that a defendant's net worth may be irrelevant, and the majority of courts addressing this issue have reached the opposite conclusion.").
[21] *Zazu Designs,* 979 F.2d at 499; *Pivot Point,* 932 F.Supp. at 222.
[22] Fed. R. Civ. P. 26(b)(1).
[23] *Pivot Point,* 932 F.Supp. at 223.

*v. Case Corporation*, as evidence that punitive damages are not available under contract law.[24] Defendants also cite an order by Judge Coar pointing out issues he would like addressed in upcoming arguments and briefs on the plaintiffs' motion for class certification.[25] These include an update on the refund programs, a more narrowly tailored class definition, and a more complete choice of law analysis.[26] In that order Judge Coar does say that the alleged problems with Aqua Dots refunds deal with "contract, as opposed to tort damages."[27] However this statement was made specific to the issue of refunds and was not a summary of all the legal issues being alleged in this case. The plaintiffs' complaint alleges several claims for which punitive damages may attach: violation of the Illinois Consumer Fraud Act, Illinois Uniform Deceptive Trade Act, violation of various state consumer fraud laws, and negligence.[28] The defendants do not argue that the plaintiffs' other claims are no longer at issue in the case. At this stage in the litigation and relevant to this discovery motion, evaluating the merits of these claims is premature. For example, in *JCW Investments v. Novelty, Inc.*, after finding that punitive damages would be available under a state law claim, the court compelled discovery of financial information without considering the merits of the claim.[29]

Alternatively, defendants argue that the court should wait for a later stage in the litigation to compel discovery of this information. Specifically, defendants ask that the Court wait until Judge Coar has ruled on the pending motions for summary judgment and class certification.[30] The motion

---

[24] 541 F.3d 719, 724 (7th Cir. 2008).
[25] Minute Entry, dkt. no. 391.
[26] *Id.*
[27] *Id.*
[28] Compl. at 30-42.
[29] 2003 WL 742184 (N.D.Ill. Mar. 4, 2003); *see also*, *Iosello v. Lawrence*, 2004 WL 442609, *2 (N.D.Ill. Mar. 5, 2004) (finding that during discovery, "plaintiff is merely required to properly plead a claim for damages, not provide evidence to support that claim.").
[30] Resp. at 4.

for summary judgment has not been fully briefed and the argument for class certification is set to take place on August 20, 2010.[31] It is unclear when these issues will be resolved by the court or whether they will completely eliminate the various claims for punitive damages. Defendants cite cases in other districts where discovery of financial information was delayed. For example, in *Iwanjenko v. Cohen &Grisby*, the court found that the financial information of one defendant would not be discoverable unless the plaintiff demonstrated a "real possibility" of an award for punitive damages by surviving summary judgment.[32] But the judge in that case allowed discovery of financial information from some defendants, though it is not clear on what basis a distinction was made between the defendants.

Here, Spin Master and Moose were the distributor and manufacturer of Aqua Dots and are arguably the principle actors in plaintiffs' claim for damages. Further, defendants do not point the Court to any decisions by Judge Coar narrowing the scope of the plaintiffs' claims. Plaintiffs' request for financial information does not come early in the discovery process, on the contrary this litigation has been ongoing for two years. It is not clear that in this case delaying discovery would serve any compelling interest. The financial information requested in plaintiffs' Interrogatories and documents related to the request are relevant to the claim for punitive damages and are, therefore, discoverable.

**II.   Plaintiffs' Request for CPSC Documents from Spin Master**

Plaintiffs also request from Spin Master the production of all documents "sent to or received

---

[31] Dkt. nos. 424,404.
[32]*Iwanjenko v. Cohen & Grisby*, 2005 WL 4043954, *3 (W.D.Pa. Oct. 5, 2005); *see also Peskoff v. Farber*, 230 F.R.D. 25, 30 (D.D.C. 2005) (granting protection of financial information until "necessary to prove those damages").

from the United States Consumer Products Safety Commission ("CPSC") regarding its Aqua Dots procuct."[33] Plaintiffs first requested these documents on January 30, 2008.[34] Spin Master has not produced them up to this point and on June 17, 2010 they informed plaintiffs' counsel that the documents were protected by work product privilege.[35] Plaintiffs' counsel assert that the documents are not subject to privilege and were not included in Spin Master's privilege log.[36] Plaintiffs attempted to obtain the disputed documents from the CPSC through a Freedom of Information Act ("FOIA") request, but the agency denied their request on December 22, 2008.[37] CPSC cited section 552(b)(5) and (b)(7)(A) of the FOIA which declares inter-agency and intra-agency memoranda exempt from FOIA requests as well as records or information which could interfere with enforcement proceedings.[38] In any event, plaintiffs' counsel has taken significant time to request relief from this court.

Spin Master argues that the documents are protected by work product.[39] The test for whether a document is protected as work product is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."[40] Here, the CPSC began recalling Aqua Dots in November 2007 and Spin Master produced documents pursuant to that investigation.[41] Spin Master argues that the documents were prepared by their outside counsel pursuant to the CPSC investigation

---

[33] Br. at 5.
[34] *Id.*
[35] *Id.*
[36] Reply at 7.
[37] Resp. at 7, Ex. B.
[38] 5 U.S.C. §§ 552(b)(5) and (b)(7)(A).
[39] Resp. at 5.
[40] *Binks Manufacturing Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983).
[41] Compl. at 18.

and as such work product "clearly applies."[42] However Spin Master does not offer any additional details describing the nature of the documents and how the work product privilege applies.

In cases addressing the issue of work product, courts look for more specific information about the documents in dispute to make a decision about whether the privilege applies. In *Jaffe Pension Plan v. Household, International*, the dispute was over a report resulting from an internal audit the defendant performed anticipating litigation.[43] The court knew when and how the audit committee was formed as well as the scope of their inquiry.[44] The court used this information to find that the audit was subject to work product protection. In *Hobley v. Burge*, the defendants sought protection of documents compiled by defendant's previous counsel pursuant to a police board investigation.[45] The court explained that "there are major gaps in the City's proof of the essential foundation for establishing such protection."[46] Absent additional support for privilege, the court proceeded to find that a waiver by the defendant precluded any asserted privilege.

Here, there is a lack of specificity as to the nature of the documents Spin Master seeks to protect from disclosure. It is unclear whether Spin Master sent documents to the CPSC that were the result of internal investigations, responses to requests for new information from the agency, or whether they compiled documents that were already in existence. In *Binks Manufacturing Company v. National Presto Industries, Inc.*, the Seventh Circuit explains that "the mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege."[47] The court further reasoned that if in connection with an event, a

---

[42] Resp. at 5.
[43] *Jaffe v. Household Int'l, Inc.,* 244 F.R.D. 412, 416-417 (N.D.Ill. 2006).
[44] *Id.*
[45] 2004 WL 856439 at 3 (N.D.Ill. 2004).
[46] *Hobley,* 2004 WL 856439 at 3.
[47] *Binks Mfg. Co.,* 709 F.2d at 1118.

company conducts an investigation in the ordinary course of business for its own purposes, those documents are discoverable.[48] Thus, the determination that work product privilege applies requires specific analysis of the circumstances surrounding the creation of certain materials and an understanding of their scope.[49] That level of detail is lacking from Spin Master's claim for work product protection.

Spin Master next argues that the plaintiffs have not made a "showing of substantial need" for the information or an "inability to obtain the information without undue hardship."[50] However, because Spin Master has not identified the documents it is withholding, we cannot opine on the plaintiffs' need for the information. We can, however, presume that documents exchanged between Spin Master and the CPSC were specifically related to the recall of Aqua Dots and, therefore, are relevant to the plaintiffs' claims. Whether the information might be obtainable by other means is difficult to ascertain without more detail about the documents themselves. Spin Master offered to present the materials to this Court for *in camera* review. But reviewing documents that were not included in the defendant's privilege log and were not even explained with any specificity does not seem a prudent use of the Court's time.

More to the point, even if the documents were to qualify for work product protection, the defendant waived that privilege by disclosing them to the CPSC. Spin Master, however, contends that the documents produced were still protected by work product, notwithstanding the disclosure

---

[48] *Id.* at 1119 *quoting Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982).
[49] *See Binks Mfg. Co.,* 709 F.2d at 1119 (determining whether materials "fall within the scope of the work product privilege, it is necessary to examine the events leading up to" an event).
[50] Resp. at 5; *see also Abbott Labs. v. Alpha Therapeutic Corp.,* 200 F.R.D. 401, 409 (N.D.Ill. 2001) (explaining that certain work product may be obtained in discovery by showing of "substantial need or undue hardhip").

to the CPSC, under the theory of selective waiver.[51] This approach allows limited voluntary disclosure to a third party without waiving privilege.[52] Typically, a voluntary disclosure of protected material to third parties destroys protection.[53] But exceptions have been recognized in some circumstances, which has been termed "selective waiver," particularly where disclosures are made pursuant to a confidentiality agreement.[54]

While some circuits have recognized selective waiver, the facts of this case do not lend themselves to protection under that doctrine. Here, Spin Master cites a footnote disclaimer in a letter to the CPSC and the agency's regulations as evidence of its confidentiality agreement. Spin Master claims this footnote is sufficient to protect the privilege from being waived. The footnote reads, "Spin Master requests that the CPSC treat this submission, including any and all non-public documents produced in accordance therewith, as confidential and exempt from public disclosure under FOIA."[55]

Though, as noted, some circuits have applied selective waiver, overall, more have rejected it and instead adhered to the general rule that waiver still applies.[56] For example, the Sixth Circuit rejected it in *In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, finding that

---

[51] Resp. at 5-9.
[52] *See Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1126 (7th Cir. 1997) (describing selective waiver as when "having voluntarily disclosed privileged information to one person, the party who made the disclosure asserts the privilege against another person who wants the information.").
[53] *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002).
[54] *See e.g., In re McKesson HBOC, Inc. Sec. Litig.,* 2005 WL 934331 (N.D.Cal. Mar. 31, 2005) (finding that the explicit confidentiality agreement between McKesson and the SEC reserved the work product privilege); *see also Maruzen Co. v. HSBC USA, Inc.,* 2002 WL 1628782 (S.D.N.Y. July 23, 2002) (applying selective waiver, finding that an oral agreement was sufficient to protect work product).
[55] Resp. at 5.
[56] *See In re Martin Marietta Corp.*, 856 F.2d 619, 625-626 (4th Cir. 1988) (finding there was no waiver of opinion work product upon testimonial disclosure); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) (finding selective waiver theory preserved attorney-client privilege); *but see, In re Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844 (8th Cir.1988) (finding defendant waived work product privilege by disclosing internal audit to class action litigants under confidentiality agreement while refusing to produce to the government).

the decision to disclose information is tactical and the general rule that disclosure waives privilege should be maintained.[57] This ruling is in line with the First Circuit reasoning in *United States v. Massachusetts Institute of Technology*,[58] the Third Circuit in *Westinghouse Electric Corporation v. Republic of Philippines*[59] and the Tenth Circuit in *In re Qwest Communications International Inc.*[60] which all denied the applicability of selective waiver. The Second Circuit declined to adopt a per se rule on selective waiver in *In Re Steinhardt Partners, LP* by commenting that there may be circumstances whereby a government agency may have entered into an "explicit agreement" to maintain confidentiality.[61]

The Seventh Circuit has not ruled on selective waiver, but left open the possibility of its use when the parties have proceeded under a confidentiality agreement. In *Dellwood Farms, Inc. v. Cargill, Inc.*, the court did not announce a ruling on selective waiver because it found that issues at play in that particular case were not applicable to selective waiver.[62] The court did, however, characterize case law on selective waiver by commenting that "the courts feel, reasonably enough, that the possessor of privileged information should have been more careful, as by obtaining an agreement by the person to whom they made the disclosure."[63]

At the district court level, courts have reached opposite conclusions on the issue of selective waiver by confidentiality agreement. In *In re Bank One Securities Litigation*, Magistrate Judge Denlow denied the applicability of selective waiver where the defendant, Bank One, disclosed

---

[57]293 F.3d 289 (6th Cir. 2002).
[58]129 F.3d 681, 687 (1st Cir. 1997).
[59]951 F.2d 1414, 1425.
[60]450 F.3d 1179 (10th Cir. 2006).
[61] 9 F.3d 230, 236 (2d Cir. 1993).
[62] 128 F.3d 1122, 1126-1127 (7th Cir. 1997).
[63] *Id.* at 1127.

documents pursuant to an investigation by the Office of the Comptroller of the Currency ("OCC").[64] In doing so, Judge Denlow focused on the adversarial relationship between the defendant and the government agency.[65] He held that "Bank One does not salvage the protection of work product" despite there being a confidentiality agreement between Bank One and the OCC.[66] It is also worth noting that, similar to the case at bar, the OCC also cited its own regulations in denying a request by the plaintiff to obtain documents.[67] In *Hobley, supra,* Magistrate Judge Brown relied on the *Bank One* analysis to reject the selective waiver argument.[68] However, in *Jaffe Pension Plan, supra,* Magistrate Judge Nolan held that the defendant's production of documents to the SEC did not destroy work product privilege because the parties took steps to maintain confidentiality.[69] The defendant agreed to produce documents contingent on an agreement with the SEC. The agreement explicitly stated that "neither the Committee nor Household intend to waive the protections of the attorney work product doctrine, attorney-client privilege, or any other privilege applicable as to third parties."[70] The disputed documents were also included in the defendant's privilege log.[71]

Here, the CPSC is clearly an adversary of Spin Master. The steps taken by Spin Master to maintain work product confidentiality fall short of the standard that has been recognized in limited circumstances in this district. A footnote disclaimer on FOIA requests is not the same as an explicit confidentiality agreement that clearly identifies the intent of the parties with respect to work product

---

[64] 209 F.R.D. 418.
[65] *Id.* at 423-424.
[66] *Id.* at 424.
[67] *Id.* at 421.
[68] *Hobley,* 2004 WL 856439 at 7.
[69] *Jaffe,* 244 F.R.D. at 432-433.
[70] *Id.* at 433.
[71] *Jaffe,* 244 F.R.D. at 418.

privilege.[72] Additionally, the failure of Spin Master to include the documents in the privilege log brings into question the assertion that the documents are privileged. Spin Master cites *Champion Parts Rebuilders, Inc. v. Cormier Corporation,* wherein the court reviewed the documents at issue and found that since the information would not be admissible in court, it was not discoverable.[73] That case, however, does not deal with a waiver of privilege. The combination of the adversarial relationship and the lack of concerted steps to maintain work product privilege lead this court to apply the general rule that third party disclosure waives privilege.

---

[72] *See also, Steinhardt,* 9 F.3d at 232 (finding no confidentiality agreement between defendant and SEC though the disclosed document included a notice reading "FOIA Confidential Treatment Requested").
[73] 1987 WL 19149 (N.D.Ill. Oct. 26, 1987).

**III. Conclusion**

First, we find that the financial information requested in plaintiffs' Interrogatories, and the documents related to the request, are relevant to the claim for punitive damages. This information is, therefore, discoverable. Second, the documents provided to the CPSC were not listed on a privilege log, or protected from production by the appropriate showing of work product. And even if they were, the protection of those documents has been waived due to their disclosure to the CPSC. Plaintiffs' motion to compel is, thus, granted [dkt 380].

**IT IS SO ORDERED**.

**ENTERED: July 28, 2010**

**UNITED STATES MAGISTRATE JUDGE**
**Susan E. Cox**